UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MINNESOTA

| | |
|---|---|
| Myriam Parada,<br><br>          Plaintiff,<br><br>v.<br><br>Anoka County; Anoka County Sheriff James Stuart; Coon Rapids Police Officer Nicolas Oman; Coon Rapids Police Department; unknown/unnamed defendants John Doe & Jane Doe; All individuals being sued in their individual and official capacity.<br><br>          Defendants. | Civil Action No.: 18-CV-00795 (JRT/TNL)<br><br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS COON RAPIDS POLICE DEPARTMENT'S AND POLICE OFFICER NICOLAS OMAN'S MOTION TO DISMISS** |

To observers of Twin Cities' police practice of disproportionately arresting people of color, Plaintiff's complaint sets forth a depressingly familiar set of facts.[1] Plaintiff Myriam Parada ("Myriam" or "Plaintiff"), was a lovely, unassuming twenty-year-old Hispanic woman who was rear-ended in Coon Rapids while driving her younger siblings and two cousins home from her younger sister's birthday party. (Complaint, ¶¶ 23-24.) The other driver was a 24-year-old Caucasian Minnesota woman with 12 convictions for traffic violations, including DWI, speeding, and obstructing the legal process. (Complaint, ¶¶ 26, 30.) She was not arrested for rear-ending the Plaintiff. Myriam called her parents who drove quickly to the scene.

---

[1] See the July 19, 2016 Star Tribune article by Dan Browning entitled "Racial Disparities in Twin Cities Arrests are Widespread," attached as Exhibit 1 to the Declaration of Amanda Cefalu (hereinafter "Cefalu Decl.")

The other driver called 911 and Defendant Officer Oman arrived at the scene. (Complaint, ¶¶ 28-29.) Defendant Oman allowed the other driver to leave, despite knowledge of her driving record. Plaintiff did not have a driver's license, but had a Mexican Consular card with her full name, date of birth and address in the United States, as well as a proof of insurance card. (*Id.*, ¶ 34.) Once he arrived, Myriam's step-father also confirmed to Defendant Oman that the information on Myriam's *Matricula Consular* card was accurate and further confirmed that he was the registered owner of the car, which matched with the proof of insurance card carried by Plaintiff. (Complaint, ¶ 37).

Nonetheless, after speaking to someone in the Police Department, Defendant Oman transported Plaintiff to jail, allegedly because he was "unable to positively identify her." (*Id.*, ¶¶ 39, 44.) Defendant Oman had issued six citations in the prior year for failure to possess a Minnesota Driver's license, and never arrested anyone, much less transported them to jail. (*Id.*, ¶ 46). While we have not yet had the opportunity to conduct discovery, no one should be surprised if statistics demonstrate that people of color, including Hispanics, are the only ones ever jailed by the Coon Rapids police department for not having a valid driver's license.

Plaintiff has asserted claims against Defendant Oman ant the City of Coon Rapids ("Coon Rapids Defendants") under 42 U.S.C. 1983 (Counts I-IV), Violation of Article 1, §§ 7 and 10 of the Minnesota State Constitution (Count V-VI), and False Imprisonment (Count VII). The Coon Rapids Defendants move to dismiss for failure to state a claim. Their motion should be denied for four principal reasons.

2

First, in reality, their motion is premature because it is appropriately considered a motion for summary judgment. The Coon Rapids Defendants improperly include at least one document not incorporated by reference in the complaint[2], converting the motion into one for summary judgment before Plaintiff has had the opportunity to conduct discovery. Second, under the liberal Rule 12 standard, construing all allegations and drawing all inferences in Plaintiff's favor, each count of the complaint plainly alleges a claim upon which relief could be granted, depending on the more fulsome record to be presented to the Court following discovery. Third, Defendants' motion for summary judgment on the affirmative defense of qualified immunity is inappropriate because a reasonable officer in Defendant Oman's position would have understood that jailing only brown-skinned persons for not having a valid driver's license violates both the state and federal constitutions. Fourth and finally, Defendants' arguments that Plaintiff cannot assert state law constitutional claims against them ignores that both declaratory and injunctive relief are available for violations of state constitutional rights.

---

[2] Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999); *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992). Ex. 2 to Defendant Oman's affidavit is an incident report filled-out by Officer Oman. That document is nowhere referenced in the complaint. As discussed further below, the document raises significant questions which can only be answered through discovery. *See also* (Cefalu Decl., ¶ 12).

## BACKGROUND

Defendant Oman is an officer in the Coon Rapids police department. Through the Minnesota Government Data Practices Act, it was revealed that Defendant Oman issued at least six citations for no Minnesota driver's license in the last year. (Dkt. 1 ¶ 46.) However, when Defendant Oman would meet Myriam, he treated her very differently than how he has treated other motorists. Discovery is necessary to determine whether this differential treatment of motorists based on skin color or ethnicity is confined to Officer Oman or is wide spread within the Coon Rapids Police Department.

Myriam was the victim of a car accident on July 25, 2017. (*Id.*, ¶ 23.) Myriam was driving her younger brother and sister home from her sister's birthday party. (*Id.*) She was rear-ended by another driver. That driver, though at fault, called the police. (*Id.* ¶ 28.) Defendant Oman arrived at the scene of the accident. (*Id.*) Despite being the cause of the accident, Defendant Oman allowed the other driver to leave the scene without any citation. (*Id.* ¶ 30.)

Instead, Defendant Oman focused his attention on Myriam. Myriam gave Defendant Oman her insurance card and a *Matricula Consular* card, an official identification card issued by the Mexican consulate. (*Id.* ¶ 34.)(Cefalu Decl., Ex. 2). Myriam also had her Mexican passport with her, but Defendant Oman never asked for any other identification.[3] The *Matricula* card listed Myriam's name, date of birth and address, the same address as listed on her proof of insurance card. (*Id.*, ¶ 35.) Defendant Oman asked Myriam if all the

---

[3] This fact is not in the complaint, but we will establish it in discovery.

4839-6248-3045.2

information on the card was true and she confirmed that it was. (*Id.*, ¶ 36.) Myriam's step-father arrived on-scene and confirmed his step-daughter's identity. (*Id.*, ¶ 37.) Defendant Oman ran the step-father's driver's license through his database, despite there being no reason to do so. (*Id.,* ¶ 38.)(Cefalu Decl., Exs. 3-4). The search would verify the information that he had been given, including that Myriam's step-father had a valid Minnesota driver's license, lived at the address listed on the license and whose name and address further matched the name and address on Myriam's *Matricula Consular* card.

Defendant Oman then made a call, or perhaps several, on his personal phone, which is not recorded, to his supervisor. (*Id.*, ¶ 39.) When he exited his car, he told Myriam that he had to arrest her to get her fingerprints. He explained that "I need to make sure who you are." (*Id.*, ¶ 41.) However, by this point, Defendant Oman already had multiple confirmations of Myriam's identity, including her *Matricula Consular* card and personal identification by her step-father, the owner of the vehicle involved in the accident, whose name and address on his driver's license matched the name on Plaintiff's proof of insurance card and address on the *Matricula Consular* card. (Cefalu Decl. Exs. 2-4).  Defendant Oman's police report, attached as Exhibit 2 to his affidavit, states that Oman jailed Parada not for driving without a license but because he could not "positively identify her." At this point, that statement appears to be pre-textual given the information Officer Oman did have. We are entitled to discovery concerning why Officer Oman claims he could not "positively" identify her, and hence it is not appropriate for the Court to resolve this issue on a Rule 12 basis.

5

Defendant Oman brought Myriam to the Anoka County jail. (*Id.* ¶ 43.) At the jail, Defendant Oman filled-out booking information on Myriam and listed her full name, date of birth and address that she had already given him. (*Id.*, ¶ 55); *see also* (Anoka County Defendants' Joint Answer, Dkt. 15 at ¶ 55.) He did not indicate on any forms to Anoka staff that he didn't know who Myriam was or that he suddenly had a new source of information to positively identify her at the jail. Records from the Anoka County Sheriff indicate that they were informed that she was only there for the no driver's license, and they were not instructed by Defendant Oman to fingerprint her. (*See* Cefalu Decl., Ex. 11; Anoka County booking records.)

## CASE FILING

Myriam filed her lawsuit against Defendant Oman and Defendant City of Coon Rapids, as well as the Anoka County Defendants on March 22, 2018. She brought claims for (I) Violation Fourth Amendment under 42 U.S.C. § 1983; (II) Fourteenth Amendment Substantive Due Process violations under 42 U.S.C. § 1983; (III) Fourteenth Amendment Procedural Due Process violations under 42 U.S.C. § 1983; (IV) Fourteenth Amendment Equal Protection violations under 42 U.S.C. § 1983; (V) Violation of the Right to Be Free from Unreasonable Searches and Seizures under the Minnesota Constitution;(VI) Violation of Due Process Rights under the Minnesota Constitution; (VII) False Imprisonment Tort claim. (*Id.*, ¶¶ 124-174.) Plaintiff also seeks a Declaratory Judgment (*Id.*, ¶¶ 175-177.) Myriam seeks Injunctive relief, money damages, and declaratory relief. (*Id.*, at 29-30).

Anoka County Defendants answered the complaint. (Dkt. 15.) Defendant Oman and Defendant City of Coon Rapids filed this Motion to Dismiss.

4839-6248-3045.2

## **LEGAL STANDARD**

In considering a motion to dismiss under Rule 12(b)(6), the complaint is read as a whole, the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. *Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In addition, the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint. *Ossman v. DianaCorp.*, 825 F.Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (Internal quotations omitted). Instead, a plaintiff need only "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S.Ct. 346 (2014). Substantive plausibility merely requires that the Court has enough factual content to be able to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 679. ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") "The complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)(citation omitted).

Qualified immunity is an affirmative defense. To overcome a defense of qualified immunity on a motion to dismiss, the complaint must allege sufficient facts to establish

that "the official's conduct violated a constitutional right," and "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Groenewold v. Kelley*, 2018 WL 1914909 (8th Cir. 2018) *See* (Cefalu Decl., Ex. 5). (quoting) *Clemmons v. Armontrout*, 477, F.3d 962, 965 (8th Cir. 2007)(quotations omitted).

As discussed below, Plaintiff has alleged sufficient facts for the Court to conclude that it would have been clear to Defendant Oman that it would be unlawful to jail Myriam under the circumstances, given that both her *Matricula Consular* card and proof of insurance card listed the same address, which was the same address as on her step-father's driver's license, and her step-father was there in person to positively identify her. Defendant Oman's admission on his arrest report that he needed to jail Myriam because he could not "positively identify her," when he had never treated similarly-situated motorists like that in the past, raises a strong inference of pretext and impermissible racial profiling.

## LEGAL ARGUMENT

I.    **Plaintiff's Complaint Alleges Violations of Clearly Established Laws and the Affirmative Defense of Qualified Immunity Should Fail.**

At the outset, Defendant Oman claims that qualified immunity should shield him from liability. This, at best, raises fact questions. Defendant Oman made an unlawful custodial arrest and engaged in racial profiling. Both of those actions violate Plaintiff's constitutional rights, and are violations of clearly established law.

8

### A.     Plaintiff Was Subject to an Unlawful Custodial Arrest.

In the complaint, Plaintiff adequately pleads facts to demonstrate her custodial arrest by Defendant Oman was unlawful. The Complaint asserts that she was arrested because Defendant Oman needed "to make sure who you are." However, the facts presented by Myriam strongly indicate this was pretext. Defendant Oman had five sources of Myriam's identity - Myriam, Myriam's step-father, her *Matricula* card, her proof of insurance card and her step father's driver's license. The address on the *Matricula Consular* card, and her step-father's driver's license matched. This was more than sufficient to determine who Myriam was. Indeed, when Defendant Oman booked Myriam into the Anoka County jail, he listed her name, identity and date of birth on the intake form for the Anoka County Defendants to rely upon. Therefore, for Rule 8 pleading purposes, Plaintiff has plead enough facts to move forward into discovery with respect to the claim for violation of her Fourteenth Amendment rights. Additionally, Defendant Oman did not claim, nor could he, that he could lawfully arrest Myriam for committing a misdemeanor outside of his presence. *See infra* (Section II (A) (ii)).

### B.     Defendant Oman Engaged in Impermissible Racial Profiling.

Selective enforcement of the law on the basis of race violates the Fourteenth Amendment's guarantee of equal protection under the law. *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff must allege and prove that [she] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent. *Stout v.*

*Vincent*, 717 Fed. Appx. 468 (5th Cir. 2018) (Cefalu Decl., Ex. 6) (quoting) *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012).

A showing of discriminatory effect may be made in numerous ways. "A claimant can demonstrate discriminatory effect by naming a similarly situated individual who was not investigated or through the use of statistical or other evidence which addresses the crucial question of whether one class is being treated differently from another class that is otherwise similarly situated." *Giron v. City of Alexander*, 693 F.Supp.2d 904, 938 (E.D. Ark, 2010) (quoting *Farm Labor Organizing Committee v. Ohio State Highway Patrol*, 308 F.3d 523, 534 (6th Cir. 2002) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 638 (7th Cir.2001)) (omitting internal quotes) (emphasis added).

> Direct evidence of racially-motivated decision making is "other evidence" that can also demonstrate discriminatory effect. ...In reaching this conclusion, the Court is mindful that there are very few selective law enforcement equal protection cases where a plaintiff is able to produce direct evidence. However, the Eighth Circuit, in a case involving a racially motivated traffic stop, stated that it would assume that "a *prima facie* equal protection claim may also be proved by direct evidence of racial discrimination."

*Id.* citing *Johnson v. Crooks*, 326 F.3d 995, 1000 (8th Cir.2003) (the plaintiff alleged that she was stopped solely because of her race but presented no other evidence to prove her claim).

Plaintiff has presented evidence in her complaint showing that Defendant Oman has treated other people without Minnesota driver's licenses differently than how he treated Plaintiff. Of the other six people he cited with no driver's licenses, none but Plaintiff were a minority and none but Plaintiff were taken into custody. Besides presenting some statistical evidence of racial profiling in her complaint, Myriam has also shown that

10

Defendant Oman's reason for jailing Myriam appears to have been pre-textual, consistent with an impermissible racial animus. The Complaint asserts sufficient facts to make out a claim that Defendant Oman violated her Fourteenth Amendment right to equal protection, and it is undisputed the law is clearly established on this point.

## II.     The Coon Rapids Defendants' Remaining Arguments.

Despite the sufficiency of the factual pleadings in the complaint, Defendants make four additional arguments for why this case should be dismissed for failure to state a claim. None of those reasons stand up to review, and this Court should reject all of them.

### A.     Defendant Oman is not entitled to qualified immunity and it is premature for the Court to decide this issue now.

Defendant Oman argues that the complaint "fails to plausibly allege violations of her constitutional or statutory rights." (Dkt. 10 at 8.) As noted above, the claim of impermissible racial profiling in violation of the Fourteenth Amendment is a clear violation of Myriam's constitutional rights. This alone mandates denial of the Coon Rapids Defendants' motion.

#### i.     *Defendant Oman violated Plaintiff's Fourteenth Amendment rights.*

Plaintiff's complaint has shown through factual pleadings that Defendant Oman knew who she was. He talked to witnesses who verified her identity. He had a *Matricula* card that proved her identity and the address on the card matched the address on her step-father's driver's license. Further, her step father's name was on the proof of insurance card in the car that Myriam was driving.  Defendant Oman used that information to fill out his jail intake form when he gave her to the Anoka County Defendants. (Dkt. 1 ¶ 55, Dkt. 15

11

at ¶ 55.) Defendant Oman had no basis under either state or federal law to arrest Plaintiff. The only reason given by him is contradicted by the facts in the complaint. Plaintiff has put those factual events together to argue that she was arrested due to her immigration status.

Both the United States Supreme Court and this Court have stated that local law enforcement officers may not arrest people for immigration violations. "[A]s a general rule, it is not a crime for a removable alien to remain present in the United States." *Orellana v. Nobles County*, 230 F.Supp.3d 934, 945 (D. Minn. 2017)(quoting *Arizona v. United States*, 132 S.Ct. 2492, 2505 (2012).

Plaintiff has alleged that her arrest was falsely made by Defendant Oman because of racial profiling and of her nationality. Defendant Oman has argued that he arrested her because he needed to find out who she was. (Dkt. 1 at ¶ 41.) But his arrest was plainly in violation of Rule 6.01 of the Minnesota Rules of Criminal Procedure, which lists the small number of reasons that an officer could arrest someone for a misdemeanor.[4] None of those reasons were relied upon by Defendant Oman.

Further, Plaintiff has pled that Defendant Oman has routinely not arrested individuals for not having possession of a valid Minnesota driver's license. In the last year, he's given at least six such citations without arrest. (Dkt. 1 at ¶ 46.)  We expect discovery

---

[4] Rule 6.01 lists three circumstances in which an officer may arrest an individual. An person should be released unless it reasonably appears that:
    (1) the person must be detained to prevent bodily injury to that person or another;
    (2) further criminal conduct will occur; or
    (3) a substantial likelihood exists that the person will not respond to a citation.
*See* Minn. R. Crim. P. 6.01.

will show that Defendant Oman spoke about Miriam's immigration status in his squad car with others in the department.[5] *See* (Cefalu Decl., ¶ 12). Under the case law governing motions to dismiss, Plaintiff has shown enough in her pleadings to establish violation of her Fourteenth Amendment rights such that qualified immunity would not be available as a defense as a matter of law. This court should permit Plaintiff's Fourteenth Amendment claims to move forward.

Defendant Oman also argues that he is entitled to qualified immunity because there was no clearly established law that states he had to accept a *Matricula* card. (Dkt. 10 at 16-17.) This misses the point. While Defendant Oman did rely on the *Matricula* card to process Plaintiff at the Anoka County jail, the equal protection claim against him is based on arresting her on a pretext for the purpose of bringing her to jail because of her suspected immigration status. (*See* Dkt .1 at ¶ 145.) ("Defendant Oman acted pursuant to an unwritten policy, custom or pattern of practice to engage in racial and ethnic profiling and arresting Hispanic motorists for pre-textual reasons to place them in immigration custody.") Indeed, the Anoka County Defendants' joint answer indicates that the two groups of Defendants in this litigation plan to place blame on one another for the constitutional violations suffered by Plaintiff.

---

[5] Defendant Oman also listed Plaintiff's height at 5'7" and weight at 180 on her citation. No one would ever believe that Myriam was that tall or weighed 180 pounds. That height and weight could be ascribed to her step-father, however. This information does not appear on the redacted copy of Defendant Oman, Ex. 2. We will provide an unredacted copy at the hearing.

Plaintiff also asserts in the complaint that Defendant Oman routinely elects not to arrest individuals for not having a valid driver's license. (Dkt. 1, §§ 46-47.) Under *Iqbal*, which requires that a pleading merely show enough factual matter to show that relief may be available, this is enough to show a claim upon which relief may be granted. *Iqbal*, 556 U.S. at 678.

Defendant Oman gives another reason that he may have arrested Plaintiff in his filing. He suggests that because she didn't have a Minnesota driver's license, she might not have been in certain databases accessible to Defendant Oman. (Dkt. 10 at 21.) While this may be true, a fact-finder may very well find that this is insufficient in light of the reliable identification information that was available to him and the evidence that her arrest was racially motivated. Defendant's alternative theory does not undermine the validity of the allegations stated in the Complaint, and does not justify summarily dismissing Plaintiffs' constitutional claims.

### ii.   *Plaintiff's guilty plea to a petty misdemeanor is irrelevant.*

The Coon Rapids Defendants next incorrectly argue that because Plaintiff pled guilty to a petty misdemeanor - a traffic violation - she cannot pursue a §1983 claim against them pursuant to *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). In *Heck*, the Supreme Court stated that a Plaintiff may not move forward with a §1983 action if that action would invalidate the underlying criminal conviction. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). However, that does not mean that pleading guilty to not possessing a valid driver's license deprives Plaintiff of the ability to contest the legality of her custodial arrest. As the *Heck* court noted, "if the district court determines that the plaintiff's action, even if

14

successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (emphasis in original).

Defendant Oman relies on *Williams v. Schario*, 93 F.3d 527 (8th Cir. 1996) for the proposition that all guilty pleas foreclose §1983 claims for false arrests. (Dkt. 10 at 10.) This misstates *Williams*. In *Williams*, the plaintiff alleged that he was arrested for felony burglary without probable cause. Eventually, Williams plead guilty to the burglary charge. The Eighth Circuit held that a §1983 suit against his arrest must fail as the civil suit would call into question his guilty plea.

However, Plaintiff in the instant case pled guilty to no MN DL, a petty misdemeanor. (*See* Dkt. 12, Zipf Exhibit 4.) A petty misdemeanor is not a crime. *State v. Varnado*, 582 N.W.2d 886, 889 (998); *See* Minn.Stat. § 609.02, subd. 4a (1996). Unlike the Plaintiff in *Williams*, Plaintiff's challenge of her arrest has no bearing on her plea to a traffic citation. If she is successful in her §1983 action, her plea would not be placed in doubt.

### iii.   Defendant Oman violated Plaintiff's Fourth Amendment rights.

Defendant Oman also mischaracterizes Plaintiff's Fourth Amendment claim. Plaintiff does not challenge the underlying basis for the traffic citation she received. Plaintiff alleges that she was not arrested or detained in order for Oman to issue her a traffic citation, but instead that he contacted Anoka County and seized her person for the sole purpose of contacting ICE. (Dkt. 1, ¶¶ 37-45). The Fourth Amendment "applies to all seizures of the person, including seizures that involve only a brief detention short of

traditional arrest." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). Under the Fourth Amendment, "a fair and reliable determination of probable cause" must be provided "as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan*, 443 U.S. 137, 142 (1979). When a person is "kept in custody for a new purpose after [the individual is] entitled to release, [that individual] was subjected to a new seizure for Fourth Amendment purposes—one that must be supported by a new probable cause justification." *Id.*

Defendant Oman had all the information he needed to issue a citation for no Minnesota driver's license by no later than seven o'clock,[6] when he ran Plaintiff's father's driver's license and placed the father's weight onto Plaintiff's citation. (Dkt. 19.2) Under *Baker*, Plaintiff should have been released at this point. Instead, Defendant Oman made a conscious decision to extend the stop beyond a permissible scope and kept Plaintiff at that location for another fifteen minutes before taking her to the Anoka County jail under full custodial arrest.

"A full custodial arrest is a significant intrusion into a person's liberty." *State v. Bauman*, 586 N.W.2d 416, 421 (Minn. Ct. App. 1998) citing *U.S. v. Robinson,* 414 U.S. 218, 237, 94 S.Ct. 494, 38 L.Ed. 427 (1973). Under Minnesota law, an "arrest takes place when officers restrain a suspect's liberty of movement." *State v. Carver*, 577 N.W.2d 245,

---

[6] Even seven o'clock is very kind to Defendants. By seven o'clock, Defendant Oman had already likely written the citation and released the other driver from the scene. The citation states that the time of the incident to be 6:40 While that's not determinative of when the citation was written, the CAD report indicates that the citation was most likely written up between 6:50 and 7:00pm.

248 (Minn. Ct. App. 1998); *State v. Lohnes,* 344 N.W.2d 605, 610 (Minn.1984). Plaintiff's Complaint alleges that Oman's "custodial" arrest and the act of taking her into custody under false pretenses (or simply due to her immigration status) was an unreasonable search and seizure. (Dkt. 1 at ¶ 126). Plaintiff did not contact the police, and as alleged in the Complaint, Oman's interaction with her initially started after he had already let the at-fault party leave the scene of the accident. He then started questioning Plaintiff and arguably had sufficient information (name, address as verified by her identification and attendant family members) to issue a citation. Instead, Plaintiff alleges she was told she was being taken into custody to verify her identity, she was forced into the back of Oman's squad car, and transported to Anoka County Jail for further detention (and a search of her person). Defendant Oman, in essence, took Plaintiff into custody under the auspices that she was providing him with false information – but – as discovery will reveal - didn't report that nor tell Plaintiff what crime she had allegedly committed to justify a custodial arrest. Plaintiff's complaint also makes it clear she was never provided a Miranda warning.

An officer has probable cause to arrest when the "objective facts are such that under the circumstances, a person of ordinary care and prudence would entertain an honest and strong suspicion that a crime has been committed." *State v. Bauman*, 586 N.W.2d 416, 419–20 (Minn. Ct. App. 1998); *G.M.,* 560 N.W.2d at 695 (citing *State v. Wynne,* 552 N.W.2d 218, 221 (Minn.1996)); *see State v. Sorenson,* 270 Minn. 186, 196, 134 N.W.2d 115, 123 (1965) (officer has probable cause to arrest when "conditioned by his observations and information, and guided by the whole of his police experience, reasonably could have believed that a crime had been committed by the person to be arrested"). The facts pled

demonstrate Defendant Oman did not have reasonable cause to believe a crime was being committed in relation to her identity.

Plaintiff claims she was subject to an unreasonable seizure by being put into *custodial* arrest and transported to Anoka County, and that this new seizure was unreasonable under the 4th Amendment. Unlike the situations in *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) and *Adewale v. Whalen*, 21 F. Supp. 2d 1006, 1009 (D. Minn. 1998), Plaintiff's act of driving was not done in the officer's presence. Thus, the general rule, articulated in *Atwater*, that police do not violate the Fourth Amendment when they take an individual into custody for misdemeanors committed in their presence, is inapplicable here. Defendants will argue that for Fourth Amendment purposes, when an officer has probable cause to believe a person has committed any crime a custodial arrest is constitutionally reasonable and they are entitled to qualified immunity, even where state law would ordinarily require the officer to simply issue a citation. *Virginia v. Moore*, 128 S.Ct. 1598, 1604 (2008). Defendants' reliance on *Virginia v. Moore*, however, overreaches because the ruling in this case, similar to *Adewale v. Whalen* discussed above, applies only to "warrantless arrests for crimes committed *in the presence of an arresting officer*." 553 U.S. 164, 176, 128 S. Ct. 1598, 1607, 170 L. Ed. 2d 559 (2008)(emphasis added).

In *Virginia v. Moore*, a criminal defendant was challenging his conviction for a separate crime relating to the possession of drugs located on his person after he was searched incident to an arrest for driving with a suspended license. The original crime, the one for which he had been pulled over and put into custodial arrest, occurred in the presence

18

of police officers.  Here, it is undisputed Officer Oman did not witness Plaintiff driving, and therefore did not witness her committing any crime in his presence. It is also undisputed that Officer Oman did not place her into custodial arrest due to the commission of a crime, but instead because he claimed "he could not identify her." Here, Plaintiff is not challenging her traffic citation; she is asserting that Defendant Oman's seizure of her person was an unreasonable and naked abuse of power because the custodial arrest was intended for the sole purpose of holding her for ICE.  Plaintiff's complaint states sufficient facts to demonstrate there is a viable claim under the Fourth Amendment which, if allowed further development in discovery, is distinguishable from the cases cited by Defendants.

The Fourth Amendment inquiry turns on whether there existed probable cause and the reasonableness of the detention.  Plaintiff's complaint has adequately pled that her custodial arrest was not supported by any lawful authority and was unreasonable both under Minnesota law and under the Fourth Amendment. Under Rule 6.01, there was no need to take her into custody to effectuate the misdemeanor charge that was later converted to a petty misdemeanor. In fact the Minnesota Supreme Court has explained that, absent facts to support a belief that a custodial arrest for a misdemeanor charge of violating Minn. Stat. §171.08 was necessary to prevent a person from harming someone or to ensure that she would respond to a citation, there is "no valid basis for a custodial arrest." *State v. Varnado*, 582 N.W.2d 886, 893 (Minn. 1998).

Oman's ability to cite her for a traffic violation is not dependent upon a custodial arrest. Under Minnesota law, Defendant Oman should have issued the citation without significantly interfering with Plaintiff's liberty, and the Complaint does not include any

facts to suggest that he did not believe Plaintiff was providing him with accurate information (name and address). This case challenges whether Defendant Oman had probable cause for the custodial arrest and seizure of her person, not the investigatory stop and inquiry into her driving status. The law relating to misdemeanors committed outside an officer's presence is clearly established in Minnesota, and Defendant Oman should have known he did not have probable cause for a custodial arrest. There is clear Minnesota case law on this point. *Varnado*, 582 N.W.2d at 893; *see also State v. Richmond*, 602 N.W.2d 647, 653 (Minn. Ct. App. 1999) *review denied* (Minn. Jan. 18, 2000) (no probable cause to arrest defendant based on the misdemeanors of careless driving or obstructing legal process absent evidence that arrest necessary to prevent bodily harm or was involved in any other criminal activity, or that defendant would fail to respond to a citation on his traffic offense). Under *Baker v. McCollan*, Plaintiff was subject to a new seizure when she was physically taken from her family and hauled to Anoka County Jail by Defendant Oman – and that seizure must be supported by probable cause. The complaint states sufficient facts to demonstrate Plaintiff was entitled to release at the scene, and that there was no justification or probable cause supporting the custodial arrest. *Baker v. McCollan*, 443 U.S. 137, 142 (1979).

Second, there are no facts to suggest Oman was suspicious or aware of any additional criminal activity. Third, even if Oman believed she was in the U.S. illegally this is not a crime. *See* Arizona v. United States, 132 S. Ct. 2492, 2505 (2012); *Carcamo v. Holder*, 713 F.3d 916, 922 n.5 (8th Cir. 2013)("it is not a crime for a removable alien to

remain present in the United States."); *Melendres v. Arpaio*, 695 F.3d 990, 1000 (9th Cir.

2012) ("mere unauthorized presence in the United States is not a crime").

The facts in the Complaint demonstrate that Defendant Oman did not need to place

Plaintiff in a custodial arrest in order to issue her a citation for a misdemeanor and as a

matter of law he was aware this was beyond his authority.  He had probable cause to issue

the citation at the site of the accident, and was required by Minnesota law to do so.

Accordingly, a challenge to the reasonableness of placing her under custodial arrest and

hauling her to jail will not and should not undermine the validity of her guilty plea to a

petty misdemeanor. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) is simply not applicable.

The ruling in *Heck* is crafted to protect criminal convictions from collateral attack in a civil

lawsuit. Plaintiff did not receive a criminal conviction, but an administrative petty

misdemeanor. Plaintiff is not seeking to vacate or challenge that petty misdemeanor. In

fact, Plaintiff has not alleged that she has suffered any damages in relation to the petty

misdemeanor and is not seeking to clear her record in this regard or challenge the validity

of the traffic citation.

At minimum, the court should rule Plaintiff has alleged sufficient facts to survive a

Rule 12 motion.  She has alleged facts sufficient to make out a challenge to her *custodial*

arrest – which did not result in the citation for a traffic violation.  The complaint alleges

sufficient facts for the court to conclude she was subject to two search and seizure incidents,

one being the initial investigatory stop subsequent to the accident and the other being the

custodial arrest and removal from the scene. Plaintiff is not challenging whether Defendant

Oman had probable cause to issue her a citation – this characterization is convenient,

retroactive and amounts to bait and switch. The constitutional challenge asserted here is to Oman's unreasonable search and seizure of her person by taking her into custody when he had multiple credible sources for identification, she had, at most, committed a misdemeanor and there was no indication she was a danger to the public. This has no impact upon her traffic citation. A dismissal under Rule 12(b)(6) for qualified immunity must be demonstrated "on the face of the complaint." *Kuklay v. Roy*, 847 F.3ds 637, 642 (8th Cir. 2017)(citations omitted). The court should reject Defendants' attempt to reach far outside the face of the Complaint seeking dismissal of this claim and deny this motion.

### B.    Defendant Oman Violated Plaintiff's Due Process Rights.

Defendant Oman argues that both procedural and substantive due process claims against him should be dropped as he had "arguable probable cause" to arrest Plaintiff. (Dkt. 10 at 14-16.) In essence, he argues that the due process claims are best brought forth as Fourth Amendment violations. However, that is not required. A plaintiff can bring forth claims under multiple constitutional sources.

The record before the Court, seen in the best light to Plaintiff, clearly show that Defendant Oman arrested Plaintiff for a misdemeanor in violation of her Constitutional rights. Those claims show a violation of the Fourteenth Amendment that can be addressed. *See Villars v. Kubiatowski*, 45 F.Supp.3d 791 (E.D. Ill. May 5, 2014) (rejecting dismissals of Fourth and Fourteenth Amendment claims for detaining an alien without probable cause). In *Villars*, the Defendants made claims that they had legitimate reason to arrest plaintiff for immigration violations. The Court noted that the Defendants — like Defendants in the instant case — had already been put on notice by the First, Second, Third,

Fourth, Fifth and Sixth Circuits that Congress had not authorized "state or local officials to detain suspected aliens subject to removal." *Villars* at 802.

Defendant Oman argues that his actions did not rise to the "conscience-shocking" level needed for substantive due process claims. (Dkt. 10 at 14-15.) The Eighth Circuit has stated that the "Fourteenth Amendment guarantees substantive due process which prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. To that end, the Fourteenth Amendment prohibits conduct that is so outrageous that it shocks the conscience or otherwise offends 'judicial notions of fairness, or is offensive to human dignity.'" *Moran v. Clarke*, 296 F.3d 638, 643 (8th Cir. 2002) (internal citations and quotations omitted). The existence of a substantive due process right is a question of law but "whether the plaintiff has presented sufficient evidence to support a claimed violation of a substantive due process right is a question for the fact-finder." *Id.*

It is unquestioned that Plaintiff has a strong liberty interest and that racially motivated actions by Defendants can shock the conscience. Additionally, substantive due process protects what might be considered minor interests if government conduct is sufficiently arbitrary and outrageous. *Id.* (citing *City of Chicago v. Morales*, 527 U.S. 41, 53 (1999) (stating that "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment.") Here, the facts alleged in the complaint, viewed in the light of most favorable to Plaintiff, are that Defendant Oman arrested Plaintiff, an accident victim, who had not committed a crime in his presence, not for any lawful purpose, but instead because of concerns about her

23

immigration status. Defendant Oman's actions were not supported by any law and early review of his citation records showed that he routinely did not arrest people for no Minnesota driver's license. That he arrested Plaintiff supports her claims for being racially profiled. A fact-finder, after completed discovery, may very well find that Plaintiff has presented sufficient evidence to support her substantive due process claim. For a motion to dismiss, Plaintiff has plead sufficient facts to support the possibility of a due process claim.

Defendant City of Coon Rapids also violated Plaintiffs procedural due process rights. The City of Coon Rapids failed to develop an immigration policy which let Defendant Oman create his own immigration policy. Defendant Oman decided to arrest Plaintiff because of her suspected immigration status.

## III. Plaintiff Has Alleged a Plausible *Monell* claim against Defendant City of Coon Rapids.

Defendant Oman and Defendant City of Coon Rapids next challenge Plaintiff's equal protection claim. For the City, Defendant claims that the Complaint fails to allege that a policy was the moving force behind Defendant Oman's actions. (Dkt. 10 at 17-18.).

Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, their commission of the tort resulted from a custom or policy of the municipality. *Monell*, 436 U.S. at 690-691. As this Court has previously has explained, Plaintiff must prove that the violation of Plaintiff's constitutional rights resulted from either (1) an official municipal policy; (2) an unofficial municipal custom; or (3) a deliberately indifferent failure by [defendants] to train or supervise its officers. *Yang v. City of Brooklyn Park*, 194

24

F.Supp. 3d 865 (D. Minn., July 16, 2016) (citing *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir.2013)).”

*Monell* liability can be imposed even in cases in which a municipal employee is not found liable in his or her individual capacity. *Webb v. City of Maplewood*, No. 17-2381, 2018 WL 2070564, at *3 (8th Cir. May 4, 2018)(Cefalu Decl., Ex. 7) *citing Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009). Therefore, a grant of qualified immunity for defendant Oman's individual unconstitutional conduct is not a bar to municipal liability under *Monell*.

Defendant City of Coon Rapids is the legal entity in charge of the Coon Rapids police department.[7] (Dkt. 1 ¶ 16.) As such, it is their responsibility to create a policy that instructs officers on what to do when they face situations akin to Plaintiff's facts. The City of Coon Rapids does not have an immigration policy. (*See* Dkt. 1; ¶¶ 145, 147; Cefalu Decl., Ex. 8). Consequently, their officers are free to do what they want. For *Monell* purposes, it could be said that the city either has an unofficial policy to let their officers do whatever they want on immigration or that they have failed to train their officers to handle immigration issues, which satisfies the deliberate indifference standard.

Throughout the complaint, Plaintiff has noted that this lack of a policy was the driving force that permitted Defendant Oman to violate Plaintiff's Fourth and Fourteenth

---

[7] Defendant Coon Rapids Police Department argues that it is not an entity subject to suit. (Doc. 10, p. 16, n. 9.) The caption of the complaint erroneously lists the Coon Rapids Police Department as a Defendant. However, Paragraph 16 makes clear that the proper Defendant is the City of Coon Rapids. Plaintiff respectfully requests leave to amend the caption to correct this typographical error.

Amendment rights. The complaint alleges that "[t]he constitutional violations suffered by Plaintiff and those similarly situated to Plaintiff are directly and proximately caused by polices, practices and/or customs implemented and enforced by the Defendants Coon Rapids Police Department and Oman, as set forth in this complaint." (Dkt. 1, ¶ 146.) Defendant City of Coon Rapids should have known that an immigration policy was required at the latest by 2012 when the Supreme Court stated "[a]s a general rule, it is not a crime for a removable alien to remain present in the United States." *Arizona*, 567 U.S. at 407. Or when this court issued its decision in *Orellana*. There the court reminded all law enforcement agencies that they could not arrest for immigration status. *Id.* at 945. Additionally, Defendant City of Coon Rapids received notice from the ACLU about the need for good immigration policies in early 2017. (Dkt. 1, Ex. 3.) Despite knowing that they needed to address this issue, the City of Coon Rapids failed to develop a policy. This is enough to show *Monell* liability for Rule 8 purposes. Municipal liability attaches where a deliberate choice to follow a course of action is made by city policymakers, even if that choice is no action at all. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

The complaint alleges enough facts by Defendant Oman to show that he arrested Plaintiff because of immigration concerns. Additionally, the complaint points out that the City of Coon Rapids had been put on notice of its responsibility. (Complaint, ¶¶ 108-110.)

Defendants' constant claim that a *Matricula* policy is the source of *Monell* liability is incorrect. A valid immigration policy would include acceptance of the *Matricula* as proper identification as one component of their policy but would also need to cover more

than that single issue. However, for Rule 8 purposes, the Complaint has plead enough information to state a claim under *Monell*.

## IV.   Plaintiff May Seek Declaratory and Injunctive Relief Under the Minnesota Constitution.

Plaintiff has asserted claims for injunctive relief against the Coon Rapids Defendants for violation of her rights under Article 1, §§ 7 and 10 of the Minnesota Constitution relating to Unlawful Seizures and Due Process rights. *See* (Complaint, Counts V-VI, ¶¶ 59, 65 (Dkt. 1)).

The Coon Rapid Defendants incorrectly argue that no private cause of action for violation of the Minnesota Constitution exists. While they are correct that a plaintiff may not maintain a damages claim for violation of state constitutional rights (which Plaintiff does not assert), Plaintiff here asserts claims for injunctive and declaratory relief for state constitutional violations. In *Thompson v. Ross*, 368 F.Supp. 2d 961, 976 (D. Minn. 2005) this Court assumed without deciding that Minnesota courts would recognize a private right of action to remedy §§ 6, 7 and 10 of the Minnesota Constitution:

> Minnesota has not enacted a statute equivalent to §1983, although Minnesota courts have recognized direct causes of action for violating certain sections of the Minnesota Constitution. *See, e.g., Skeen v. State, 505 N.W.2d 299, 302-03 (Minn.1993)* (education and equal protection clauses); *Knudtson v. City of Coates, 519 N.W.2d 166, 168-69 (Minn.1994)* (free expression clause). The Court is mindful of the remedies clause of the Minnesota Constitution, 976*976 which provides a "certain remedy in the laws" for injuries and wrongs. Minn. Const. Art. I, § 8 (2004). Here, the Court assumes, without deciding, that a Minnesota court would recognize a private right of action to remedy violations of Article I, sections 6, 7 and 10.

*Thompson v. Ross*, 368 F.Supp. 2d 961, 976 (D. Minn. 2005).

Decisions of both the Minnesota Supreme Court and this Court further support this result. In *Doe v. Gomez*, 542 N.W. 17, 21 (Minn. 1995) the Minnesota Supreme Court affirmed a district court's injunction for violation of the Minnesota Constitution, including Article I, § 10. Similarly, in *McGaughtry v. City of Red Wing*, 808 N.W.2d 331, 340 (Minn. 2011) the Minnesota Supreme Court reversed both lower court's rulings that a claim for declaratory relief alleging violations of Article 1, § 10 of the Minnesota Constitution was not justiciable. Decisions from this Court further support this result. *See, e.g., Mikkalson v. City of South St. Paul*, 2016 W.L. 4186935 **12-13 (D.Minn. August 8, 2016) (failing to decide on summary judgment whether private cause of action for injunctive relief under Article 1, §10 existed given that plaintiff could not demonstrate irreparable injury as matter of law)(Cefalu Decl., Ex. 9); *R.S. v. Minnewaska Area School District*, 894 F.Supp. 2d 1128, 1146 (D.Minn.2012) (declining to dismiss state constitutional claims at the motion to dismiss stage). Because Plaintiff has not yet been afforded discovery, we are unable to provide the Court with critical information concerning the number of minorities affected by the racial profiling practices or how widespread such practices are.

It is simply premature to discuss the appropriate scope of injunctive or declaratory relief at this stage of the case, and for the reasons cited in the cases cited above, the motion to dismiss the state constitutional claims is at this point simply premature and should be denied.

## V.   Plaintiff Has Appropriately Pled A False Imprisonment Claim.

Defendant Oman claims he had a right to arrest Plaintiff because she committed a crime in his presence. (Dkt. 10 at 23.) However, as stated above, Plaintiff did not commit

any crime in the presence of Defendant Oman.[8] (Dkt. 1 ¶ 34.) Absent committing a crime in his presence, Defendant Oman cannot arrest her for no Minnesota driver's license. *See supra* at pp. 10-14.

Minnesota courts have long required that the presence requirement actually mean that the officer be in physical presence of a crime.[9] In cases where police were not in the presence, courts have routinely stated that police may not arrest. Courts have ruled against police officers who have arrested individuals who they had not personally witnessed driving. "Where there was no evidence that arresting officers observed defendant 'operating' his pickup truck, which was found parked on shoulder of road with its motor idling and its parking lights on and in which defendant was found lying on seat with his head toward right door and his feet on floor without any part of his body touching truck's operating controls, arrest of defendant for operating a motor vehicle while under the influence of an alcoholic beverage was improper." *State v. Cormican*, 292 Minn. 505 (1972). The fact that third party witnesses could confirm that someone committed a misdemeanor outside the officer's presence is not enough. *State v. McDonnell*, 353 N.W.2d 678, 680 (Minn. Ct. App. 1984). "The purpose of the presence requirement is to prevent warrantless misdemeanor arrests based on information from third parties." *State v. Jensen*, 351 N.W.2d 29, 32 (Minn. Ct. App. 1984).

---

[8] To the extent that the court considers the Motion to Dismiss a Motion for Summary Judgment, this would be a factual dispute that must be decided by a fact-finder.

[9] Where a traffic offense is not committed in the presence of a police officer and best procedure in order to effect proper jurisdiction is by complaint and warrant rather than through use of the Uniform Traffic Ticket. *See* (Op.Atty.Gen. 494a-1, Mar. 14, 1967).

Defendant Oman did not witness Plaintiff commit any crime in his presence and therefore had no legal authority to arrest her under any law. His request for qualified immunity must fail. The case should be allowed to go forward to discovery.

As discussed more fully above, Defendant Oman's custodial arrest of Plaintiff violated Rule 6.01. Regardless of whether Plaintiff's Fourth Amendment claim against Oman stands, this Court has recognized that a violation of Rule 6.01 is sufficient to state a claim for false arrest. *Daniels v. Downing*, 2003 WL 252114, at *7 (D. Minn. Jan. 30, 2003) ("given that an arrest for a misdemeanor is the exception to the normal practice of issuing citations under Rule 6.01, the Court concludes that official immunity does not bar Daniels's false arrest claim) (*emphasis in original*)(Cefalu Decl., Ex. 10).

Defendant Oman attempts to introduce new theories into his motion to dismiss that Plaintiff was arrested not just because "I need to make sure who you are," but because Defendant Oman was now concerned that there was a "substantial likelihood" that Plaintiff would not respond to a citation. (Dkt. 10 at 25.) That claim is unsupported by the record, goes far outside the allegations in the complaint, and requires factual determinations not appropriate at the motion to dismiss phase. As shown in her complaint, Defendant Oman knew who Myriam was, and was not at all concerned about her inability to appear in court in response to a citation. But these new excuses are best left for discovery. The pleadings have shown that Defendant Oman and the City of Coon Rapids are both potentially liable for the violations of Plaintiff's rights. The only legal requirements at this point is that the pleadings be sufficient under the *Iqbal* standard. Which they are, as outlined above.

## CONCLUSION

For all of the reasons set forth above, Plaintiff requests that the court deny Defendants' Motion to Dismiss. In the event the court elects to dismiss certain claims, Plaintiff requests that the court do so without prejudice and with leave to amend the Complaint.

**KUTAK ROCK LLP**

Dated: _May 8, 2018_                    By: ___*s/Amanda R. Cefalu*___

                                    Alain M. Baudry (#0186685)
Amanda Cefalu (#0309436)
Kutak Rock LLP
60 South Sixth Street, Suite 3400
Minneapolis, MN 55402-4513
Telephone: 612-334-5000
Email: Alain.Baudry@kutakrock.com;
           Amanda.Cefalu@kutakrock.com

AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA

Ian Bratlie (#0319454)
ACLU of Minnesota
709 S. Front Street
Suite 709
Mankato, MN 56001
Telephone: 507-995-6575
Email: ibratlie@aclu-mn.org

Teresa Nelson (#269736)
ACLU of Minnesota
2300 Myrtle Avenue
Suite 180
St Paul, MN 55114-1879
Telephone: 651-645-4097
Email: tnelson@aclu-mn.org

***Attorneys for Plaintiff Myriam Parada***

4839-6248-3045.2