# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| MYRIAM PARADA<br><br>                              Plaintiff,<br><br>v.<br><br>ANOKA COUNTY; JAMES STUART,<br>*Anoka County Sheriff*; NICOLAS OMAN,<br>*Coon Rapids Police Officer*; COON<br>RAPIDS POLICE DEPARTMENT;<br>JOHN DOE, *unknown/unnamed*<br>*defendant*; and JANE DOE,<br>*unknown/unnamed defendant*<br><br>                              Defendants. | Civil No. 18-795 (JRT/TNL)<br><br>**MEMORANDUM OPINION AND<br>ORDER** |

Alain M. Baudry and Amanda R. Cefalu, **KUTACK ROCK LLP**, 60 South
Sixth Street, Suite 3400, Minneapolis, MN 55402; Ian Bratlie, **ACLU OF
MINNESOTA**, 709 South Front Street, Suite 1B, Mankato, MN 56001; and
Teresa J. Nelson, **ACLU OF MINNESOTA**, P.O. Box 14720, Minneapolis,
MN 55414, for plaintiff.

Ryan M. Zipf, **LEAGUE OF MINNESOTA CITIES**, 145 University
Avenue West, St. Paul, MN 55103, for Defendants Nicolas Oman and the
City of Coon Rapids.

A substantial number of Latinos – both U.S. citizens and foreign-born residents –

are less likely to contact the police or report crimes, even when they are victims, because

they fear that police will inquire about their immigration status.[1] While the U.S. immigrant

---

[1] *See* Nik Theodore, Insecure Communities: Latino Perceptions of Police Involvement in
Immigration Enforcement 5-6 (2013); Mai Thi Nguyen & Hannah Gill, *Interior Immigration
Enforcement: The Impacts of Expanding Local Law Enforcement Authority*, 53 Urban Studies 14-

population is extremely vulnerable to crime,[2] police mistrust is common within immigrant communities.[3] In Minnesota, law-enforcement agencies fear that the immigrant community's distrust of police results in increased crime against immigrants and decreased reporting of such crimes.[4]

The law-enforcement conduct alleged in this case is precisely the type of conduct that further sows the Minnesota immigrant community's distrust of law-enforcement agencies. Plaintiff Myriam Parada resides in Ramsey, Minnesota. In July 2017, Parada was the victim of an automotive accident. Coon Rapids Police Officer Nicolas Oman arrested Parada for driving without a license. While detained at the Anoka County jail, Defendants contacted Immigration & Customs Enforcement ("ICE") and transferred Parada into ICE custody. Parada is now in removal proceedings.

Parada alleges that she was unlawfully arrested and detained by Defendants because of her race, nationality, and immigration status. She brings this § 1983 action against

---

16 (Feb. 2016); Jill T. Messing, et al., *Latinas' Perception of Law Enforcement: Fear of Deportation, Crime Reporting, and Trust in the System*, 30 J. of Women & Soc. 328, 330 (2015).

[2] *See* Int'l Ass'n of Chiefs of Police, Police Chiefs Guide to Immigration Issues 28 (2007).

[3] Leslye E. Orloff, et al., *Battered Immigrant Women's Willingness to Call for Help and Police Response*, 13 UCLA Women's L.J. 43, 67-69 (2003) (demonstrating low reporting rates of domestic abuse among immigrant women); Sam Torres & Ronald E. Vogel, *Pre and Post-Test Differences Between Vietnamese and Latino Residents Involved in a Community Policing Experiment*, 24 Policing: Int'l J. Police Strat. & Mgmt. 40, 53 (2001) (suggesting that both Vietnamese and Latino immigrant populations are "distrustful of the police and less likely than the general population to report crime").

[4] *See* Minn. Advisory Committee to U.S. Commission on Civil Rights, *Civil Rights and Policing Practices in Minnesota* 22-24 (2018).

Anoka County, Anoka County Sheriff James Stewart, the City of Coon Rapids,[5] Oman, and two unknown defendants for violations of her Fourth and Fourteenth Amendment rights. Parada also brings state-law claims for violations of the Minnesota Constitution and false imprisonment.

Coon Rapids and Oman (collectively, "Coon Rapids Defendants") move to dismiss Parada's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will deny the Coon Rapids Defendants' motion with respect to Parada's Fourth Amendment claims, equal-protection claim, Minnesota Constitution claims, and false-imprisonment claim. However, the Court will grant the Coon Rapids Defendants' motion with respect to Parada's due-process claims, because it will conclude that they are duplicative of her Fourth Amendment claims.

## BACKGROUND

Parada alleges the following facts. (Compl., March 22, 2018, Docket No. 1.)

Parada – a Mexican citizen – resides in Ramsey, Minnesota.[6] (*Id.* ¶ 13, 34-35.) On July 25, 2017, Parada was driving her siblings and cousins home from her younger sister's

---

[5] The case caption of the Complaint erroneously lists "Coon Rapids Police Department" as the defendant. (Compl. at 1, Mar. 22, 2018, Docket No. 1.) The Complaint later identifies "City of Coon Rapids" as the intended defendant. (*Id.* ¶ 16.) The Court will grant Parada leave to both amend the substantive content of the Complaint and correct the case caption. Fed. R. Civ. P. 15(a)(2).

[6] The Complaint does not actually allege that Parada is a Mexican citizen. However, Parada's alleges that she was discriminated against based on her perceived nationality. Moreover, she alleges that she presented her Mexican birth certificate to obtain her Matrícular Card. Pursuant to Constitution of Mexico, individuals "born in the territory of [Mexico], regardless of the nationality of their parents," are Mexican citizens. *See* Constitución Política de los Estados Unidos

birthday party.  (*Id.* ¶ 23.)  Around 6:40 p.m., a Caucasian driver rear-ended Parada.  (*Id.* ¶ 26.)  The other driver called the police, and Oman arrived at the scene around 6:46 p.m.  (*Id.* ¶¶ 28-29.)  Parada called her parents, who came to the scene.  (*Id.* ¶ 27.)

Oman asked Parada for her driver's license, which she did not have.  (*Id.* ¶¶ 33-34.)  Parada gave Oman her proof of insurance and her Matrícula Card – an official identification card issued by the Mexican Consulate.  (*Id.* ¶¶ 34-35.)  The Matrícula Card lists Parada's full name, date of birth, and U.S. address.  (*Id.* ¶ 35.)  It also has a recent photo of Parada and security features to ensure its authenticity.  (*Id.*)  Parada confirmed that all the information on her card was true and accurate, as did her step-father.  (*Id.* ¶¶ 37-38.)  Her step-father told Oman that he was the registered owner of the car and gave Oman his name, which Oman ran through his database.  (*Id.* ¶¶ 37-38.)

Oman went to his vehicle and spoke with Anoka County staff on his personal phone for several minutes.  (*Id.* ¶ 39.)  When Oman returned, he told Parada that his supervisor told him that he needed to "bring her in to get her prints."  (*Id.* ¶¶ 40-41.)  In the police report, Oman wrote that he "transported Parada to jail since I was also unable to positively identify her."  (*Id.* ¶ 44.)

Oman brought Parada to the Anoka County Jail around 7:20 p.m.  (*Id.* ¶ 48.)  Officers handcuffed Parada, patted her down, took her mugshot, and placed her in a cell.

---

Mexicanos, CP, art. 30, Diario Oficial de la Federación 05-02-1917 (Mex.).  The Court has no reason to suspect that Parada has renounced her Mexican citizenship and, therefore, will assume for purposes of this motion that Parada is a Mexican citizen.  Parada will have an opportunity to clarify her citizenship status when amending the Complaint.

(*Id.* ¶¶ 49-52.) According to the jail records, Parada was free to leave on that same day, July 25. (*Id.* ¶¶ 54, 57.)

However, Defendants did not release Parada that day. (*Id.* ¶ 59.) At approximately 11:00 p.m. on July 25, the Anoka County Sheriff's Office brought Parada to one of the unknown defendants, who questioned her for several minutes. (*Id.* ¶ 60.) At approximately 11:30 p.m., Parada was again brought to the unknown defendant to speak with ICE officers. (*Id.* ¶ 61.) Defendants did not advise Parada that she could refuse to speak with the ICE officers. (*Id.* ¶ 84.) The ICE officers questioned Parada about her immigration status. (*Id.* ¶ 62-63.) Parada asked the unknown defendant whether she needed an attorney, and he told her to ask ICE. When Parada asked ICE the same question, an ICE officer replied that "it goes faster without a lawyer." (*Id.* ¶¶ 64-66.) Parada answered the ICE officers' questions about how she entered the United States. (*Id.* ¶ 67.) Parada was then taken back to her cell. (*Id.* ¶ 68.) An hour later, they took her fingerprints. (*Id.* ¶ 68.)

The next day, July 26, ICE sent Anoka County an I-200 Warrant for Arrest of an Alien ("ICE Warrant") and an I-247 ICE Detainer. (*Id.* ¶¶ 69-70.) The ICE Warrant was unsigned and the ICE Detainer was stamped with "Draft Not Complete" on every page. (*Id.* ¶¶ 70, 87.) Neither ICE nor Defendants served Parada with copies of these documents. (*Id.* ¶ 97.)

At approximately 2:00 a.m. on July 26, Defendants brought Parada out of her cell, handed her a citation for driving without a license, and handed her over to two ICE agents. (*Id.* ¶¶ 74-75.) The ICE agents took her to Sherburne County Jail. (*Id.* ¶¶ 75-76.) An

hour after transferring custody of Parada to ICE, Anoka County Defendants notified her family.  (*Id.* ¶ 79.)  Parada is currently in removal proceedings.  (*Id.* ¶¶ 79-80.)

Parada alleges that Coon Rapids and the Anoka County Sheriff's Office have policies and customs which require officers to detain foreign-born persons while awaiting transfer to immigration authorities.  (*Id.* ¶¶ 112, 123, 137, 143, 145, 147, 149, 158, 163, 170.)  She also alleges that Coon Rapids and the Anoka County Sheriff's Office have failed to train their employees on the Fourth Amendment and the rights of immigrants  (*Id.*)

## DISCUSSION

## I.    STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, the Court views the complaint in "the light most favorable to the nonmoving party."  *Lonaker v. Bos. Sci. Corp.*,872 F. Supp. 2d 816, 819 (D. Minn. 2012).  The Court considers all facts alleged in the complaint as true to determine whether the complaint states "a claim to relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility,'" and therefore must be dismissed.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 557 (2007)).  Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion

couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Therefore, to survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Both parties have submitted evidence outside the pleadings in support of their arguments. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Because discovery has not yet begun, the Court concludes that summary judgment is premature. The Court will exclude the submitted evidence and will consider the motion under Rule 12(b)(6).

### A. 42 U.S.C. § 1983

As to each of Parada's claims against Oman, the Court must decide whether Parada states a claim under § 1983 claim and whether Oman is entitled to qualified immunity for claims brought against him in his individual capacity. As to the claims against Coon Rapids, the Court must decide whether Parada can maintain each of her § 1983 claims against the municipality pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).

Under § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution

and laws, shall be liable to the party injured in an action at law,
suit in equity, or proper proceeding for redress.

42 U.S.C. § 1983.

## B. Qualified Immunity

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity only shields individuals sued in their individual capacity and is not a defense for individuals sued in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S. Ct. 548, 661 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

"The determination of whether an officer is entitled to qualified immunity requires consideration of the 'objective legal reasonableness' of the officer's conduct in light of the information he possessed at the time of the alleged violation." *Winters v. Adams*, 254 F.3d 758, 766 (8th Cir. 2001) (quoting *Harlow*, 457 U.S. at 819). The Court must assess (1) whether the facts alleged by plaintiff constitute a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Mitchell v. Shearrer*, 729 F.3d 1070, 1074 (8th Cir. 2013). In order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S. Ct. at 551 (cleaned up). While the

clearly established law must be "particularized to the facts of the case," the Court need not locate a case directly on point in order to conclude that the statutory or constitutional question is beyond debate. *Id.* at 552.

### C. Application of § 1983 to Municipalities

A municipality is a "person" for purposes of § 1983. *Monell*, 436 U.S. at 690. "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) (cleaned up). A municipality may be liable under *Monell* even if the employee is not found liable in his or her individual capacity. *Webb v. City of Maplewood*, 889 F.3d 483, 486 (8th Cir. 2018).

## II. COUNT I: FOURTH AMENDMENT

As to Parada's Fourth Amendment claim, the Court must decide (1) whether Parada states a claim under § 1983, (2) whether Oman is entitled to qualified immunity, and (3) whether Parada can maintain a *Monell* claim against Coon Rapids. Parada alleges two separate and distinct violations of her Fourth Amendment rights. First, Parada alleges that Oman lacked the legal authority to initially arrest her. (Compl. ¶ 126.) Second, Parada alleges that the Defendants' continued detention of Parada after she was cleared for release constituted a new arrest that was unsupported by probable cause. (Compl. ¶¶ 129-30.) The Court will deny the Motion to Dismiss with respect to both Fourth Amendment claims.

The Fourth Amendment protects "against unreasonable searches and seizures" of the person. U.S. Const. amend. IV. "A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). To determine whether an officer had probable cause, the Court "examine[s] the events leading up to the arrest and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Id.* (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)) (cleaned up). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 243-44 (1983)). Whether state law prohibits an arrest is irrelevant to the Fourth Amendment analysis so long as the arrest is supported by probable cause. *Virginia v. Moore*, 553 U.S. 164, 171-72 (2008). An officer is entitled to qualified immunity when there is at least "arguable probable cause." *Gilmore v. City of Minneapolis*, 837 F.3d 827, 832 (8th Cir. 2016).

However, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (citing *United States v. Jacobsen*, 466 U.S. 109, 124 (1985)). For example, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.* When an individual is kept in custody for a new purpose after he or she is entitled to release, he or she is subjected to a new

-10-

seizure that must be supported by a new probable-cause justification.  *Morales v. Chadborne*, 793 F.3d 208, 217 (1st Cir. 2015).

### A.  Initial Arrest

The Court must decide whether Parada states a § 1983 claim for the violation of her Fourth Amendment rights arising from her initial arrest.  Parada argues three theories for why her initial arrest was unlawful:  (1) Oman was not present while Parada was driving without a license, (2) the arrest violated Minnesota Rule of Criminal Procedure 6.01, and (3) Oman extended the stop beyond what was reasonably required to issue a citation for driving without a license.  The Court considers each argument in turn.[7]

First, Parada argues that misdemeanor arrests require a warrant unless the crime is committed in the presence of the arresting officer.  At common law, "[a] warrant was required [for misdemeanor arrests] except when a breach of peace occurred in the presence of the arresting officer."  Wayne R. LaFave, 3 Search and Seizure: A Treatise on the Fourth Amendment § 5.1(b) (5th ed. 2017).  Neither the Supreme Court nor the Eighth Circuit has expressly decided whether the Fourth Amendment "permits a warrantless arrest for a misdemeanor when the alleged offense did not occur in the presence of the arresting

_____

[7] The Coon Rapids Defendants argue that Parada's Fourth Amendment claim is barred by the *Heck* doctrine because she pleaded guilty to the cited offense.  In *Heck v. Humphrey*, the Supreme Court held that a plaintiff cannot maintain a § 1983 claim for violations of the Fourth Amendment where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."  512 U.S. 477, 487 (1994).  Parada does not challenge the validity of her conviction for driving without a license.  Parada's claims stem from the unreasonable length of her initial arrest and her continued detention without probable cause.  If proven, neither theory would invalidate Parada's conviction.

officer." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1258 (8th Cir. 2010); *see also Atwater v. City of Lago Vista,* 532 U.S. 318, 340 n.11 (2001). Although the Eighth Circuit has not decided the issue, it has held that, "[b]ecause the law regarding warrantless misdemeanor arrests for offenses committed outside the presence of the arresting officer is not clearly established under the Fourth Amendment," arresting officers are entitled to qualified immunity. *Gilmore*, 837 F.3d at 834. Because the law was not clear at the time of the arrest, the Court concludes that Oman is entitled to qualified immunity for any argument based on his lack of presence during Parada's commission of the crime.

Second, Parada argues that Oman "lacked the legal authority to take [her] into custody" because the arrest violated Minnesota Rule of Criminal Procedure 6.01. (Compl. ¶ 126.) Rule 6.01 requires officers, in misdemeanor cases, to issue a citation and release the defendant unless it reasonably appears that "(1) the person must be detained to prevent bodily injury to that person or another; (2) further criminal conduct will occur; or (3) a substantial likelihood exists that the person will not respond to a citation." Minn. R. Crim. P. 6.01(a). Taking Parada's allegations as true, Oman violated Rule 6.01. But while States may regulate arrests however they wish, "state restrictions do not alter the Fourth Amendment's protections." *Moore*, 553 U.S. at 166. The Court's only concern is whether Oman had probable cause to arrest Parada; whether Oman violated Rule 6.01 does not affect the Fourth Amendment analysis. Accordingly, the Court concludes that Parada fails to state a claim for a Fourth Amendment violation based exclusively on a violation of Rule 6.01.

Third and finally, Parada argues that the stop and arrest extended beyond the time reasonably required to identify Parada and issue her a citation for driving without a license. "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' – to address the traffic violation that warranted the stop." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015). Parada provided Oman with her Matrícula Card and her proof of insurance for identification. Nevertheless, Oman told Parada that he needed to take her to the jail in order to identify her. However, Parada alleges that Defendants never doubted Parada's identity. (*Id.* ¶¶ 53-56.) This allegation is supported by the fact that Oman said he needed to "get her prints," (*id.* ¶ 40), but no one took Parada's fingerprints upon booking. Indeed, her prints were not taken until almost five hours after she arrived at the jail and until after she had spoken to ICE officers. Even assuming Oman had probable cause to arrest Parada for driving without a driver's license, Parada states a claim that the stop and arrest extended beyond the time required to identify Parada and issue a citation for driving without a license. The Court concludes that Parada states a claim for a Fourth Amendment violation arising from the initial arrest.

The Court must decide whether it was clearly established at the time of the arrest that unreasonably prolonging a traffic stop and subsequently arresting someone under these circumstances violates the Fourth Amendment. *Caballes* and *Rodriguez* clearly establish that a seizure cannot extend beyond the time necessary to issue a traffic ticket. *Caballes*, 543 U.S. at 407; *Rodriguez*, 135 S. Ct. at 1615. And while Parada cannot use Rule 6.01 to establish a Fourth Amendment violation, the Rule is evidence that Oman should know that a full custodial arrest is not necessary – and indeed not even allowed in Minnesota – to

issue a citation for driving without a license.  The Court concludes that Oman has not shown that he is entitled to qualified immunity with respect to Parada's Fourth Amendment claim stemming from the initial arrest.  The Court notes that this is the only Fourth Amendment theory that Parada can assert against Oman in his individual capacity.

The Court must also decide whether Parada can maintain a *Monell* claim against Coon Rapids based on (1) Oman's prolonging of the traffic stop and (2) the fact that Oman was not present when Parada was driving without a license.[8]  Parada alleges that Coon Rapids has a policy or custom of arresting Hispanic drivers for misdemeanor traffic offenses and that its policy of refusing to accept the Matrícular Card is pretext for arresting aliens to detain them for immigration authorities.  (Compl. ¶¶ 145, 147.)  Parada alleges that Oman arrested her pursuant to this policy, even though Oman did not witness her driving without a license.  (*Id.* ¶ 145.)  Indeed, Oman told Parada that his "supervisor told him to bring her in to get her prints" to identify her, which suggests that both Oman and his supervisor were acting pursuant to a policy to (1) disregard the Matrícular Card and (2) arrest Hispanic individuals to detain them for immigration authorities.  (*Id.* ¶ 40.)  This

---

[8] Even though the law is not clearly established, Coon Rapids is not entitled to any form of immunity on this issue.  *See Webb*, 889 F.3d at 485.

The Court will be required to decide whether the Fourth Amendment permits a warrantless arrest for a misdemeanor not witnessed by the arresting officer.  But the Court declines to conduct that analysis at this stage because Parada's Fourth Amendment claim will nevertheless go forward on an alternative theory.  The Court concludes that discovery and subsequent argument are necessary for the Court to make a reasoned decision on the state of the law and whether the Court is required to reach this issue.

inference is supported by allegations that the Defendants waited to take her prints until after they had spoken with ICE agents. The alleged policy caused Oman to overstep the boundaries of Minnesota law and, possibly, the protections of the Fourth Amendment. The Court concludes that Parada states a *Monell* claim against Coon Rapids based on (1) the prolonging of the traffic stop and (2) Oman's absence during the commission of the crime.

Accordingly, the Court will deny the Coon Rapids Defendants' Motion to Dismiss with respect to the Fourth Amendment claims arising from Parada's initial arrest.

## B. Continued Detention

The Court must decide whether Parada states a § 1983 claim for the violation of her Fourth Amendment rights arising from her continued detention.[9]

Parada was cleared for release from the county jail on July 25. Nevertheless, Defendants held her after she was cleared for release. Accordingly, Parada's continued detention must be supported by a new probable-cause justification. *Morales*, 793 F.3d at 217.

---

[9] As a threshold issue, it is not entirely clear to the Court whether Parada is alleging that the Coon Rapids Defendants participated in Parada's continued detention. However, certain allegations suggest that Parada intends to make such claims. Parada alleges that the Coon Rapids Defendants treated her as an immigration detainee, Oman spoke with Anoka County officials on his personal phone before arresting Parada, and Coon Rapids officers regularly arrest Hispanic individuals for immigration purposes. (*Id.* ¶¶ 39, 53, 145.) These allegations support a conclusion that the Coon Rapids Defendants cooperated with the Anoka County Defendants in detaining Parada for immigration purposes.

The Court expects Parada to amend the Complaint if it becomes clear during discovery that the Coon Rapids Defendants did not participate in Parada's continued detention.

The Court must decide whether the Defendants had probable cause to detain Parada after she was cleared for release. "As a general rule, it is not a crime for a removable alien to remain present in the United States. If the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." *Arizona v. United States*, 567 U.S. 387, 407 (2012). "Detaining individuals solely to verify their immigration status would raise constitutional concerns." *Id.* at 413. Even when an official has the authority to detain an individual based on his or her immigration status, the individual's "apparent Mexican ancestry" alone does not justify arrest. *United States v. Brignoni-Ponce*, 422 U.S. 873, 886-87 (1975).

In *Orellana v. Nobles County*, another court in this District held that a plaintiff's continued detention to satisfy an ICE detainer violated his Fourth Amendment rights. 230 F. Supp. 3d 934, 946 (D. Minn. 2017). In *Orellana*, the plaintiff disclosed to officers at a jail that he was not a lawful resident of the United States. *Id.* at 937. The officers notified ICE, which issued a detainer. *Id.* The next day, a state-court judge set bail. *Id.* Sometime later, the plaintiff's spouse sought to bail him out, but the jail refused to accept bail money because of the ICE Detainer. *Id.* at 937-38. Ultimately, the plaintiff pleaded guilty to driving under the influence, received a stayed sentence, and was released. *Id.* at 938. The court concluded that the ICE Detainer did not provide probable cause to detain the plaintiff and that the warrantless detention of the plaintiff violated the Fourth Amendment. *Id.* at 944-46.

Parada's allegations are more egregious than *Orellana*. After July 25, Defendants were not detaining Parada on the suspicion of criminal activity but for a perceived civil

violation of U.S. immigration laws. The misdemeanor citation for driving without a license could not constitute the suspected criminal activity because Parada was cleared for release on that offense. Parada alleges that "Defendants treated [her] as an immigration detainee from the outset." (Compl. ¶ 53.) The Coon Rapids Defendants fail to offer an adequate explanation as to what suspected criminal activity supported Parada's continued detention.

Defendants should have released Parada after clearing her for release. They did not. Oman cannot establish at this stage that he had probable cause to believe that Parada committed a crime warranting her continued detention.

Having established that Parada states a sufficient claim that her Fourth Amendment rights were violated, the Court must decide whether it was clearly established at the time of the arrest that law enforcement cannot detain an alien on suspicion of removability without probable cause to believe that a crime has been committed. It is clearly established that a warrantless arrest must be supported by probable cause of criminal activity, that unlawful presence is not a crime, and that an immigrant's possible removability is insufficient to give rise to probable cause. *See Arizona*, 567 U.S. at 407; *Orellana*, 230 F. Supp. 3d at 944-46. It is also clearly established that an ICE Detainer alone cannot support local law enforcement's continued detention of an alien. *Orellana*, 230 F. Supp. 3d at 945-46. Oman cannot establish at this stage that he is entitled to qualified immunity.

The Court must decide whether Parada can maintain a *Monell* claim against Coon Rapids based on her Fourth Amendment claim. As discussed above, Parada alleges that Coon Rapids has an unwritten policy of "arresting Hispanic motorists for pre-textual reasons to place them in immigration custody" and has deliberately failed to train its

officers on individuals' Fourth Amendment rights. (Compl. ¶¶ 130, 137, 145.) This policy of arresting and detaining Hispanic individuals solely for immigration purposes led to Parada's continued detention. Because Coon Rapids has a policy of detaining Hispanic individuals based on their perceived immigration status, the Court concludes that Parada states a *Monell* claim against Coon Rapids.

Accordingly, the Court will deny the Coon Rapids Defendants' Motion to Dismiss with respect to the Fourth Amendment claims arising from Parada's continued detention.

## III.    COUNTS II AND III:  DUE-PROCESS CLAIMS

The Court must decide whether Parada states § 1983 claims under the Due Process Clause of the Fourteenth Amendment. "Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for the analysis of these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Due-process claims based on allegations of an arrest must be analyzed under the Fourth Amendment. *Greenman v. Jessen*, 787 F.3d 882, 890-91 (8th Cir. 2015); *see also Mendoza v. U.S. Immigration & Customs Enf't*, 849 F.3d 408, 421 (8th Cir. 2017) (affirming dismissal of due-process claims in case of an immigrant arrest). Parada's due-process claims are based on the legality of her initial arrest and continued detention. The Court will grant the Coon Rapids Defendants' Motion to Dismiss with respect to the Fourteenth Amendment due-process claims alleged against them and dismiss Counts II and III against them without prejudice.

## IV.   COUNT IV:  EQUAL PROTECTION CLAIM

As to Parada's equal protection claim, the Court must decide (1) whether she states a claim under § 1983, (2) whether Oman is entitled to qualified immunity, and (3) whether she can maintain a *Monell* claim against Coon Rapids.

First, the Court must decide whether Parada states a § 1983 claim for the violation of her equal-protection rights based on selective enforcement of Minnesota's traffic laws. Immigrants – even if unlawfully present – are protected by the Equal Protection Clause. *Plyler v. Doe*, 457 U.S. 202, 210 (1982).   "[T]he Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996).   A selective-enforcement claim does not require proof that the plaintiff was arrested without probable cause or reasonable suspicion to believe that the plaintiff committed a criminal offense.  *Johnson v. Crooks*, 326 F.3d 995, 999-1000 (8th Cir. 2003).  Rather, the plaintiff must prove that the officer exercised his or her discretion to enforce the laws on account of the plaintiff's race, nationality, or other characteristics. *See id.* at 1000.  "When the claim is selective enforcement of the traffic laws or a racially-motived arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose." *Id.*

Parada alleges that Oman acted "pursuant to an unwritten, policy, custom or pattern of practice to engage in racial and ethnic profiling and arrest[] Hispanic motorists for pretextual reasons to place them in immigration custody."  (*Id.* ¶ 145.)  The facts alleged in the Complaint demonstrate this practice.  Parada was arrested for a misdemeanor driving

offense. (*Id.* ¶ 74.) She alleges that Oman "had issued six (6) citations in the previous year for failure to possess a Minnesota driver's license[] and never arrested anyone." (*Id.* ¶ 46.) If Oman's reason for arresting Parada was not pretextual, the Court would expect that Oman would have arrested these other individuals in order to properly identify the drivers. (*Id.* ¶ 41.) Furthermore, Parada alleges that Defendants continued to detain her, even after she was cleared or release, based on her nationality and suspected immigration status. (*Id.* ¶ 59.)

Parada sufficiently alleges that (1) she was arrested on account of her race, nationality, and perceived immigration status, (2) Oman acted pursuant to an unwritten policy to engage in racial profiling, and (3) other drivers who were similarly situated were not arrested. *Johnson*, 326 F.3d at 999-1000. The Court concludes that Parada states an equal-protection claim.

The Court must decide whether it was clearly established at the time of the arrest that selective enforcement of traffic laws based on race and nationality violates the Equal Protection Clause. The law on selective enforcement based on race and alienage is clearly established. *See Whren*, 517 U.S. at 813. Oman argues that the law is not clearly established that officers must accept a Matrícula Card as a form of identification. Oman stretches this theory too thin. The law clearly prohibits selective enforcement based on race and nationality. Parada has alleged sufficient facts at this stage to suggest that Oman's refusal to accept the Matrícula Card was pretext for selective enforcement, which constitutes discrimination under the Equal Protection Clause. The Court concludes that Oman has not shown that he is entitled to qualified immunity.

The Court must decide whether Parada states a *Monell* claim against Coon Rapids based on the violations of her equal-protection rights. Parada alleges that Coon Rapids has a custom or policy of selectively enforcing traffic laws against Hispanic individuals. (*See id.* ¶ 145.) As described above, Parada's allegations surrounding Oman's conduct support a reasonable inference that Coon Rapids officers – as a matter of policy – refuse to accept the Martrícular Card to arrest and detain Hispanic individuals for immigration authorities. Because Parada states an equal-protection claim arising from selective enforcement, the Court concludes that Parada states a *Monell* claim against Coon Rapids.

Accordingly, the Court will deny the Coon Rapids Defendants' Motion to Dismiss with respect to Parada's equal-protection claim.

## V. MINNESOTA CONSTITUTION CLAIMS

The Court must decide whether Parada states claims under the Minnesota Constitution for violations of Article I, Sections 7 (Due Process) and 10 (Search and Seizure). A plaintiff may not maintain a claim for damages under the Minnesota Constitution unless the Minnesota Supreme Court has recognized the cause of action. *Riehm v. Engelking*, 538 F.3d 952, 969 (8th Cir. 2008). However, Parada only seeks declaratory and injunctive relief for her Minnesota Constitution claims. (Opp'n. at 27-28, May 8, 2018, Docket No. 21.) The Minnesota Supreme Court has entertained declaratory and injunctive claims brought under Article I, Sections 7 and 10. *See, e.g.*, *McCaughtry v. City of Red Wing*, 808 N.W.2d 331, 335, 340 (Minn. 2011); *Doe v. Gomez*, 542 N.W.2d 17, 21, 26 (Minn. 1995). Because Parada only seeks equitable relief, the Court will deny

the Coon Rapids Defendants' Motion to Dismiss with respect to Parada's Minnesota Constitution claims.

## VI.   FALSE IMRPISONMENT

The Court must decide whether Parada has stated a common-law false imprisonment claim against the Coon Rapids Defendants and whether the Coon Rapids Defendants are entitled to official immunity.  As with her Fourth Amendment Claim, Parada alleges two theories of false imprisonment:  (1) the initial arrest and (2) the continued detention.

To establish a false-imprisonment claim against law enforcement, the plaintiff must prove that defendants performed an arrest and that the arrest was unlawful.  *Lundeen v. Renteria*, 224 N.W. 2d 132, 135 (Minn. 1974).  The test for "lawfulness of the plaintiff's arrest is whether it was made with 'probable cause.'"  *Id.* at 136.

Minnesota applies the "official immunity doctrine."  *Elwood v. Rice Cty.*, 423 N.W.2d 671, 677 (Minn. 1988).  Under the official-immunity doctrine, "a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong."  *Id.* (quoting *Sulsa v. State*, 246 N.W.2d 907, 912 (Minn. 1976).  An official is entitled to official immunity when an officer has arguable probable cause to arrest the plaintiff.  *White v. Stenglein*, No. 16-2573, 2016 WL 4707986, at *6 (D. Minn. Sept. 8, 2016).

The Court incorporates its previous Fourth Amendment analysis here.  With respect to the initial arrest, Parada alleges that (1) she was arrested by Oman and (2) Oman was

not present while Parada was driving without a license and unreasonably extended the arrest beyond what was necessary. She alleges that her arrest was willful or malicious, (Compl. ¶ 169), and she supports that claim with allegations that the Coon Rapids Defendants deliberately engaged in racial profiling, (*id*. ¶ 170). Parada states a false-imprisonment claim stemming from her initial arrest.

With respect to her continued detention, Parada alleges that (1) she was unlawfully detained by the Defendants after she was cleared for release and (2) Defendants lacked probable cause to detain her on account of her immigration status. Parada alleges that her continued detention was willful or malicious, (Compl. ¶ 169), and she supports that claim with allegations that Coon Rapids has an unofficial policy or custom of arresting Hispanic motorists simply to place them in immigration custody, (*id.* ¶ 145).

The Court will deny the Coon Rapids Defendants' Motion to Dismiss Parada's false-imprisonment claim.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    The City of Coon Rapids' and Oman's Motion to Dismiss [Docket No. 8] is **GRANTED in part and DENIED in part**.

2.      Counts II and III of the Complaint [Docket No. 1] against Nicolas Oman and

the City of Coon Rapids are **DISMISSED without prejudice.**

3.      Myriam Parada is **GRANTED** leave to amend the Complaint.


DATED:  July 30, 2018                              _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                                      JOHN R. TUNHEIM
                                                                          Chief Judge
                                                              United States District Court