# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Myriam Parada,

      Plaintiff,

v.

Anoka County; Anoka County Sheriff
James Stuart; Coon Rapids Police Officer
Nicolas Oman; City of Coon Rapids; and
Unknown/Unnamed Defendants John Doe
& Jane Doe; *All individuals being sued in
their individual and official capacity*,

      Defendants.

Case No. 18-cv-795 (JRT/TNL)

**ORDER**

---

Alain M. Baudry, Saul Ewing Arnstein & Lehr LLP, 33 South Sixth Street, Suite 4750, Minneapolis, MN 55402; Amanda R. Cefalu and Nathan T. Boone, Kutak Rock LLP, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402; Ian Bratlie, ACLU of Minnesota, 709 South Front Street, Suite 1B, Mankato, MN 56001; and Teresa J. Nelson, ACLU of Minnesota, P.O. Box 14720, Minneapolis, MN 55414 (for Plaintiff);

Andrew T. Jackola and Robert I. Yount, Assistant County Attorneys, Anoka County Attorney's Office, Government Center, 2100 Third Avenue, Seventh Floor, Anoka, MN 55303 (for Defendants Anoka County and Anoka County Sheriff James Stuart);

Alexander James Thillman and Ryan M. Zipf, League of Minnesota Cities, 145 University Avenue West, St. Paul, MN 55103 (for Defendants Coon Rapids Police Officer Nikolas[1] Oman and City of Coon Rapids[2]).

---

[1] In the proposed Second Amended Complaint, the spelling of Officer Oman's first name has been corrected. (*See, e.g.*, Prop. Second Am. Compl. ¶ 19, ECF No. 59-1.)

[2] The Coon Rapids Police Department was erroneously included in the caption of the initial Complaint, and was removed with the filing of the Amended Complaint (ECF No. 40). *Parada v. Anoka Cty.*, 332 F. Supp. 3d 1229, 1236 n.5 (D. Minn. 2018).

# I. INTRODUCTION

This matter comes before the Court on Plaintiff Myriam Parada's Motion for Leave to Amend Complaint and Modify the Pretrial Scheduling Order (ECF No. 59). A hearing was held on July 25, 2019. (ECF No. 73.) Alain M. Baudry and Ian Bratlie appeared on behalf of Plaintiff. Andrew T. Jackola appeared on behalf of Defendants Anoka County ("County") and Anoka County Sheriff James Stuart ("Sheriff Stuart") (collectively, "County Defendants"). Ryan Zipf appeared on behalf of Defendants Coon Rapids Police Officer Nikolas Oman ("Officer Oman") and City of Coon Rapids ("City") (collectively, "City Defendants").

# II. BACKGROUND

Plaintiff is a citizen of Mexico and lives in Ramsey, Minnesota. (Proposed Second Am. Compl. ¶ 13.) Plaintiff entered the United States legally as a child. (*Id.*) On July 25, 2017, Plaintiff was rear-ended by a Caucasian driver while driving some family members home from a birthday party. (*Id.* ¶¶ 23, 26.) Plaintiff called her parents, who came to the scene. (*Id.* ¶ 27.) The other driver called the police, and Officer Oman responded. (*Id.* ¶ 28.) Officer Oman permitted the other driver, who "had 12 convictions for traffic violations since 2012 including DWI, speeding and obstructing the legal process," to leave without a citation. (*Id.* ¶¶ 30, 31.)

Officer Oman asked Plaintiff for her driver's license. (*Id.* ¶ 33.) Plaintiff "did not have a Minnesota driver's license," and instead "gave him her proof of insurance and a Mexican Consular card, commonly referred to as a Matricula Consular card." (*Id.* ¶ 34.) "The Matricula Consular card is an official identification card issued by the Mexican

consulate." (*Id.*) Plaintiff's "Matricula Consular card listed her full name, date of birth and address in the United States"; included "a recent photo of her"; and contained "security features to ensure its authenticity." (*Id.* ¶ 35.) Plaintiff confirmed that all of the information on her Matricula Consular card was accurate. (*Id.* ¶ 36.)

Plaintiff's step-father also confirmed the information was accurate and that he was the registered owner of the car. (*Id.* ¶ 37.) Plaintiff's step-father gave Officer Oman "a copy of his Minnesota driver's license." (*Id.*) "The address on Plaintiff's Matricula Consular card was the same address as Plaintiff's step-father's Minnesota driver's license." (*Id.* ¶ 38.) "[T]he VIN number in the Department of Motor Vehicles database of a [car] registered . . . . [to Plaintiff's step-father] matched the VIN number on the proof of insurance card in the glove compartment of the car [Plaintiff] was driving." (*Id.*) Officer Oman "ran the name of Plaintiff's step-father through his database." (*Id.* ¶ 39.)

Officer Oman "then spoke with Anoka [C]ounty staff on his personal phone inside his car for several minutes." (*Id.* ¶ 40.) When Officer Oman returned, "he told [Plaintiff] that his supervisor told him to bring her in to get her prints," and "'I need to make sure who you are.'" (*Id.* ¶¶ 41-42.) Plaintiff was arrested and taken to the Anoka County Jail. (*Id.* ¶ 44.) In a report, Officer Oman "wrote . . . that he 'transported [Plaintiff] to jail since I was also unable to positively identify her.'" (*Id.* ¶ 45.)

Officer Oman brought Plaintiff to the Anoka County Jail around 7:20 p.m. (*Id.* ¶ 50.) At the Anoka County Jail, Officer Oman completed an "Authority to Detain" form, listing Plaintiff's name, address, and date of birth as provided at the scene. (*Id.* ¶ 51.) There was no indication that Officer Oman did not know who Plaintiff was. (*Id.*) The

"Authority to Detain" form contains "a section entitled 'Reason for Detention for Misdemeanors,'" and has boxes to check to indicate that the person is not eligible for immediate release.  (*Id.* ¶ 52.)  Officer Oman did not check any of these boxes "and did not make any notations which would suggest that [Plaintiff] was not eligible for immediate release."  (*Id.*)  Records indicate that Plaintiff "was placed into custody and handed over to the Jail only because of a citation for driving without a [Minnesota] driver's license."  (*Id.* ¶ 51.)

At the Anoka County Jail, Plaintiff was handcuffed, patted down, photographed, and placed in a cell.  (*Id.* ¶¶ 53, 55, 56.)  Records indicate that Plaintiff was cleared and free to leave the same day.  (*Id.* ¶ 59; *see id.* ¶ 62.)  In an e-mail to Plaintiff's counsel, Lieutenant Sheila Larson with the Anoka County Sheriff's Office explained that "'[Plaintiff] was arrested for a Misdemeanor tag/ticket charge, which means she would then be processed for release and given a copy of the tag.  There are a few targeted misdemeanors that would require us to hold her until seen by a judge, she was not brought in for one of those types of Misdemeanors.'"  (*Id.* ¶ 59.)

Plaintiff was not, however, released on July 25.  (*See id.* ¶ 64.)  At approximately 11:00 p.m., Plaintiff was brought to an unidentified County staff member, the unknown County Defendant, "who questioned her for a few minutes and then brought her back to her cell."  (*Id.* ¶ 67.)  About half an hour later, Plaintiff was again brought to see the unknown County Defendant, who "handed [her] a phone and instructed [her] to talk to the person on the other end."  (*Id.* ¶¶ 68, 69.)

On the other end of the line were agents with United States Immigration and

Customs Enforcement ("ICE"). (*Id.* ¶ 70.)  ICE asked Plaintiff if she was a United States citizen and how she arrived in the United States. (*Id.*)  Plaintiff asked the unknown County Defendant if she needed a lawyer, and was told to ask ICE. (*Id.* ¶¶ 71, 72.)  ICE told Plaintiff "that 'it goes faster without a lawyer.'" (*Id.* ¶ 73.)  Plaintiff then told ICE "how she entered the United States." (*Id.* ¶ 74.)  After Plaintiff was done speaking with ICE, the unknown County Defendant took her back to her cell. (*Id.* ¶ 75.)  Plaintiff was fingerprinted approximately an hour later. (*Id.*)

In the early morning hours of July 26, ICE sent an I-200 Warrant for Arrest of an Alien ("ICE Warrant") and I-247 ICE Detainer ("ICE Detainer") to the Anoka County Jail. (*Id.* ¶¶ 76, 77, 93.)  The ICE Warrant was unsigned and not served on Plaintiff. (*Id.* ¶¶ 76, 94, 104.)  The ICE Detainer was stamped "Draft Not Complete" on each page and also not served on Plaintiff. (*Id.* ¶¶ 77, 104.)  Around 2:00 a.m., Plaintiff was brought out of her cell, given a citation for not having a Minnesota driver's license, and handed over to two ICE agents. (*Id.* ¶¶ 81, 82.)  Plaintiff was handcuffed, shackled, and taken to the Sherburne County Jail. (*Id.* ¶ 84.)  About an hour later, Plaintiff's family was informed that she was in ICE custody. (*Id.* ¶ 85.)  Plaintiff is currently in removal proceedings. (*Id.* ¶ 87.)

Among others, Plaintiff brings claims against Defendants pursuant to 42 U.S.C. § 1983 for violations of her constitutional rights and false imprisonment under Minnesota common law.

### III. MOTION TO AMEND

Plaintiff requests leave to amend the Amended Complaint to seek punitive damages in connection with her federal § 1983 claims and common-law false-imprisonment claim. Plaintiff also seeks leave to add a § 1983 claim for violation of her equal-protection rights under the Fourteenth Amendment against the County Defendants.

#### A. Legal Standard

With the exception of amendments as a matter of course, the Federal Rules of Civil Procedure permit a party to "amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rules further provide that leave should be freely given "when justice so requires." *Id.* There is, however, "no absolute right to amend" and a finding of undue delay, bad faith, dilatory motive, undue prejudice to the non-moving party, or futility may be grounds to deny a motion to amend. *Doe v. Cassel*, 403 F.3d 986, 990-91 (8th Cir. 2005). "Fundamentally, 'the grant or denial of an opportunity to amend is within the discretion of the District Court.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 963 (8th Cir. 2015) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

#### B. Equal-Protection Claim Against the County Defendants

The Court begins with Plaintiff's proposed § 1983 claim for violation of her equal-protection rights under the Fourteenth Amendment against the County Defendants.

##### 1. Good Cause

With the exception of motions to seek punitive damages, the deadline for motions to amend the pleadings was December 15, 2018. (ECF No. 56 at 3.) As Plaintiff's motion

was filed after that deadline, Plaintiff must show good cause for modification of the deadline. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008). "The primary measure of good cause is the movant's diligence in attempting to meet the scheduling order's requirements." *Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014) (quotation omitted); *see also Sherman*, 532 F.3d at 716-17. "The 'good cause' standard is an exacting one, for it demands a demonstration that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension." *Khoday v. Symantec Corp.*, No. 11-cv-180 (JRT/TNL), 2013 WL 12141434, at *2 (D. Minn. May 15, 2013) (quotation omitted).

Plaintiff asserts that she discovered the basis for her proposed equal-protection claim against the County Defendants during a 30(b)(6) deposition of the County, which took place on June 18, 2019. The County appeared through Commander David Pacholl.[3] During the deposition, Commander Pacholl testified that the Anoka County Jail notifies ICE as part of its booking procedure when an individual identifies him or herself as having been born outside of the United States, states that he or she is not a United States citizen or is a foreign national, or provides "data" from another country. (Dep. of David Pacholl 160:12-169:1, Ex. 4 to Aff. of Amanda Cefalu, ECF No. 60-4.) Commander Pacholl testified that there is an automated, law-enforcement electronic communication program through which ICE is notified, and the Anoka County Jail may also follow up with ICE via telephone if a response is not received in connection with the automated notification.

---

[3] At the hearing, counsel for the County Defendants stated that Commander Pacholl is the highest ranking official for the Anoka County Jail.

(Pacholl Dep. 163:1-165:13.)  It is this automatic notification to ICE that forms the basis of Plaintiff's proposed equal-protection claim.  *See infra* Section III.B.2.b.

The County Defendants respond that parties have been engaged in discovery for nearly a year, and Plaintiff could have taken this deposition sooner.  They additionally respond that, with little time left for fact discovery, it "is too late" for Plaintiff "to inject a new theory of liability" into this case.  (County Opp'n at 14, ECF No. 68.)  At the hearing, the Court inquired as to whether the existing pretrial schedule would need to be amended should Plaintiff be permitted to add this claim.  Plaintiff and the County Defendants each confirmed that no adjustments would be needed.

The Court finds that Plaintiff has been diligent in attempting to meet the requirements of the scheduling order.  Plaintiff reasonably pursued information regarding the County Defendants' policies and communications with ICE through other discovery methods during the fact discovery period, and learned of the automatic notification process during a 30(b)(6) deposition taken more than two months before the close of fact discovery.  Once she became aware of the automatic notification process, Plaintiff promptly moved to amend.  Further, having found that Plaintiff was diligent in meeting the requirements of the scheduling order, it is also relevant the County Defendants have not articulated any specific prejudice resulting from the timing of the amendment.  As stated above, Plaintiff and the County Defendants agree that, if granted, the proposed amendment would not affect any of the existing deadlines.  Accordingly, Plaintiff has shown good cause to seek leave to amend past the December 15, 2018 deadline.

## 2. Futility of the Amendment

The County Defendants oppose Plaintiff's proposed equal-protection claim on grounds that it is futile.

### a. Legal Standard

"Futility is a well-recognized basis for denying a proposed amendment." *ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*, 355 F. Supp. 3d 785, 793 (D. Minn. 2019) (citing *Foman*, 371 U.S. at 182); *see, e.g.*, *Lansing v. Wells Fargo Bank, N.A.*, 894 F.3d 967, 973-74 (8th Cir. 2018) ("[A] district court properly denies leave when a proposed amendment would be futile."); *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 589 (8th Cir. 2018) ("However, futility is a valid basis for denying leave to amend." (quotation omitted)). "An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (quotation omitted); *accord Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008) ("[W]hen the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.").

"To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *U.S. ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *Raynor*, 690 F.3d at 955.

### b. Allegations

Plaintiff's proposed equal-protection claim is based on the County Defendants automatically notifying ICE whenever a person born outside of the United States is brought to the Anoka County Jail and selectively detaining foreign-born persons who are otherwise eligible for release.[4] The district court previously articulated the elements of an equal-

---

[4] Plaintiff inconsistently refers to the class of individuals she alleges were subject to differing treatment. Throughout Plaintiff's pleadings and in her memorandum in support of the instant motion, Plaintiff appears to refer to the same class of individuals interchangeably as "foreign-born" persons and "noncitizens." Such terms are not interchangeable. While an individual may fall into both categories, an individual may also be born outside of the United States and still be a citizen of the United States. More often than not, Plaintiff uses the term "noncitizens." (*Compare, e.g.*, Proposed Second Am. Compl. ¶¶ 130, 192, 195, A-C (foreign-born) *with* ¶¶ 65, 66, 160-162, 165 (noncitizen) *with* ¶¶ 6, 119 (use of both); Pl.'s Mem. in Supp. *passim* (use of noncitizen, not foreign-born).) At the hearing, the Court sought clarification as to the class of individuals to which Plaintiff is referring. Plaintiff's counsel stated that the class of individuals at issue were people born outside of the United States, *i.e., foreign-born*, not noncitizens. Based on the representation of Plaintiff's counsel, the Court uses the term "foreign-born." *See infra* n.7.

protection claim based on selective enforcement:

> Immigrants—even if unlawfully present—are protected by the Equal Protection Clause. *Plyler v. Doe*, 457 U.S. 202, 210, 102 S. Ct. 2382, 72 L.Ed.2d 786 (1982). "[T]he Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L.Ed.2d 89 (1996). A selective-enforcement claim does not require proof that the plaintiff was arrested without probable cause or reasonable suspicion to believe that the plaintiff committed a criminal offense. *Johnson v. Crooks*, 326 F.3d 995, 999-1000 (8th Cir. 2003). Rather, the plaintiff must prove that the officer exercised his or her discretion to enforce the laws on account of the plaintiff's race, nationality, or other characteristics. *See id.* at 1000. "When the claim is selective enforcement of the traffic laws or a racially-motived arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose." *Id.*

*Parada*, 332 F. Supp. 3d at 1244.

Plaintiff alleges that the County Defendants "acted pursuant to an unwritten policy, custom, or pattern or practice to engage in discrimination on the basis of national origin or ethnicity by automatically contacting ICE any time a [foreign-born person] is brought to the Anoka County [Jail]." (Proposed Second Am. Compl. ¶ 160; *see* Proposed Second Am. Compl. ¶ 65.) Plaintiff further alleges that the County Defendants detain foreign-born persons who are otherwise eligible for release longer than similarly-situated individuals, namely, until ICE arrives, thereby discriminating against foreign-born persons based on their national origin and/or ethnicity. (Proposed Second Am. Compl. ¶¶ 65, 161-62, 165.) Plaintiff also alleges that the County Defendants "have intentionally targeted Hispanic individuals who are brought to the Anoka County [J]ail to be subject to unlawful detention

11

and turnover to ICE." (Proposed Second Am. Compl. ¶ 164.)

The County Defendants complain that Plaintiff has not articulated how this "class" of persons allegedly subject to different treatment "has been or continues to suffer a harm associated with their distinct treatment," arguing that "the claim is suspect because who else, besides non-citizens, would be subject to the jurisdiction of ICE for purposes of checking immigration status." (County Opp'n at 15.) Plaintiff's proposed equal-protection claim is not, however, solely grounded in the County Defendants' communications with ICE. Plaintiff has alleged that foreign-born persons who are otherwise eligible for release are detained longer than other individuals otherwise eligible for release based on their race, nationality, and perceived immigration status. The harm alleged is the *prolonged detention* of a foreign-born person who is otherwise eligible for release. The remainder of the County Defendants' arguments go to the merits of Plaintiff's proposed equal-protection claim and not to whether Plaintiff has stated a claim.

Here, Plaintiff has plausibly alleged that (1) she was eligible for release but detained on account of her race, nationality, and perceived immigration status; (2) the County Defendants acted pursuant to an unwritten policy, custom, pattern or practice to engage in racial profiling, and (3) other similarly situated individuals eligible for release were not subject to such detention. *See Parada*, 332 F. Supp. 3d at 1245. Plaintiff's proposed equal-protection claim against the County Defendants is not futile, and therefore the Court will grant Plaintiff's motion with respect to this claim.

## C. Punitive Damages

Plaintiff also seeks leave to include a request for punitive damages in connection with her federal § 1983 claims and common-law, false-imprisonment claim. At the hearing, Plaintiff clarified that she is only seeking punitive damages against Officer Oman and Sheriff Stuart *individually*, not in their official capacities, and not against the governmental entities. Plaintiff's motion to add punitive damages is timely.

### 1. § 1983 Claims

A request to add punitive damages in connection with a claim brought pursuant to 42 U.S.C. § 1983 is governed by Rule 15 of the Federal Rules of Civil Procedure. *Le-Vert-Woitalla v. Carver Cty.*, No. 11-cv-238 (JRT/JJK), 2011 WL 13233268, at *5 (D. Minn. July 7, 2011). While the City Defendants do not concede that Plaintiff is entitled to recover punitive damages in connection with her § 1983 claims against Officer Oman in his individual capacity, they do not object to Plaintiff's request to seek such damages. The County Defendants object to the inclusion of a request for punitive damages against Sheriff Stuart on grounds that he was not personally involved in the events in question and is not liable on Plaintiff's claims.

"Punitive damages may be awarded under 42 U.S.C. § 1983 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Schaub v. VonWald*, 638 F.3d 905, 922 (8th Cir. 2011) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)); *accord Washington v. Denney*, 900 F.3d 549, 563-64 (8th Cir. 2018). "Proving reckless indifference requires evidence that the defendant acted in the face of a perceived risk that

his or her actions would violate federal law." *McAdoo v. Martin*, 899 F.3d 521, 527 (8th Cir. 2018) (quotation omitted). "Punitive damages punish a defendant for outrageous, intentional, or malicious conduct, and deter similar extreme conduct in the future." *Schaub*, 638 F.3d at 922-23 (footnote omitted). "It is a question of fact whether a defendant's conduct was motivated by an evil motive or involves reckless indifference to the federally protected rights of others." *Id.* at 923. Thus, "[w]hile an award of compensatory damages is mandatory upon a finding of liability, punitive damages are awarded or rejected in a particular case at the discretion of the factfinder once sufficiently serious misconduct by the defendant is shown." *Washington*, 900 F.3d at 563 (quotation omitted). "The factfinder focuses on the defendant's intent in determining whether to award punitive damages and whether the defendant's conduct is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards." *Id.* at 563-64 (quotation omitted).

The County Defendants are essentially asking this Court to render a dispositive ruling on the merits of Plaintiff's claims. Yet, the County Defendants did not challenge the sufficiency of Plaintiff's existing § 1983 claims in a motion to dismiss and, as stated above, the Court has concluded that Plaintiff's proposed equal-protection allegations state a claim. Punitive damages are authorized in connection with § 1983 claims. *See, e.g.*, *Schaub*, 638 F.3d at 922; *Le-Vert-Woitalla*, 2011 WL 13233268, at *5. The County Defendants can argue at a more procedurally appropriate juncture the merits of their position, including fundamental questions of liability and whether the evidence supports a finding of evil motive, intent, or reckless or callous indifference to the federally protected rights of others.

Therefore, Plaintiff's motion is granted with respect to her § 1983 claims, and she may amend the Amended Complaint to seek punitive damages against Officer Oman and Sheriff Stuart *in their individual capacities* in connection with her § 1983 claims. Consistent with this ruling, the Court will permit the inclusion of the proposed additional factual allegations.

### 2. False-Imprisonment Claim

Plaintiff also seeks leave to pursue punitive damages against Officer Oman and Sheriff Stuart in connection with her common-law false imprisonment claim. Plaintiff has presented her arguments under Minn. Stat. §§ 549.191 and 549.20. (Pl.'s Mem. in Supp. at 12-14, ECF No. 77; *see* Pl.'s Mem. in Supp. at 19-20.) Accordingly, the Court proceeds thereunder. *Cf. Shank v. Carleton College*, No. 16-cv-1154 (PJS/HB), 2018 WL 4961472, at *4 (D. Minn. Oct. 15, 2018).

### a. Legal Standard

Under Minnesota law, a party must move for leave to amend the pleadings to include punitive damages. Minn. Stat. § 549.191; *Olson v. Snap Prods., Inc.*, 29 F. Supp. 2d 1027, 1034 (D. Minn. 1998). "The motion must allege the applicable legal basis under [§] 549.20 or other law for awarding punitive damages in the action and must be accompanied by one or more affidavits showing the factual basis for the claim." Minn. Stat. § 549.191.[5] "[I]f

---

[5] At the hearing, Plaintiff presented a collection of 14 exhibits to the Court in support of her motion ("Hearing Exhibits"). Some of the Hearing Exhibits were duplicative of exhibits attached to the affidavit of Amanda Cefalu filed in support of Plaintiff's motion. These duplicative exhibits include: Plaintiff's Matricula Consular card (Ex. 1 to Cefalu Aff., ECF No. 60-1; Hearing Ex. 1); the preliminary expert report of Roy Bedard (Ex. 2 to Cefalu Aff., ECF No. 60-2; Hearing Ex. 9); the Authority to Detain Form (Ex. 3 to Cefalu Aff., ECF No. 60-3 at 2; Hearing Ex. 8); Officer Oman's incident report (Ex. 3 to Cefalu Aff., ECF No. 60-3 at 3; Hearing Ex. 7); excerpts from Commander Pacholl's 30(b)(6) deposition (Ex. 4 to Cefalu Aff., ECF No. 60-4 at 2-15; Hearing Ex. 11); e-mail correspondence on April 17, 2017, between Commander Pacholl and Bryan R. Lindberg (Ex. 4 to Cefalu Aff., ECF

the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings." *Id.*

Punitive damages are permitted "only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20, subd. 1(a).

> A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>
> > (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
> >
> > (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

*Id.*, subd. 1(b). "Clear and convincing evidence is more than a preponderance of the

No. 60-4 at 19-20; Hearing Ex. 12); and a January 5, 2018 e-mail from Lieutenant Larson to Plaintiff's counsel (Ex. 4 to Cefalu Aff., ECF No. 60-4 at 21; Hearing Ex. 10). Hearing Exhibits 2 and 3 were not filed in connection with the instant motion, but appear to have been previously filed as part of Plaintiff's opposition to the City Defendants' motion to dismiss. *But see Parada*, 332 F. Supp. 3d at 1238 (declining to consider evidence submitted outside of the pleadings on motion under Fed. R. Civ. P. 12(b)(6)). Hearing Exhibit 2 is the insurance card of Plaintiff's stepfather. (ECF No. 22-2.) Hearing Exhibit 3 is the Minnesota driver's license of Plaintiff's stepfather. (ECF No. 26.) Hearing Exhibit 6 is a copy of a PATROL ("Police Accredited TRaining OnLine" [sic]) course summary for misdemeanor arrests, which was appears to be training that was provided to Officer Oman. A single page (CR000015) of this three-page (CR000013-15) summary was attached to Plaintiff's preliminary expert report. (Ex. 2 to Cefalu Aff., ECF No. 60-2 at 6.)

     Hearing Exhibits 4, 5, 13, and 14 were presented for the first time at the hearing. At the hearing, Plaintiff's counsel explained that Hearing Exhibit 4 is the information returned when Officer Oman ran the car Plaintiff was driving. Hearing Exhibit 5 was described as an example of information returned if someone were to perform an Internet search for "Matricula Consular," which Plaintiff's expert opined "[a] curious officer could . . ." do. (Ex. 60-2 at 3.) Hearing Exhibit 13 is a copy of the district judge's ruling on the City Defendants' motion to dismiss. Hearing Exhibit 14 contains excerpts from the July 24, 2019 depositions of Lieutenant Larson and Wayne Heath. These depositions were taken the day before the hearing, and the transcript excerpts provided to the Court are uncertified, rough drafts.

     At the hearing, the Court expressed frustration with such after-the-fact submissions, presented on the day of the hearing, after briefing had been complete. The Court also expressed reservations about the use of uncertified, unofficial transcripts, and Plaintiff agreed to proceed without them. *Plaintiff shall file Hearing Exhibits 4, 5, and 6 within 7 days from the date of this Order.*

16

evidence but less than proof beyond a reasonable doubt." *In re Levaquin Prods. Liab. Litig.*, MDL No. 08-1943 (JRT), No. 08-cv-5743 (JRT), 2010 WL 7852346, at *5 (D. Minn. Nov. 9, 2010) (quotation omitted); *accord Olson*, 29 F. Supp. 2d at 1036. *Olson* instructs that this standard is satisfied when "the evidence is sufficient to permit the Jury to conclude that it is 'highly probable' that the defendant acted with deliberate disregard to the rights or safety of others." 29 F. Supp. 2d at 1036 (quotation omitted).

At this stage, "[a] plaintiff need not demonstrate an entitlement to punitive damages *per se*, but only an entitlement to allege such damages." *Berczyk v. Emerson Tool Co.*, 291 F. Supp. 2d 1004, 1008 (D. Minn. 2003) (footnote omitted); *accord In re Levaquin Prods. Liab. Litig.*, 2010 WL 7852346, at *6. Under Minnesota law, "'prima facie' does not refer to a quantum of evidence"; rather, "prima facie evidence is that evidence which, if unrebutted, would support a judgment in that party's favor." *Olson*, 29 F. Supp. 2d at 1034 (quotations omitted). The Court does not make any credibility determinations or consider challenges to the evidence when determining whether a prima facie showing has been made. *Freeland v. Fin. Recovery Servs., Inc.*, 790 F. Supp. 2d 991, 994 (D. Minn. 2011). Nevertheless, "when presented with a [m]otion for leave to assert a punitive damage claim, the function of the Court is to do more than 'rubber stamp' the allegations in the [m]otion papers." *Ulrich v. City of Crosby*, 848 F. Supp. 861, 868 (D. Minn. 1994). "[T]he Court must carefully scrutinize the evidence presented by the moving party to make sure that it amounts to a prima facie showing that the substantive requirements for punitive damages have been met." *Healey v. I-Flow, LLC*, 853 F. Supp. 2d 868, 873 (D. Minn. 2012); *see Ulrich*, 848 F. Supp. at 868-69.

### b. Elements of False Imprisonment

"The tort of false imprisonment or false arrest protects the personal interest in freedom from restraint of movement." *Strei v. Blaine*, 996 F. Supp. 2d 763, 789 (D. Minn. 2014) (quotation omitted); *see also Riehm v. Engelking*, 538 F.3d 952, 969 (8th Cir. 2008) ("According to Minnesota common law, [a]n individual may not, without legal justification, be confined against his or her will." (quotation omitted)). "An arrest made without proper legal authority is a false arrest, and any subsequent restraint is false imprisonment." *Binion v. City of St. Paul*, 788 F. Supp. 2d 935, 949 (D. Minn. 2011) (quotation omitted); *accord Strei*, 996 F. Supp. 2d at 789. "To establish a false-imprisonment claim against law enforcement, the plaintiff must prove that defendants performed an arrest and the arrest was unlawful." *Parada*, 332 F. Supp. 3d at 1246.

### i. Officer Oman

Plaintiff argues that "there is evidence from which it may be inferred that Officer Oman was never in doubt about [her] true identity, and made no attempt to consider relying on the available corroboration," and that a reasonable jury could conclude that Officer Oman "intentionally imprisoned [her] on false pretenses for the purpose of getting ICE involved." (Pl.'s Mem. in Supp. at 20-21.)

Plaintiff has presented evidence that Officer Oman had before him several pieces of information corroborating her identity. These included her Matricula Consular card, the insurance card, the driver's license of her stepfather, and the results of the search Officer Oman ran on the car she was driving. Plaintiff has also presented evidence in the form of a preliminary expert report that, along with her self-identification and her stepfather's

verbal identification, a reasonable officer would have accepted the information provided by Plaintiff and concluded that she was who she said she was and resided at the address shown.

As to Plaintiff's allegation that Officer Oman was "motivated by anti-immigrant animus," Plaintiff states that she "discovered . . . [that Officer] Oman issued at least six citations for no Minnesota driver's license in the last year without arresting the individuals and taking them into custody," and "liked" two individuals and a news organization on social media, which "have publicly professed strongly anti-immigrant views." (Pl.'s Mem. in Supp. at 10-11.) Plaintiff further states,

> upon information and belief, that based upon his years of working for the [City's] Police Department, and his numerous interactions with the Anoka County Jail and Sheriff's department, Officer Oman was aware of [the County's] policy or practice of automatically contacting ICE when non-US citizens were brought to the Anoka County [J]ail and thus that [she] would come to the attention of ICE by virtue of his decision to detain her.

(Pl.'s Mem. in Supp. at 17.) Yet, Plaintiff has not presented evidence of situations where Officer Oman previously issued citations to, rather than arresting, an individual without a Minnesota driver's license. Plaintiff has not presented evidence that Officer Oman was aware that the County would contact ICE as part of its booking process. Nor has Plaintiff presented evidence of Officer Oman's tenure with the City's police department or his prior interactions with the Anoka County Jail and County Defendants.

With respect to social media, Plaintiff has not presented evidence from which a jury could reasonably infer that Officer Oman was motivated by—or even has—anti-immigrant

views.  Plaintiff has attached a print-out from Officer Oman's Facebook page, showing that Officer Oman has "liked" more than 160 social media sites, including restaurants, automobile manufactures, public figures, law enforcement agencies, news organizations, and sporting goods retailers, among others.  (Ex. 5 to Cefalu Aff., ECF No. 60-5.)  Of these, Plaintiff singles out three and states these two individuals and a news organization have expressed anti-immigrant views.  Other than excerpting a quote from a news article without including the article itself, Plaintiff has not presented evidence regarding the purported anti-immigrant views of one of these individuals.  Plaintiff has not presented evidence regarding the news organization other than to state that it aired a program on which the second individual appeared.  As for the second individual, Plaintiff has included an article which quotes statements the second individual made during the program aired by the news organization.  But, even assuming these two individuals and the news organization at one point or another expressed anti-immigrant views, *there is no evidence in the record that Officer Oman shares or endorses these views*.  There is no evidence in the record as to why Officer Oman "liked" the social media sites of these two individuals and the news organization.  Plaintiff is asking this Court to engage in pure speculation as to Officer Oman's interest in these three social media sites.[6]

Plaintiff also purports to rely the district court's ruling on the City Defendants' motion to dismiss as evidence that her arrest was pretextual.  The district court, however, was commenting on the sufficiency of Plaintiff's *allegations* and whether she had stated a

---

[6] To say nothing of the complicated potential First Amendment issues that may arise in connection with presumed imputations of invidiousness based on what news or social media one follows.

claim, not evidence. In fact, the district court acknowledged that evidence had been submitted outside of the pleadings in connection with the motion to dismiss, but expressly "exclude[d] the submitted evidence and . . . consider[ed] the motion under Rule 12(b)(6)." *Parada*, 332 F. Supp. 3d at 1238. Under these circumstances, the district court's ruling does not supply a factual basis to support Plaintiff's contention that Officer Oman acted with deliberate disregard for her rights.

Rather than the pretextual, anti-immigrant motive Plaintiff asks the Court to infer, the unrebutted evidence could as easily suggest that Officer Oman was in fact unfamiliar with a Matricula Consular card, and brought Plaintiff in because he was not able to verify her identification. *See Romano v. ReliaStar Life Ins. Co.*, No. 12-cv-137 (SRN/JJK), 2012 WL 5907397, at *6 (D. Minn. Nov. 26, 2012). While Plaintiff's expert has opined that a reasonable officer would have relied on the Matricula Consular card, Plaintiff has also presented evidence in the form of a memorandum from the City's chief of police, stating that he had "never heard of a Matricula Consular card" prior to this incident and was not aware "of any State Law or Court Order instructing law enforcement to accept this card as proof of identity." (Ex. 7 to Cefalu Aff., ECF No. 60-7 at 2.) Moreover, as Plaintiff herself points out, Officer Oman did not check any of the exceptions to eligibility for immediate release "and did not make any notations which would suggest that [she] was not eligible for immediate release" when completing the Authority to Detain form at the Anoka County Jail. (Pl.'s Mem. in Supp. at 7.) The possibility of an innocent explanation for Officer Oman's decision to arrest Plaintiff undermines her argument that she has presented prima facie evidence that Officer Oman acted with deliberate disregard for her rights. *See*

*Romano*, 2012 WL 5907397, at *6; *see also Smith v. Morales*, No. A07-2377, 2008 WL 4909630, at *4-5 (Minn. Ct. App. Nov. 18, 2008).

At best, Plaintiff has presented evidence that Officer Oman may have been negligent in not relying on her Matricula Consular card and other corroborating information. But negligence, even gross negligence, is not enough to rise to the level of deliberate disregard for the rights of another. *See Freeland*, 790 F. Supp. 2d at 994-95; *Berczyk*, 291 F. Supp. 2d at 1008; *Olson*, 29 F. Supp. 2d at 1035. And, the fact that Plaintiff's arrest may have been improper is not by itself sufficient to sustain a request for punitive damages. *Ward v. Nat'l Car Rental Sys.*, 290 N.W.2d 441, 443 (Minn. 1980); *see Porter v. City of Minneapolis*, No. 13-cv-2499 (MJD/FLN), 2014 WL 12607719, at *4 (D. Minn. Sept. 29, 2014). Section 549.191 "requires more than the presentation of evidence that is simply consistent with a plaintiff's claim. Th[is] gatekeeping statute requires prima facie evidence that clearly and convincingly suggests a deliberate disregard for the plaintiff's rights." *Romano*, 2012 WL 5907397, at *6. While "[a] plaintiff may appropriately rely on inferences that can be drawn from other evidence in the record . . . if that evidence clearly and convincingly suggests an inference of deliberate disregard of the [plaintiff's] rights," the Court cannot draw such an inference with respect to Officer Oman from the evidence proffered by Plaintiff. *Id.* at *7.

Based on the foregoing, the Court concludes that Plaintiff has not presented prima facie evidence that Officer Oman acted with deliberate disregard of her rights when he arrested her. Therefore, Plaintiff's motion is denied with respect to her request to seek punitive damages in connection with her false-imprisonment claim against Officer Oman.

### ii.    Sheriff Stuart

Plaintiff argues that Sherriff Stuart "intentionally prolong[ed] her detention," and "treated [her] as an immigration detainee from the outset." (Pl.'s Mem. in Supp. at 20, 21.)

It is worth emphasizing that Plaintiff is requesting leave to pursue punitive damages against Sheriff Stuart in his individual capacity. As the County Defendants point out, Plaintiff has not presented evidence "that Sheriff Stuart was at the jail on the night of her arrest or knew anything about her detention as it was happening." (County Opp'n at 12.) There is no evidence in the record that Sheriff Stuart was personally involved in Plaintiff's detention at the Anoka County Jail.

Plaintiff points to evidence that Sheriff Stuart "oversees the jail," (Pacholl Dep. 37:11), and the County's 30(b)(6) testimony that the Anoka County Jail relies on the arresting officer and the court system as to whether an arrest was lawful. Plaintiff contends that "[t]his admission demonstrates that the Anoka County Sheriff accepted [her] into the Jail facility with no regard for whether or not Officer Oman had probable cause to arrest her." (Pl.'s Mem. in Supp. at 18.) Plaintiff also relies on Lieutenant Larson's January 5, 2018 e-mail, in which Lieutenant Larson stated that Plaintiff "was arrested for a Misdemeanor tag/ticket charge, which means she would not be held in custody once she is booked, she would then be processed for release and given a copy of the tag," and that Plaintiff was not brought in for a type of misdemeanor that would require her to be held. (ECF No. 60-4 at 21.) Plaintiff argues that this is an "admi[ssion] that [she] never should have been detained." (Pl.'s Mem. in Supp. at 8.)

Again, even assuming for purposes of this motion that Plaintiff's arrest and

detention were improper, this is not sufficient to sustain a request for punitive damages in connection with her false-imprisonment claim. *Ward*, 290 N.W.2d at 443; *see Porter*, 2014 WL 12607719, at *4; *see also Romano*, 2012 WL 5907397, at *6. And, again, Plaintiff has not presented evidence that Sheriff Stuart was personally involved in her detention. Nor has Plaintiff presented evidence showing—or even argued—that punitive damages should be allowed under some sort of master-and-principal theory as to any acts by other individuals at the Anoka County Jail. *See* Minn. Stat. § 549.20, subd. 2 (describing situations in which punitive damages may be "awarded against a master or principal because of an act done by an agent").

Accordingly, the Court concludes that Plaintiff has not presented prima facie evidence that Sheriff Stuart acted with deliberate disregard of her rights, and her motion is likewise denied with respect to her request to seek punitive damages in connection with her false-imprisonment claim against Sheriff Stuart.

### D. Summary

In sum, Plaintiff's motion is granted with respect to her proposed equal-protection claim[7] against the County Defendants and request to seek punitive damages in connection with her § 1983 claims against Officer Oman and Sheriff Stuart in their individual capacities. Plaintiff shall specify that such damages are being sought only with respect to these claims and in this capacity. Plaintiff's motion is denied with respect to her request to seek punitive damages in connection with her false-imprisonment claim.

---

[7] The Court encourages Plaintiff to verify the terminology employed. *See supra* n.4.

## IV. ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Plaintiff's Motion for Leave to Amend Complaint and Modify the Pretrial Scheduling Order (ECF No. 59) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2. Plaintiff shall file Hearing Exhibits 4, 5, and 6 **within 7 days from the date of this Order**.

3. Plaintiff shall file a Second Amended Complaint consistent with this Order and in substantially the same form as the Proposed Second Amended Complaint for Damages, Punitive Damages and Other Relief (ECF No. 59-1) **within 7 days from the date of this Order**.

4. All prior consistent orders remain in full force and effect.

5. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Dated: September___16___, 2019            _____*s/ Tony N. Leung*_____
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Parada v. Anoka County et al.*
Case No. 18-cv-795 (JRT/TNL)