UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MINNESOTA

| | |
|---|---|
| Myriam Parada,<br>   Plaintiff,<br><br>v.<br><br>Anoka County; Anoka County Sheriff James Stuart; Coon Rapids Police Officer Nikolas Oman; City of Coon Rapids; unknown/unnamed defendants John Doe & Jane Doe; All individuals being sued in their individual and official capacity.<br><br>   Defendants. | Civil Action No: 18-cv-795 (JRT/TNL)<br><br><br>**PLAINTIFF'S<br>STATEMENT OF THE CASE** |

## I.  INTRODUCTION/CASE SUMMARY

July 25, 2019 was easily the most traumatic day of 19-year-old Myriam Parada's life, shattering what had been an otherwise idyllic and happy existence. While on the way home from a birthday celebration with younger family members Coon Rapids Police Officer Nicolas Oman arrested her for driving without a license—a misdemeanor—and brought her to the Anoka County jail. She would not be free for the next 17 long hours.

She was forced to spend hours in in the Anoka County jail wearing only the bathing suit and cut-off shorts Officer Oman had arrested her in. In her vulnerability, other inmates leered at her. Eventually, Ms. Parada was yanked out of her cell and told to speak to someone—who turned out to be a U.S. Immigration and Customs Enforcement ("ICE") Agent—on the phone, who told her things would go faster without a lawyer. Little did she

know that her family had hired a lawyer who was actually at the Anoka County jail trying to speak to her (and would have told her not to speak to ICE) but was prevented from doing so by the Defendant.

Hours went by. Anoka County contacted ICE pursuant to its unconstitutional policy of contacting ICE whenever a foreign-born person was brought into custody.[1] At 1:30 a.m., Anoka County turned Ms. Parada over to ICE. ICE agents transported her to the Sherburne County jail, where they held her for nearly 12 hours until she was finally released on a $1,500 bond.

ICE subsequently commenced removal proceedings against Ms. Parada. And after Ms. Parada filed this lawsuit, ICE deported her mother.

Ms. Parada will explain that the loss of her liberty and the discrimination she experienced on July 25, 2017 was traumatic and that it changed her—it has rendered her anxious and paranoid. As a young adult just setting out in life, she is now afraid to pursue her life goals. The episode was deeply humiliating to her. Defendants' discriminatory conduct destroyed her family; Ms. Parada does not know when she will ever see her mother again. It is humiliating and embarrassing when she has to explain her situation and the need for an immigration lawyer. Defendants robbed Ms. Parada of her sense of safety; she is afraid of calling the police, even if she were to personally need help or feel threatened.

---

[1] This Court previously ruled that Anoka County's unwritten policy of contacting ICE when a foreign-born person was in their custody was facially unconstitutional. (Doc. 73 at 25–29).

4842-0701-8454.2

And she has the further problem of coming up with funds to pay a lawyer to address her immigration proceedings.

As compensation for her needless suffering, Ms. Parada will ask the jury for $150,000. She will also ask for legal fees for the costs she incurred in vindicating her civil rights in her Section 1983 claim.

## II.     LEGAL ISSUES/ARGUMENT

The only issues to be determined at trial by the jury are (1) both liability and damages for Ms. Parada's false imprisonment claim against Defendant Anoka County under Minnesota state law; and (2) the amount of damages which will compensate Ms. Parada for Defendant Anoka County's violation of her Equal Protection rights.[2]

Defendant Anoka County's principal defense to Ms. Parada's damages claim is to argue that she was not detained any longer at Anoka County jail than she would have been even if it had never contacted ICE. This, of course, is disputed. But it is also a red herring. There is no dispute that she was subject to additional procedures during her detention at the jail. It is also undisputed that, as a direct result of its unconstitutional policy, Anoka County turned Ms. Parada over to ICE, which imprisoned her at Sherburne County for an additional dozen hours.

A defendant is liable for false imprisonment if it "personally participate[d] in *or proximately cause[d]* the false imprisonment or unlawful detention" of the plaintiff. *Anderson v. Averbeck*, 189 Minn. 224, 225, 248 N.W. 719, 720 (1933) (emphasis

---

[2] This Court granted summary judgment on Ms. Parada's Section 1983 claim (Count V of the Complaint). (Doc. 173 at 22–23.)

3

added); *see also Young v. Klass*, 776 F. Supp.2d 916, 926 (D. Minn. 2011) (acknowledging rule that defendant may be liable for false imprisonment upon showing of proximate causation noted in *Anderson* "remains good law"); Restatement (Second) of Torts § 37 ("If an act is done with the intent to confine another, and such act is the legal cause of confinement to another, it is immaterial whether the act directly or indirectly causes the confinement.")  Anoka County is thus liable for the further incarceration of Ms. Parada by ICE, since it directly and proximately caused that incarceration, which would not have occurred but for its unconstitutional policy.

Courts have awarded significant compensation to persons such as Ms. Parada, who experienced a loss of liberty, emotional disturbances, loss of dignity, and humiliation.  *E.g.*, *Robie v. Canadian N. R. Co.*, 101 Minn. 534, 534–35, 111 N.W. 1134, 1134 (1907) (awarding compensatory damages for deprivation of plaintiff's liberty during overnight lockup when railroad falsely claimed he did not pay freight charge); *Larson v. Chase*, 47 Minn. 307, 311, 50 N.W. 238, 240 (1891) ("[I]n actions for false imprisonment, where the plaintiff was not touched by the defendant, substantial damages have been recovered though physically the plaintiff did not suffer any actual detriment."); *see also, e.g.*, *Kerman v. City of NY*, 374 F.3d 93, 125 (2d Cir. 2004). That is, "even absent . . . other injuries, an award of several thousand dollars may be appropriate simply for several hours' loss of liberty." *Kerman*, 374 F.3d at 125.

For example, the plaintiff in *Gardner v. Federated Department Stores*, 907 F.2d 1348 (2d Cir. 1990) was falsely imprisoned for approximately eight hours after being erroneously suspected of shoplifting. *Id.* at 1350. After trial, he was awarded $50,000 to

4

"redress the denial of free movement and the violation done to [his] dignity as a result of the unlawful detention, and not the physical and mental injuries arising from the incident." *Id.* at 1353. Similarly, in *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112 (11th Cir. 2006), the plaintiff was detained for two hours after being falsely accused of inappropriately touching a store clerk. *Id.* at 1114–15. The jury awarded plaintiff $117,000 for the embarrassment and emotional disturbances he felt from the incident. *Id.* at 1117–18. And in *Martinez v. Grayson*, No. 95-CV-3788 (ILG), 1998 WL 564385 (E.D.N.Y. June 30, 1998), a plaintiff who was falsely arrested, roughed up (but not subject to any excessive force), and kept in custody for five hours was awarded $160,000 for his loss of liberty and humiliation. *Id.* at *6; *see also City of Yonkers*, No. 13 Civ. 5825, 2016 WL 6271889, at *3 (S.D.N.Y. June 9, 2016) (awarding damages for loss of liberty at $6,250 per hour and collecting cases in which false imprisonment plaintiffs awarded thousands of dollars per hour).

Ms. Parada will easily prove that, if not for Anoka County's discriminatory and unconstitutional policy, she would not have been incarcerated for nearly one full day. She will also prove that, by dint of being falsely imprisoned for 17 hours, she experienced a loss of liberty, which alone entitles her to substantial compensatory damages.

Further, Ms. Parada also has asserted a claim for the violation of her state constitutional rights. *See* (ECF No. 99; Third Amended Complaint, Count VII.) Because she sought to vindicate her rights through this lawsuit, Ms. Parada now feels like she has a bullseye on her back and is at risk of being brought back to the Anoka County jail and

turned over to ICE again.[3]  No monetary remedy is available for infringement of state constitutional rights.  Accordingly, Ms. Parada will be requesting that the Court declare and determine that Anoka County's policies also violated the Minnesota state constitution and to enjoin Anoka County from resuming its unconstitutional arrangement with ICE in the future.

### III.   CONCLUSION

We look forward to presenting our case and to further vindicating Ms. Parada's rights.

Dated: January 11, 2021.                **AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA**

*s/ Ian Bratlie*
Ian Bratlie (#0319454)
ACLU of Minnesota
709 S Front St, Suite 1B
Mankato, MN  56001
Telephone: (507) 995-6575
ibratlie@aclu-mn.org

Teresa Nelson (#269736)
ACLU of Minnesota
PO Box 14720
Minneapolis, MN  55414
Telephone: (651) 529-1692
tnelson@aclu-mn.org

---

[3] While Anoka County has now voluntarily suspended implementation of its policy, it is free of course to renew it at any time.

4842-0701-8454.2

**SAUL, EWING ARSTEIN & LEHR LLP**

Alain M. Baudry (#0186685)
Saul, Ewing Arstein & Lehr LLP
33 South Sixth Street, Suite 4750
Minneapolis, MN  55402
Telephone: (612) 225-2800
alain.baudry@saul.com


**KUTAK ROCK LLP**

Amanda Cefalu (#0309436)
Kutak Rock LLP
60 South Sixth Street, Suite 3400
Minneapolis, MN  55402
Telephone: 612-334-5000
amanda.cefalu@kutakrock.com

4842-0701-8454.2