# **EXHIBIT 3**

2019 WL 2207659
Only the Westlaw citation is currently available.
United States District Court, S.D.
Georgia, Statesboro Division.

Judith ALCOCER, Plaintiff,
v.
BULLOCH COUNTY SHERIFF'S OFFICE;
Randall Norman, Individually and in his
Official Capacity; Sheriff Lynn M. Anderson,
Individually and in his Official Capacity;
Jailer Ashley Lynn Mills, in her Individual
Capacity; Captain John Staten, in his Individual
Capacity; Cpt. Jason Kearney, in his Individual
Capacity; and Sgt. Kent Munsey, Defendants.

CV 615-094
|
Signed 05/21/2019

**Attorneys and Law Firms**

Beverly A. Lucas, Homero Leon, Jr., Pro Hac Vice, Lucas & Leon, LLC, Clarkesville, GA, for Plaintiff.

Richard K. Strickland, Sean K. Scally, Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, LLP, Brunswick, GA, for Defendants.

### ORDER

J. RANDAL HALL, CHIEF JUDGE

*1 This case returns to the Court after the Eleventh Circuit reversed the denial of qualified immunity to Defendants Jailer Ashley Lynn Mills [1] and Captain John Staten. The parties have submitted supplemental briefs and evidence, and the Court will now analyze Mills and Staten's qualified immunity in light of the Eleventh Circuit's Opinion.

### I. BACKGROUND

**A. Procedural History**
On September 29, 2017, the Court entered an Order granting in part and denying in part Defendants' motion for summary judgment. (Doc. 109.) In relevant part, the Court denied qualified immunity to Defendants Jailer Ashley Lynn Mills and Captain John Staten, finding they did not have arguable probable cause to justify continuing to detain Plaintiff after she secured a bond. (Id. at 28-31.) Mills and Staten appealed the Court's denial of qualified immunity in the Eleventh Circuit. (Notice of Appeal, Doc. 111.)

In an Opinion filed on October 9, 2018, the Eleventh Circuit reversed the denial of qualified immunity and remanded the case with instructions to conduct an individualized analysis of Mills and Staten's actions or omissions relevant to Plaintiff's second detention. (Appeal Opinion, Doc. 116, at 14; Alcocer v. Mills, 906 F.3d 944, 952 (11th Cir. 2018).) The Eleventh Circuit held, however, that the Court's September 29th Order correctly identified the Fourth Amendment as the constitutional right implicated by Plaintiff's second detention. Alcocer, 906 F.3d at 952.

**B. Factual Background**
The Court and the Eleventh Circuit already recounted the relevant facts in this case. Since remand, however, the parties submitted additional briefs, and Defendants supplemented the record with three affidavits. [2] (See Docs. 124, 125, 126, 127.) Accordingly, the Court will review the relevant facts in light of the supplemental evidence.

On January 30, 2014, Plaintiff Judith Alcocer [3] was arrested on a misdemeanor driving with a suspended license charge. (Incident Report, Doc. 94-2, at 1.) Plaintiff was then transported to the Bulloch County Detention Center (the "Jail"). Defendant Jailer Ashley Lynn Mills was the booking officer tasked with processing Plaintiff into the Jail's custody. (Dep. of Ashley Lynn Mills ("Mills Dep."), Doc. 100, at 8, 10.) Mills asked Plaintiff basic identifying information, such as her address, social security number, driver's license number, and place of employment. (Id. at 9-12.) Although the Inmate Information form contained a space to enter Plaintiff's place of birth, Mills did not enter this information. (See Inmate Information Form, Doc. 57-5, at 1-3.) Plaintiff was, in fact, born in Charleston, South Carolina. (Birth Certificate, Doc. 103.) It was the Jail's policy to fully complete Inmate Information forms by asking an inmate for all the required information, even when the arresting officer completed an arrest booking report. (Dep. of John Staten ("Staten Dep."), Doc. 95, at 22-23.)

CASE 0:18-cv-00795-JRT-TNL   Doc. 295-3   Filed 03/04/21   Page 3 of 11
Alcocer v. Bulloch County Sheriff's Office, Not Reported in Fed. Supp. (2019)
2019 WL 2207659

**\*2** Next, Plaintiff was fingerprinted,[4] and her information was run through the National Crime Information Center ("NCIC"), the Georgia Crime Information Center ("GCIC"), and the Automated Fingerprint Identification System ("AFIS") databases. (Defs.' St. of Material Facts, Doc. 57-1, ¶ 23.) A short time later, the Jail received a fax from Immigration and Customs Enforcement ("ICE") that stated: "THIS IS NOT A GOVERNMENT DETAINER! THIS INFORMATION IS FOR LAW ENFORCEMENT USE AND IS BEING PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THIS RESPONSE IS NOT SUPPORTED BY FINGERPRINTS." (ICE Message, Doc. 57-5, at 5.) A second portion of the ICE message read: "I.C.E. RECORDS INDICATE THAT THIS SUBJECT IS NOT LEGALLY IN THE UNITED STATES AND APPEARS TO BE SUBJECT TO REMOVAL PROCEEDINGS." (Id.)

Sergeant Sandra Kirkland was the supervisor at the Jail on January 30th; she recalls the ICE message being sent in two parts. (Aff. of Sandra Kirkland ("Kirkland Aff."), Doc. 125-2, ¶¶ 3, 5.) The first part of the message was received after Plaintiff's personal information was entered into the Jail's system. (Id. ¶ 5.) The second portion of the message regarding Plaintiff being subject to removal proceedings was received a short time later after Plaintiff's fingerprints were run through the databases. (Id.; see also Aff. of John Staten ("Staten Aff."), Doc. 125-1, ¶ 11.) Although the fax confirmation sheet appears to contain a time stamp for when ICE received Plaintiff's information and a time stamp for when the fax was sent, the confirmation sheet's formatting makes it difficult to discern whether it corroborates Kirkland's affidavit.

Mills reviewed the ICE message[5] and informed Kirkland, who instructed Mills to place a hold on Plaintiff and make a note in her file that read.: "CONTACT ICE IN ATLANTA GA FOR PICK UP BEFORE RELEASING." (Inmate Information Form; Kirkland Aff., ¶ 9; Mills Dep., at 40-41.) At the time the hold was placed, Plaintiff had already secured a bond for the suspended license charge. (Dep. of Susana Hinojosa ("Hinojosa Dep."), Doc. 96, at 12.)

Plaintiff's arrest and processing into the Jail occurred between 2:00 PM and 6:00 PM on January 30th. Mills's shift ended at 7:00 PM that day and she did not return to the Jail until after Plaintiff was released on January 31st. (Mills Dep., at 42.) The decision to place a hold on Plaintiff based on the ICE message is what the Eleventh Circuit identified as the "second detention" that implicated Plaintiff's Fourth Amendment rights. Alcocer, 906 F.3d at 952.

While all those events were occurring, Plaintiff' sister, Susana Hinojosa, was attempting to secure Plaintiff's release. Hinojosa, on the advice of unidentified Jail staff,[6] secured a $ 2,000.00 bond from a nearby bonding company. (Hinojosa Dep., at 10-12; Bond, Doc. 57-5, at 21-22.) While awaiting her sister's release at the Jail, Hinojosa was informed by the bonding company that Plaintiff was subject to an ICE hold preventing her release. (Hinojosa Dep., at 12.) Hinojosa asked the Jail staff about the ICE hold and they confirmed the hold prevented Plaintiff's release. (Id.) Hinojosa pleaded with the staff that her sister was a United States citizen who was born in South Carolina, but her efforts were largely ignored. (Id. at 12-13.) Hinojosa sought the staff's advice on how to prove her sister's citizenship, but again the staff was unhelpful. (Id. at 13-14.) Eventually, Hinojosa gave up and left the Jail for the evening. (Id. at 14.)

**\*3** The next morning, January 31st, Hinojosa repeatedly called the Jail until she was finally able to get a phone number for the ICE office in Savannah.[7] (Id. at 16.) Hinojosa called the number and eventually spoke with Agent Franks, who instructed her to take any documents proving Plaintiff's citizenship to the jail while he investigated the matter. (Id. at 20.) Hinojosa returned to the Jail around noon with Plaintiff's birth certificate, social security card, medical records, and school records. (Id. at 15, 23.) Hinojosa attempted to show the staff these documents, but, in what had become a predictable pattern, the staff refused to look at them because the ICE hold was still in effect. (Id. at 23-24.)

At the same time, Agent Franks was attempting to resolve the issue with the Jail staff. Later in the afternoon, he called Hinojosa and informed her the Jail could not locate the ICE paperwork they used to place a hold on Plaintiff. (Hinojosa Dep., at 20-21.) Agent Franks further stated he sent a fax to the Jail instructing them to release Plaintiff. (Id. at 21.)

Behind the scenes on January 31st, Jailer Deshaundra Toney was reviewing Plaintiff's file. (Aff. of Deshaundra Toney ("Toney Aff."), Doc. 125-3, ¶ 4.) At the direction of her supervisor, Toney called Defendant Captain John Staten, the Jail's Administrator, to discuss the Jail's policy regarding ICE detainers. (Id. ¶¶ 5-6.) Staten was on vacation in Jacksonville, Florida at the time, but nevertheless took the phone call. (Staten Aff., ¶¶ 3-4.) Staten confirmed that the

CASE 0:18-cv-00795-JRT-TNL Doc. 295-3 Filed 03/04/21 Page 4 of 11

Alcocer v. Bulloch County Sheriff's Office, Not Reported in Fed. Supp. (2019)
2019 WL 2207659

policy regarding detainers was "to honor an ICE detainer for a period of up to forty-eight (48) hours while awaiting ICE to take custody of the individual.... [I]f ICE had not taken custody within 48 hours of the receipt of the detainer, the individual must be released, if they had a bond on any other charges." (Id. ¶ 6.) At no point during the conversation did Toney relay the contents of the ICE message to Staten; the only information she provided was an ICE detainer had been issued for an individual arrested on a suspended license charge. (Id. ¶¶ 4, 7, 9; Toney Aff., ¶ 9.) Staten and Toney discussed the Jail's policy solely in the abstract.

After the phone call, Toney made the note in Plaintiff's file stating, "PER CAPTAIN STATEN, IF I.C.E. DOES NOT SEND A HOLD ON SUBJECT BY 02/03/2014, SUBJECT CAN POST BOND. BOND IS IN FILE." (Toney Aff., ¶ 7.) Toney assumed that because the forty-eight hours would expire on the weekend, Plaintiff's release should be scheduled for the following Monday. (Id. ¶ 8.) Later that day, however, the Jail received a form from Agent Franks titled Immigration Detainer-Notice of Action, which requested the Jail "[c]ancel the detainer previously placed by this Office on 1-31-2014 [sic]." (Immigration Detainer-Notice of Action, Doc. 57-5, at 6.) Based on this form, the Jail released Plaintiff around 5:42 PM — about twenty-five hours after she arrived at the Jail. (Inmate Information Form.) These events form the basis for Plaintiff's [42 U.S.C. § 1983](#) claim against Mills and Staten.

## II. LEGAL STANDARD

The Eleventh Circuit's Opinion remanded this case for the Court to "conduct an individualized analysis of whether each defendant is entitled to qualified immunity." [Alcocer, 906 F.3d at 952](#). That appeal was taken from the Court's September 29th Order addressing Defendants' motion for summary judgment.

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [FED. R. CIV. P. 56(a)](#). Facts are "material" if they could affect the outcome of the suit under the governing substantive law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." [Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)](#). The Court must view factual disputes in the light most favorable to the non-moving party, [Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)](#), and must draw "all justifiable inferences in [the non-moving party's] favor." [United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991)](#) (en banc) (internal punctuation and citations omitted).

*4 If the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. [Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991)](#). If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." [Id. at 608](#). The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. [Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981)](#). Rather, the non-moving party must respond either by affidavits or as otherwise provided by [Rule 56](#). Finally, a genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." [Anderson, 477 U.S. at 248](#).

## III. DISCUSSION

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." [Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)](#). Qualified immunity allows "government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." [Durruthy v. Pastor, 351 F.3d 1080, 1087 (11th Cir. 2003)](#) (citation omitted). However, qualified immunity "does not offer protection 'if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff].' " [Holmes v. Kucynda, 321 F.3d 1069, 1077 (11th Cir. 2003)](#) (quoting [Harlow, 457 U.S. at 815](#)).

CASE 0:18-cv-00795-JRT-TNL Doc. 295-3 Filed 03/04/21 Page 5 of 11
Alcocer v. Bulloch County Sheriff's Office, Not Reported in Fed. Supp. (2019)
2019 WL 2207659

Government officials bear the initial burden to show the alleged constitutional violation occurred while they were performing a discretionary function. [Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)](). Here, it is undisputed that Defendants were performing discretionary functions when the alleged constitutional violation occurred.

The burden then shifts to the plaintiff to show that the defendant violated a constitutional right and that right was clearly established at the time of the alleged violation. See [Pearson v. Callahan, 555 U.S. 223, 236 (2009)](). Courts have the discretion to analyze the two prongs of the qualified immunity test in the order most appropriate for the particular case at hand. See id. Here, the Court will first analyze whether Plaintiff's alleged constitutional violation implicates a clearly established right.

**A. Clearly Established Right**
To defeat a qualified immunity defense, the plaintiff must show the constitutional right allegedly violated was clearly established at the time of the violation. [Harlow, 457 U.S. at 818]()-19. To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." [Anderson v. Creighton, 483 U.S. 635, 640 (1987)](). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional questions beyond debate." [Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)](). Said another way, government officials must have "fair warning" that the conduct at issue violated a constitutional right of which a reasonable person should have known. See [Hope v. Pelzer, 536 U.S. 730, 739-40 (2002)]().

There are three methods to show fair warning: "First, the plaintiffs may show that a materially similar case has already been decided. Second, the plaintiffs can point to a broader, clearly established principle that should control the novel facts of the situation. Finally, the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." [Gains v. Wardynski, 871 F.3d 1203, 1208-09 (11th Cir. 2017)]() (quoting [Terrell v. Smith, 668 F.3d 1244, 1255-56 (11th Cir. 2012)]()). To carry her burden, the plaintiff must use the law as interpreted at the time of the alleged violation by the United States Supreme Court, the Eleventh Circuit, and the Georgia Supreme Court. See id.

**\*5** Under the second method, "if a broad principle in case law is to establish clearly the law applicable to a specific set of facts facing a government official, it must do so 'with obvious clarity' to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." [Vinyard v. Wilson, 311 F.3d 1340, 1351 (11th Cir. 2002)]() (internal quotations omitted). To clearly establish, the broad statement of principle must not be tied to particularized facts. Id.

Here, there were several relevant principles of law clearly established in January 2014. The Supreme Court established with "obvious clarity" that any detention of a suspected alien beyond a *Terry* stop [8] must be supported by consent or probable cause. See [United States v. Brignoni-Ponce, 422 U.S. 873, 881-82 (1975)]() (also finding that a suspected alien's nationality or race cannot provide a reasonable belief that such person is an alien). The Eleventh Circuit's Opinion in this case found Brignoni-Ponce relevant in stating, "the Supreme Court long ago held that, beyond a *Terry* stop, any detention of a suspected alien 'must be based on consent or probable cause' that the person is, in fact, an alien." [9] [Alcocer, 906 F.3d at 953]() (quoting [Brignoni-Ponce, 422 U.S. at 881-82]()).

More recently, the Supreme Court addressed the role of state and local law enforcement in enforcing federal immigration law. In [Arizona v. United States, 567 U.S. 387 (2012)](), the Supreme Court held: "As a general rule, it is not a crime for a removable alien to remain present in the United States. If the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." [Id. at 407]() (internal citation omitted); see also [Padilla v. Ky., 559 U.S. 356, 365 (2010)]() (deportation "is not, in a strict sense, a criminal sanction.... [R]emoval proceedings are civil in nature"). Other courts have similarly relied on Brignoni-Ponce and Arizona's broad statements of principle in finding immigration detentions, including detentions by jail officials, must be supported by probable cause. See, e.g., [Morales v. Chadborne, 793 F.3d 208, 215-16 (1st Cir. 2015)](); [Lyttle v. United States, 867 F. Supp. 2d 1256, 1281 (M.D. Ga. 2012)](); [Parada v. Anoka Cty., 332 F. Supp. 3d 1229, 1242-43 (D. Minn. 2018)]() (finding, in a case with substantially similar facts, "[i]t is clearly established that a warrantless arrest must be supported by probable cause of criminal activity, that

CASE 0:18-cv-00795-JRT-TNL   Doc. 295-3   Filed 03/04/21   Page 6 of 11
Alcocer v. Bulloch County Sheriff's Office, Not Reported in Fed. Supp. (2019)
2019 WL 2207659

unlawful presence is not a crime, and that an immigrant's possible removability is insufficient to give rise to probable cause" (citing Arizona, 567 U.S. at 407; Orellana v. Nobles Cty., 230 F. Supp. 3d 934, 946 (D. Minn. 2017))). [10]

It was thus clearly established in January 2014 that immigration arrests or detentions required probable cause. It was also clearly established that merely being subject to removal proceedings is insufficient to supply probable cause because it is not a crime for an alien to remain present in the United States and because removal proceedings are civil, not criminal, in nature. These principles were established with "obvious clarity" such that a reasonable government official would know that detaining a suspected alien based on nothing more than possible removability is unlawful. See Vinyard, 311 F.3d at 1351; see also Anderson, 483 U.S. at 640.

**B. Fourth Amendment Violation**

*6 The Court must next consider whether Plaintiff carried her burden to show Defendants violated her Fourth Amendment right to be free from unreasonable seizure. To receive qualified immunity on an alleged Fourth Amendment violation, an officer need only show "arguable probable cause." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1257 (11th Cir. 2010). Actual probable cause is not required for an arrest to be reasonable. Indeed, "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and ... in such cases those officials ... should not be held personally liable." Anderson, 483 U.S. at 641. Plaintiff must demonstrate, under an objective standard, that a reasonable officer could not have found probable cause under the totality of the circumstances. See id. at 640-41.

Further, Section 1983 "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." Alcocer, 906 F.3d at 951 (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam)). Thus, each defendant is entitled to an independent qualified-immunity analysis, which considers "only the actions and omissions in which that particular defendant engaged." Id.

1. Defendant Mills

Probable cause may exist based on the collective knowledge of law enforcement officials derived from reasonably trustworthy sources of information. Grider, 618 F.3d at 1257. The collective knowledge rule allows law enforcement officials to rely on information obtained by other officers to support a probable cause determination. Here, Plaintiff asks the Court to apply the collective knowledge rule "in the reverse." (Pl.'s Suppl. Br., Doc. 124, at 14.) Plaintiff argues that the knowledge of the Jail's staff should be imputed onto Mills and that collective knowledge provided "an overwhelming amount of evidence that arguable probable cause was not present such to legally hold [Plaintiff] for the new detention." (Id.) Thus, utilizing the collective knowledge rule in reverse, Plaintiff contends, allows all the information Hinojosa provided to the Jail staff to be considered in analyzing Mills's qualified immunity.

This argument contravenes the Eleventh Circuit's Opinion holding Defendants are entitled to an individualized analysis of their own actions or omissions related to the alleged constitutional violation. In fact, the Eleventh Circuit specifically stated the Court's September 29th Order "does not parse the actions Mills undertook and omitted on the one hand, and the actions others engaged in *without Mills's knowledge or participation.*" Alcocer, 906 F.3d at 951 (emphasis added). Further, the Eleventh Circuit previously held that "the [probable cause] standard is met when the facts and circumstances within the *officer's knowledge,* of which he or she has reasonably trustworthy information, would cause a prudent person to believe" a crime was committed. Durruthy, 351 F.3d at 1088 (emphasis in original). Thus, the Eleventh Circuit requires qualified immunity to be analyzed using only the information available to the defendant at the time of the alleged constitutional violation.

Here, the record shows that Mills booked Plaintiff upon her arrival to the Jail, received the ICE message, and placed a hold on Plaintiff at the direction of her supervisor, Sergeant Kirkland, even after bond was secured. Mills shift ended at 7:00 PM on January 30th and she did not return to the Jail until after Plaintiff was released on January 31st. (Mills Dep., at 42, 55.) Therefore, none of the events that occurred after 7:00 PM on January 30th can be considered in analyzing Mills's qualified immunity. Further, Mills was not aware of Hinojosa's statements to other Jail staff regarding Plaintiff's citizenship nor did she see any of the documents Hinojosa

provided proving Plaintiff is a citizen. (See id. at 42-43.) So, this too cannot be considered in analyzing Mills's qualified immunity.

**\*7** The Court nevertheless finds that, construing the facts in the light most favorable to Plaintiff, Mills's actions and omissions taken on January 30th do not entitle her to qualified immunity. The information available to Mills did not provide arguable probable cause to detain Plaintiff after she secured bond. When Mills processed Plaintiff into the Jail she filled out a booking form and asked Plaintiff to provide certain information including her driver's license number, social security number, and place of employment. (See id. at 9-11; Inmate Information Form.) The fact that Plaintiff produced a state-issued driver's license, [11] a social security number, and disclosed employment [12] certainly created a presumption of legal status, if not outright U.S. citizenship.

Moreover, the language of the ICE message, standing alone, was insufficient to provide arguable probable cause. The top portion of the message stated: "THIS IS NOT A GOVERNMENT DETAINER! THE INFORMATION IS FOR LAW ENFORCEMENT USE AND IS BEING PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THIS RESPONSE IS NOT SUPPORTED BY FINGERPRINTS." (ICE Message.) This language explicitly states that ICE is not issuing a detainer and Plaintiff's fingerprints were not the basis for the message. After reading the message during her deposition, Mills admitted it was not a government detainer. (Mills Dep., at 37.)

The message further read: "[ICE] RECORDS INDICATE THAT THIS SUBJECT IS NOT LEGALLY IN THE UNITED STATES AND APPEARS TO BE SUBJECT TO REMOVAL PROCEEDINGS." (Ice Message.) This section provided no information as to why Plaintiff did not have legal status or her immigration background. [13] As the Court previously recognized, the message stated only that Plaintiff "appears to be subject to removal proceedings" without providing a factual basis as to why that was true. While the second portion of the message was apparently received some time after the top portion of the message stating there was no detainer, the language in the second portion was still not sufficiently definite to provide arguable probable cause, particularly in light of the knowledge Mills had at the time about Plaintiff. See Miranda-Olivares v. Clackamas Cty., 2014 WL 1414305, at \*11 (D. Oreg. Apr. 11, 2014) (detainer stating ICE "initiated an investigation to determine whether [the plaintiff] is subject to removal" that gave no factual basis for the investigation did not provide probable cause); cf. Creedle v. Miami-Dade Cty., 349 F. Supp. 3d 1276, 1299 (S.D. Fla. 2018) (finding, on a motion to dismiss, the plaintiff sufficiently plead a Fourth Amendment claim where the ICE detainer's "bare, conclusory statement" was insufficient to provide probable cause).

**\*8** Moreover, the actual language of the ICE message contradicts Defendants' contention that the message was received in two parts. The purported first part of the message contained numerous qualifying statements such as warning there was no government detainer, the message was for informational purposes only, and the response was not supported by fingerprints. There would be no need for those qualifying statements if ICE had yet to provide any information about Plaintiff's legal status. The qualifying statements only make sense in the context of the rest of the message stating Plaintiff appeared to be subject to removal proceedings. Otherwise, the qualifying statements would have been made in isolation.

Even assuming the message was received in two parts, when Mills reviewed the ICE message, questions should have been raised as to whether the message provided arguable probable cause to detain Plaintiff based on both the contents and Mills's knowledge of Plaintiff's identification information. Mills knew Plaintiff had a driver's license and a social security number. Mills knew Plaintiff was employed. These facts would lead a reasonable officer in the same circumstances to conclude the ICE message did not provide arguable probable cause to detain Plaintiff after her bond was secured.

While Mills was not required to take "every conceivable step" in her investigation "to eliminate the possibility of [detaining] an innocent person," she could not ignore information directly provided to her or choose not to obtain easily discoverable facts. See Rankin v. Evans, 133 F.3d 1425, 1436 (11th Cir. 1998); see also Kingsland v. City of Miami, 382 F.3d 1220, 1228-32 (11th Cir. 2004) (officers may not "turn a blind eye to exculpatory information that is available to them"). By placing a hold on Plaintiff just minutes after discovering she had a driver's license, social security number, and was employed, Mills ignored evidence that directly contradicted the ICE message. Further, Mills never reached out to ICE to raise these discrepancies or clarify the message's seemingly conflicting statements, even though ICE provided its contact

CASE 0:18-cv-00795-JRT-TNL   Doc. 295-3   Filed 03/04/21   Page 8 of 11
Alcocer v. Bulloch County Sheriff's Office, Not Reported in Fed. Supp. (2019)
2019 WL 2207659

information. This omission tends to show that Mills chose not to obtain easily discoverable facts.

Mills's failure to contact ICE also violated the Jail's Standard Operating Procedure ("SOP"), which requires:

> In the event other charges are outstanding on the inmate *the booking officer is to contact the originating agency to verify the charges* and place a detainer on the inmate.... When a detainer is placed on an inmate, the booking officer receiving the hold is to verify the following information within 24 hours: a- Inmate's name; b- charges; c- warrant numbers; d- confirming officer's name and badge number; e- originating agency; f- agency's telephone number; and g- other commitment papers.

(SOP, Doc. 102, at 239 (emphasis added).) There is no evidence to show that Mills or any other Jail staff contacted ICE. Although Kirkland claims there were "sometimes telephone communications between ICE and the Sheriff's office regarding whether ICE considered this document to be a detainer," she does "not recall with certainty whether [she] had a telephone conversation with someone at ICE in Savannah with regard to Judith Alcocer." (Kirkland Aff., ¶¶ 7-8.) Mills's failure to follow the Jail's policy here was particularly problematic because the ICE message specifically stated it was not a detainer, that it was not supported by fingerprints, and because there was no other evidence to show Plaintiff was an alien. Rather, the evidence pointed to the opposite conclusion.

Mills further strayed from the Jail's policies by not fully completing the Inmate Information form. The SOP required a booking officer to review the arresting officer's report "for legibility and completeness," and Staten testified that he trained his jailers to ask inmates the same informational questions to ensure accuracy. (See SOP, at 242; Staten Dep., at 23.) Plaintiff was born in South Carolina, yet her Inmate Information form does not note any place of birth in the provided space. This shows Mills failed to comply with the Jail's policies in at least two respects, both of which may have prevented Plaintiff's second detention.

**\*9** Mills argues that she did not make the decision to detain Plaintiff; she simply followed Kirkland's orders by entering a note in Plaintiff's file stating, "CONTACT ICE IN ATLANTA GA FOR PICK UP BEFORE RELEASING." (Inmate Information Form.) The Eleventh Circuit has held officers may be protected by qualified immunity for actions taken at the direction of supervisors, so long as "nothing in the record indicates that these officers acted unreasonably in following [the supervisor's] lead, or that they knew or should have known that their conduct might result in a violation of the [plaintiff's] rights." Brent v. Ashley, 247 F.3d 1294, 1305-06 (11th Cir. 2001) (quoting Hartsfield v. Lemacks, 50 F.3d 950, 956 (11th Cir. 1995)); see also O'Rourke v. Hayes, 378 F.3d 1201, 1210 (11th Cir. 2004).

Here, the record shows that it was unreasonable for Mills to simply follow orders because she knew Plaintiff had a driver's license, a social security number, and was employed. In fact, Mills, as the booking officer, was in the best position to raise these facts to Kirkland, yet there is no evidence that she ever did. Considering the circumstances, it was unreasonable for Mills to follow Kirkland's instructions without at least raising the obvious discrepancies between the ICE message and the information Plaintiff provided to Mills.

Based on the totality of the circumstances, Mills did not have arguable probable cause to detain Plaintiff after her bond was secured and her actions constituted a violation of Plaintiff's clearly established Fourth Amendment right to be free from unreasonable seizure. Therefore, she is not entitled to qualified immunity on Plaintiff's Fourth Amendment claim.

2. Defendant Staten

Next, the Court will consider whether Defendant Captain John Staten's actions or omissions in his individual capacity entitle him to qualified immunity. The supplemented record reflects that Staten had little involvement in Plaintiff's detention. On January 30th and 31st, Staten was not at the Jail because he was on vacation in Jacksonville, Florida. (Staten Aff., ¶ 3.) His sole involvement in Plaintiff's detention was answering a phone call made by Jailer Deshaundra Toney on January 31st. (Id. ¶ 4; Toney Aff., ¶ 5.) The purpose of this call was to confirm the Jail's policy regarding ICE detainers. (Toney Aff., ¶ 5.) However, Toney did not relay the details of Plaintiff's detention, the contents of the ICE message, or even mention which inmate was subject to an ICE detainer.

CASE 0:18-cv-00795-JRT-TNL Doc. 295-3 Filed 03/04/21 Page 9 of 11
Alcocer v. Bulloch County Sheriff's Office, Not Reported in Fed. Supp. (2019)
2019 WL 2207659

(Id. ¶ 9; Staten Aff., ¶ 7.) In fact, Toney herself never saw the ICE message; she only knew a hold had been placed on Plaintiff and was instructed by her supervisor to contact Staten to confirm the Jail's policy. (Toney Aff., ¶ 9.) Staten informed Toney of the Jail's forty-eight-hour hold policy; this was the extent of Staten's involvement in Plaintiff's detention.

Further, Toney's note in Plaintiff's file stating, "01/31/14 PER CAPTAIN STATEN, IF I.C.E. DOES NOT SEND A HOLD ON SUBJECT BY 02/03/14, SUBJECT CAN POST BOND, BOND IS IN FILE" was made after the phone call. (Toney Aff., ¶¶ 7-8.) The February 3rd release date, however, was calculated by Toney without input from Staten. (Id. ¶ 8.) Toney assumed the forty-eight-hour hold would expire on the weekend, so she set the release date for the following Monday. (Id.) Regardless, Plaintiff was released on the same day Staten confirmed the Jail's policy with Toney.

In total, Staten's only direct involvement in Plaintiff's detention was to confirm the Jail's policy regarding ICE detainers, which he did without any knowledge or information as to the facts of Plaintiff's detention or the contents of the ICE message. Based on the totality of the circumstances, the Court finds that Staten's conduct was objectively reasonable and that he is entitled to qualified immunity for his individual actions. Simply stated, there is no "affirmative causal connection" between Staten's actions and the alleged Fourth Amendment violation. See [Alcocer, 906 F.3d at 951](#).

### C. Supervisor Liability

**\*10** Finally, the Court must determine whether Staten can be held liable on the basis of supervisory liability. [Section 1983](#) claims cannot be brought against supervising officials based on vicarious liability or respondeat superior. [Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994)](#). Supervisory liability only attaches "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional violation." [Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)](#) (quoting [Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)](#)). The Eleventh Circuit has cautioned that the standard to hold a supervisor liable for the actions of a subordinate is "extremely rigorous." [Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 802 (11th Cir. 1998)](#).

The Court has already determined that Staten is entitled to qualified immunity for his limited personal participation in Plaintiff's second detention. Thus, Plaintiff must establish a causal connection between Staten's actions and the second detention to hold him liable. A causal connection may be established when:

> 1) a 'history of widespread abuse' puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

[Valdes v. Crosby, 450 F.3d 1231, 1237 (11th Cir. 2006)](#) (quoting [Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)](#)).

Plaintiff has not pointed to any prior similar incidents at the Jail, much less enough incidents to show a history of widespread abuse. See [Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006)](#) ("[D]eprivations must not only be widespread, they must also be obvious, rampant and of continued duration, rather than isolated occurrences." (internal quotation omitted)).

Next, the Jail's forty-eight-hour hold policy does not show a deliberate indifference to inmates' constitutional rights. The policy to hold an inmate under an ICE detainer for forty-eight hours tracks the federal regulation governing ICE detainers. See [8 C.F.R. § 287.7(d)](#) (instructing local law enforcement to maintain custody of an alien subject to a detainer for a period not to exceed forty-eight hours, excluding weekends and holidays). The policy also comports with the instructions to local law enforcement found on ICE's Immigration Detainer-Notice of Action form.

Finally, Plaintiff contends that Staten showed deliberate indifference to her Fourth Amendment rights by failing to ask Toney more questions during the January 31st phone call

and failing to request a copy of the ICE message to review. In short, Plaintiff argues Staten should have conducted his own investigation into the ICE detainer. Staten's phone call with Toney, however, did not supply Staten with enough knowledge about the situation to show he was deliberately indifferent to Plaintiff's rights. Staten was informed "that ICE had issued a detainer for an individual that had been arrested on a charge of driving without a license." (Staten Aff., ¶ 4.) He could not reasonably be expected to know that the document Toney referred to as an ICE detainer was not, in fact, an ICE detainer. Simply stated, Staten instructed his staff on the Jail's policy and reasonably assumed they would implement that policy.

 *11  Overall, there is no causal connection between Staten's actions or omissions and the alleged Fourth Amendment violation. As such, Staten is entitled to summary judgment on Plaintiff's supervisor liability claim.

After conducting an individualized analysis of Defendants Jailer Ashley Lynn Mills and Captain John Staten's conduct during Plaintiff's second detention, the Court concludes that Staten is entitled to qualified immunity, but Mills is not. Further, Staten cannot be held liable in his supervisory capacity for the second detention. Accordingly, Defendants' motion for summary judgment (Doc. 57) is **GRANTED IN PART** and **DENIED IN PART**. The Clerk is directed to **ENTER JUDGMENT** in favor of Defendant Staten.[14]

The sole remaining claim, Plaintiff's Section 1983 claim against Defendant Mills, shall proceed to trial in due course.

**ORDER ENTERED** at Augusta, Georgia, this 21st day of May, 2019.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2207659

## IV. CONCLUSION

## Footnotes

| | |
|---|---|
| 1 | Since this case was filed, Mills has changed her name to Ashley Lynn Oglesby. For purposes of clarity, the Court will continue to refer to her as Mills or Defendant. |
| 2 | The Eleventh Circuit permitted, and the Court subsequently ordered, the parties to file supplements to the record and additional briefs in light of the Eleventh Circuit's Opinion. (Order of Jan. 3, 2019, Doc. 123.) |
| 3 | Plaintiff has since married and changed her name to Judith Hinojosa-Diaz. The Court will, however, continue to refer to her as Plaintiff or Alcocer. |
| 4 | Mills was not the booking officer that fingerprinted Plaintiff. (Mills Dep., at 22.) |
| 5 | Mills did not testify as to whether the ICE message was received in two parts. |
| 6 | Hinojosa's interactions with the Jail staff occurred in the reception area, which is separated from where Mills and the other jailers processed inmates. (Mills Dep., at 42-43.) |
| 7 | The Jail initially claimed it did not have the contact information for ICE. (Hinojosa Dep., at 16.) |
| 8 | Terry v. Ohio, 392 U.S. 1 (1968). |
| 9 | The Eleventh Circuit further stated, "to the extent that Defendants were causally involved in Alcocer's overnight detention, they must show they had probable cause (or in the qualified-immunity analysis, arguable probable cause) to believe that Alcocer was illegally present in the United States." Alcocer, 906 F.3d at 953. |
| 10 | While the Court recognizes that none of these cases come from the United States Supreme Court or the Eleventh Circuit, they are still persuasive on the issue of whether Arizona and Brignoni-Ponce's broad statements of principle clearly established the constitutional rights at issue. |
| 11 | Defendants do not argue that Plaintiff's driver's license was a forgery. Further, even though there is evidence to show Plaintiff's license was suspended at the time, the mere fact of its issuance supports the notion that |

CASE 0:18-cv-00795-JRT-TNL   Doc. 295-3   Filed 03/04/21   Page 11 of 11
Alcocer v. Bulloch County Sheriff's Office, Not Reported in Fed. Supp. (2019)
2019 WL 2207659

| | |
|---|---|
| | Plaintiff is a citizen. O.C.G.A. § 19-11-9.1(a.1)(1) (requiring legal status to receive a Georgia driver's license). Further, there is no evidence to show the suspension of Plaintiff's license was related to her legal status. |
| 12 | The Court recognizes that citizenship is not strictly required for employment, but legal status is a requirement. See 8 U.S.C. § 1324a (unlawful employment of aliens). |
| 13 | The Immigration Detainer-Notice of Action form sent by Agent Franks on January 31st to release Plaintiff is the standard form sent to local law enforcement when ICE places a detainer on an individual. See 8 C.F.R. § 287.7 (authorizing immigration officers to issue a Form I-247, Immigration Detainer-Notice of Action). The form provides numerous pre-printed options to explain the probable cause justification for the detainer. (See Immigration Detainer-Notice of Action.) While ICE's failure to use this form when sending their initial message is not determinative, it does cast doubt on the initial message's validity as a detainer. |
| 14 | The Clerk is further directed to **ENTER JUDGMENT** in favor of Defendants Munsey, Anderson, Kearney, Norman, and the Bulloch County Sheriff's Office, consistent with the Court's Order of September 29th. (See Doc. 109, at 36.) |

---

End of Document   © 2021 Thomson Reuters. No claim to original U.S. Government Works.