## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| Myriam Parada,<br><br>           Plaintiff,<br><br>v.<br><br>Anoka County; Anoka County Sheriff James Stuart; Coon Rapids Police Officer Nikolas Oman; City of Coon Rapids; unknown/unnamed defendants John Doe & Jane Doe; All individuals being sued in their individual and official capacity.<br><br>           Defendants. | Civil Action No: 18-cv-795 (JRT/TNL)<br><br><br><br>**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND NONTAXABLE COSTS** |

## <u>INTRODUCTION</u>

Plaintiff Myriam Parada ("Parada") filed this lawsuit against Anoka County alleging that the County's unwritten ICE notification policy violated her constitutional rights, unlawfully discriminated against her on the basis of her national origin in violation of the Equal Protection Clause, and falsely imprisoned her by unlawfully extending her detention at the Anoka County Jail on July 25, 2017. Parada's Third Amended Complaint requested a variety of different forms of relief from the District Court, including damages, declaratory relief, and an injunction. On August 25, 2020, the District Court declared that as a matter of law the County's unwritten ICE notification policy violated the Fourteenth Amendment. On January 28, 2021, a jury returned a verdict for Parada awarding her $30,001 in damages, of which $1 was designated to be nominal damages for the County's §1983 violation. On February 2, 2021, the District Court entered judgment in favor of Parada on certain claims.

This brief is filed in support of Parada's motion for attorney's fees and costs pursuant to 42 U.S.C. §1988. Parada is the prevailing party and is seeking reasonable fees incurred in prosecuting her claims for violation of the Fourteenth Amendment of the U.S. Constitution. The Eighth Circuit has previously explained Congress' intent in fashioning attorney's fee awards in 1983 litigation: "Congress intended that "[i]n computing the fee, counsel for prevailing parties should be paid, as is traditional for attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.' " S.Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913." *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993).

Congress knew that without the potential for an award of fees, the purpose and intent behind §1983 would be undermined or frustrated.

> The primary purpose of this formulation is to promote diffuse private enforcement of civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators. … If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest....

*Id.* (internal citations omitted). Congress wanted the violating party to pay costs to a successful plaintiff in §1983 litigation. "In order for such a policy to be effective, Congress felt it appropriate to shift the true full cost of enforcement to the guilty parties to eliminate any obstacle to enforcement." *Id.* The need for strong counsel to help enforce civil rights was paramount.

> Fee awards must be structured so that attorneys of quality and experience with other profitable demands upon their time will not need to sacrifice income available in alternative enterprises

2

> in order to effect a public policy intended to protect all citizens. … Any other rule would relegate civil rights enforcement (and the law that results) to those lawyers with below-market billing rates. The rates for these lawyers are usually below market for a reason. A refusal to pay for experience and expertise will exact a cost in the form of inexperience and, perhaps, incompetence.

*Id.*

This case is a perfect example of the type of civil rights litigation that Congress intended to encourage lawyers to handle when it created a fee-shifting provision in Section 1983 cases so that state actors bear "the full burden of paying for enforcement of their civil rights obligations." *Hensley v. Eckerhart*, 461 U.S. 424, 445, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see also City of Riverside v. Rivera*, 477 U.S. 561, 578, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)(noting that fee awards are designed to "encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel."), quoting *Kerr v. Quinn*, 692 F,2d 875, 877 (2d Cir. 1982)). Thus, even those members of our society who could not otherwise afford to hire an attorney can vindicate their constitutional rights and deter further misconduct, even against law enforcement. *Hensley*, 461 U.S. at 445-46.

On July 25, 2017, Parada's day began with her being a young woman who had never been to jail, simply driving her family members home from a celebration. Her day ended with unnecessarily being thrown into Anoka County Jail, forced to speak to ICE simply because she is foreign-born, and then being handed over to ICE in chains and shackles. Anoka County hid from the world an unlawful policy that discriminated against all detainees and inmates on the basis of national origin. The policy negatively impacted over

3

two thousand American citizens and nearly three thousand non-citizens in just five years. The policy itself was grotesque and added additional steps to booking and release that these individuals would have to go through before being freed from jail. After her ordeal, Parada stood up and said this was wrong. Despite facing the possibility of deportation, Parada pushed forward to end this policy and filed this lawsuit. A jury listened to her and gave her $30,001, a verdict on the high side for unlawful imprisonment based on ICE contact.

## **FEES REQUESTED**

Parada seeks an award of attorney's fees and costs in the amount of $332,192.50 for services provided by attorneys with the American Civil Liberties Union of Minnesota ("ACLU-MN"), Saul Ewing, and Kutak Rock. *See* (Declarations of Alain Baudry, Ian Bratlie and Amanda Cefalu)(ECF Nos. 292, 294, 295.) The fees are primarily reflective of services provided by three lawyers in this action: Alain Baudry, Ian Bratlie, and Amanda R. Cefalu. (*Id*.) The declarations provide that Parada is seeking fees from each firm specifically as follows:

| **Attorney/Firm** | **Hours** | **Amount** |
|---|---|---|
| Ian Bratlie ACLU-MN | 278.4 | $116,928.00 |
| Alain Baudry, Saul Ewing Lauren Schoeberl, Saul Ewing | 166.2 | $ 95,857.00 |
| Amanda Cefalu, Kutak Rock Nathan Boone, Kutak Rock Jennifer Gauwitz, Kutak Rock | 389.8 | $119,407.50 |
| Total | 834.4 | $332,192.50 |

*See* (ECF Nos. 292; Ex. 1, 294; Ex. 1, 295; Ex. 1.)

The services provided by the law firms and lawyers were for the purpose of assisting Parada with prosecution and litigation through trial of her claims against Anoka County Defendants, including the Fourteenth Amendment claim, her false imprisonment claim, her request for declaratory relief, her request for injunctive relief, and trial of all claims presented to the jury. (*Id.*) Fees expended solely on claims Parada had asserted against other named Defendants under other counts or legal theories, such as the City of Coon Rapids and Officer Oman, to the extent possible and when such services were entirely separate or incurred on claims solely against those particular defendants. (*Id.*)

The claims against the Anoka Defendants, which were vigorously contested, were complex and involved disproving the Anoka Defendants' central contention, buttressed by their counsel's statistical analysis, that application of the unconstitutional policy to Ms. Parada did not extend the period of her confinement. (ECF No. 294, ¶ 8.) Defeating the Anoka County Defendants' narrative that Parada's detention was not prolonged by application of its unlawful ICE notification policy to her required counsel to become very familiar with the underlying factual record, to request in discovery and review all Jail records in depth, and take a number of depositions regarding the timeline of her detention. (ECF No. 294, ¶ 9; No. 295, ¶ 12.)  Counsel was also required to perform sufficient discovery and trial preparation to enable them to challenge the credibility of Anoka Count Defendants' witnesses by demonstrating a) that the policy itself was inconsistent with numerous other written policies of the Anoka County Sheriff's office; and b) that the jail knowingly deviated from its normal procedures with respect to Parada, such as denying her right to counsel; and c) but for Anoka County's application of its unconstitutional

policy to Parada, she would not have been turned over to ICE and would not have had her detention prolonged following her release from the Anoka County jail. (ECF No. 294, ¶ 9.) Each of these issues was inherently fact-intensive and required  a high level of trial preparation.

Trial preparation was complex and expenses were exacerbated by the sheer number of different witnesses that need to be called. (ECF No. 294, ¶ 10.)  The trial itself raised a number of evidentiary issues, reflected by numerous motions in *limine*, which required substantial time and attention, such as the Anoka Defendant's efforts to suppress the testimony of Ms. Parada's attorney Aaron Ferguson. (*Id*.) Further, even though only two claims were submitted to the jury, a substantial amount of work had to go into the jury instructions and several conferences with the Court were held before final instructions were agreed upon. (*Id*.)

## **ARGUMENT**

In any action brought to enforce 42 U.S.C. §1983 "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. §1988(b). The party seeking an award of fees must establish they are the prevailing party and must submit adequate evidence to demonstrate the hours worked and rates claimed. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).

## **I.    PARADA IS THE PREVAILING PARTY UNDER 42 U.S.C. §1988 AND ENTITLED TO ATTORNEY'S FEES AND COSTS.**

The first question in determining whether attorney's fees are proper in a civil rights case is whether the plaintiff was the prevailing party. A prevailing party is one who obtains at least some relief on the merits of his claim. *Farrar v. Hobby*, 506 U.S. 103 (1992), *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 804 (8th Cir, 1993). Under Eighth Circuit precedent, a party is a prevailing party if it is successful on just one claim. In *Farrar v. Hobby*, the Supreme Court stated the following as to prevailing party status:

> [T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. Otherwise the judgment or settlement cannot be said to affec[t] the behavior of the defendant toward the plaintiff. Only under these circumstances can civil rights litigation effect the material alteration of the legal relationship of the parties and thereby transform the plaintiff into a prevailing party. In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."

*Farrar,* 506 U.S. at 111–12, 113 S.Ct. 566.

A prevailing party determination does not turn solely upon the *amount* of the relief obtained, and although Parada was only awarded $1 on her §1983 claim, or nominal damages, the District Court may find that she is the prevailing party. In *Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752 (8th Cir. 2008), the Eighth Circuit considered this exact question – the question of whether a §1983 plaintiff who was awarded only nominal damages could be considered the prevailing party, or whether their victory was merely "technical" or *de minimus*. *Id*. at 763-765. The Eighth Circuit compared *Lowry*, the case before them, to *Farrar v. Hobby*, 506 U.S. 103 (1992), a case in which the U.S.

Supreme Court had held that a plaintiff who had requested $17 million in compensatory damages, but was then only awarded nominal, damages was not the prevailing party. In *Lowry*, the plaintiffs had brought §1983 claims asserting that the Watson Chapel School District had violated the First and Fourteenth Amendments by disciplining them for wearing black armbands to demonstrate disagreement with a school policy. (*Id.* at 758-759.) After a jury trial was concluded at which $0 compensatory damages were awarded to the plaintiff students, the lower court issued a permanent injunction barring the school from disciplining students for wearing similar armbands in the future, and granted the student's motion for attorney's fees. (*Id.*) The defendant had argued the students' victory was merely technical, and that the fee award should be vacated because they were not the prevailing party under §1988. (*Id.*) The Eighth Circuit disagreed, noting that the purpose of the litigation and the different forms of relief sought by the plaintiff were important to consider when determining prevailing party status, and noting that in *Farrar*, the plaintiff had not requested declaratory or injunctive relief, but instead only $17 million in compensatory damages. (*Id.* at 764-765.)  The Eighth Circuit held that in *Lowry* the students obtained a victory that was not merely technical because they were awarded "an injunction that benefitted all of the students in the school district, and the free speech right vindicated was not readily reducible to a sum of money." (*Id.*)

Here, Parada obtained a jury verdict of $30,001, successfully obtained a declaration from the court that Anoka County's ICE notification policy violated the Fourteenth Amendment, and has also requested that the District Court issue a permanent injunction barring or enjoining Anoka County from utilizing the unwritten and unconstitutional policy

in the future. *See* (ECF Nos. 173, 269, 282-285). Parada continues to live in Anoka County, if she is brought to the Anoka County Jail, deputies may no longer contact ICE pursuant to the unwritten and overly broad ICE notification policy. Parada has prevailed because the relief she has obtained on the merits materially alters the legal relationship between Parada and those similarly situated (foreign-born persons) and Anoka County and this modification benefits Parada. *See Jenkins v. Univ. of Minnesota*, No. CV 13-1548 (JRT/SER), 2017 WL 4657853, at *2 (D. Minn. Oct. 13, 2017, Tunheim, J.)(holding that a plaintiff who wins nominal damages is a prevailing party under §1988)(Declaration of Amanda Cefalu, Ex. 1); *citing Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).

## II.    PARADA'S REQUEST FOR ATTORNEY'S FEES IS REASONABLE.

In addition to being the prevailing party, a plaintiff must demonstrate that she is entitled to an award of attorney fees under the interpretation of 42 U.S.C. § 1988 made by the Supreme Court. "The degree of the plaintiff's overall success goes to the reasonableness" of a fee award. *Farrar v. Hobby*, 506 U.S. at 114; *citing Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). In *Hensley*, the Supreme Court laid out 12 factors to consider when deciding whether fees incurred are reasonable:

>    (1) the time and labor required;
>
>    (2) the novelty and difficulty of the questions;
>
>    (3) the skill requisite to perform the legal service properly;
>
>    (4) the preclusion of employment by the attorney due to acceptance of the case;
>
>    (5) the customary fee;
>
>    (6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and,

(12) awards in similar cases.

(*Id* at 436.)

All 12 factors need not be considered, as the most critical factor in determining a fee award "'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ex.2d 494 (1992) (quoting *Hensley*, 461 U.S. at 436). When a plaintiff wins a substantial award, brings public attention to a disturbing practice by law enforcement, and ends the agency from conducting future constitutional violations, the attorneys should receive the full lodestar amount. *Robinson v. City of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007).

Success does not require that the plaintiff be victorious on all her claims to receive the full lodestar. The U.S. Supreme Court has held that where unsuccessful claims are "related," counsel should be awarded all of their reasonable attorney's fees with no reduction to the lodestar.

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court

> should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. ... Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. ... Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley*, 461 U.S. at 435. The Supreme Court reiterated this position decades later in Fox

*v. Vice*, 563 U.S. 826 (2011). Paraphrasing *Hensley, Fox* stated that "[a] court should

compensate the plaintiff for the time his attorney reasonably spent in achieving the

favorable outcome, even if the plaintiff failed to prevail on every contention." *Fox,* 563

U.S. at 834 (punctuation and citations omitted). Non-compensation is justified only "on

claims that bore no relation to the grant of relief," or where the work was not "expended in

pursuit of the ultimate result achieved." (*Id.)* (citations and punctuation omitted).

The Supreme Court has noted that Congress' intent was to encourage successful

civil rights litigation and not make attorney's thread the needle on what claims were

brought to get the largest monetary settlement.

> An undesirable emphasis might be placed on the importance of the recovery of damages in civil rights litigation. The intention of Congress was to encourage successful civil rights litigation, not to create a special incentive to prove damages and shortchange efforts to seek effective injunctive or declaratory relief. Affirming the decision below would create an artificial disincentive for an attorney who enters into a contingent-fee agreement, unsure of whether his client's claim sounded in state tort law or in federal civil rights, from fully exploring all

11

> possible avenues of relief. Section 1988 makes no distinction
> between actions for damages and suits for equitable relief. *96
> Congress has elected to encourage meritorious civil rights
> claims because of the benefits of such litigation for the named
> plaintiff and for society at large, irrespective of whether the
> action seeks monetary damages.

*Blanchard v. Bergeron*, 489 U.S. at 95. Attorney's fees may be calculated liberally and courts have upheld attorney's fees when the federal fee-claim is not decided or even denied, so long as the other claims come from the same operative facts. *Rogers Group, Inc. v. City of Fayetteville, Ark.*, 683 F.3d 903, 912 (8th Cir. 2012).

Other federal courts have agreed. "When the plaintiff in a civil rights action prevails on a pendent state claim based on a common nucleus of operative fact with a substantial federal claim, fees may be awarded under § 1988. *See Gagne v. Maher*, 594 F.2d 336, 339-40 (2d Cir. 1979); *Lund v. Affleck*, 587 F.2d 75, 76-77 (1st Cir. 1978); *cf. Bartholomew v. Watson*, 665 F.2d 910, 912-14 (9th Cir. 1982) (allowing fees under § 1988 for work done on federal claim in state court as a result of Pullman abstention by federal district court)." *Carreras v. City of Anaheim*, 768 F.2d 1093 (9th Cir. 1985).

A.   **Parada was victorious on her Fourteenth Amendment claim and obtained a favorable jury award on her false imprisonment claim arising out of application of the ICE notification policy, and as such, deserves her full lodestar.**

The principal goal in this lawsuit was to get the policy Anoka relied upon to violate Parada's rights declared unconstitutional, to stop the policy from harming others in the future, and getting Parada some form of compensation for her injuries in being detained for longer than required to process her minor traffic citation. She obtained success as to all three goals. The jury awarded Parada nominal damages on Count V for an equal protection

violation, and $30,000 on Count VIII, for false imprisonment. *See* (ECF No. 269.) The compensatory damages Parada was awarded were directly related to and arose out of application of the ICE notification policy. The jury was instructed, that as to Parada's false imprisonment claim, that "[Parada] claims she was falsely imprisoned, both at the Anoka County Jail and later by ICE at the Sherburne County jail, because of application of Anoka County's unconstitutional policy." (Trial Transcript, Vol. IV, p. 675, lines 11-18.) The court also instructed the jury that in part,

> "[t]he Court's determination that Anoka County's policy of contacting ICE was unconstitutional can color your determination of false imprisonment. If you find that Ms. Parada was detained for even one second longer than she would have been but for the Anoka County Jail ICE notification policy, you must find that she was falsely imprisoned."

(*Id* at p. 676, lines 1-10.) The jury then concluded that Parada had been falsely imprisoned and awarded her $30,000 in compensatory damages. Parada also successfully obtained a declaration that the ICE notification policy was unconstitutional, and has a pending Motion for Permanent Injunction which would permanently bar application of the policy to all individuals who are detained or processed at the Anoka County Jail. *See* (ECF No. 282-285.)

Although Parada was unsuccessful against Anoka County on her dismissed Fourth Amendment claim, her substantive due process and procedural due process claims[1], these claims were closely related to application of the ICE notification policy, and related to the central premise of this civil rights lawsuit – which is that the existence of Anoka's

---

[1] *See* Third Amended Complaint, Counts I – III. (ECF No. 99.)

unwritten policy unlawfully discriminated against individuals like Ms. Parada based on national origin. Counts I, II, and III were closely linked to the central claims in this case. Parada was held for longer than required, as the jury agreed, and her Fourth Amendment claim for unreasonable seizure was well-founded such that it was not dismissed until summary judgment (rather than on a Rule 12 motion). The lack of due process afforded Parada, particularly the failure to allow her to speak to her lawyer or family prior to talking to ICE, was directly tied to the ICE notification policy itself. Had the policy not existed, the due process violations would not have happened. As such, the court should not reduce the attorney's fee award because Plaintiff lost on those claims.

When considering the reasonableness of a fee award, courts may also consider the (1) difference between the amount of the damages sought and the amount recovered; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public goal or purpose the litigation served. *Jones v. Lockhart*, 29 F.3d 422, 423–24 (8th Cir. 1994) citing *Farrar,* 506 U.S. 103, 122-123; 113 S.Ct. at 578–79 (O'Connor, J., concurring). Here, Parada requested $50,000 in compensatory damages from the jury and she was awarded $30,001 for actions directly arising out of application of the unconstitutional policy. (Trial Transcript, Vol. IV, p. 658-659; ECF No. 269.) She did not seek millions in compensatory damages and receive nothing. The significance of the legal issue could not be overstated – issues relating to immigration have been at the forefront of national politics, as has the issue of whether local cooperation with ICE is constitutionally sound. In fact, one of the exhibits Anoka County Defendants attempted to introduce into evidence was the new presidential administration's position on immigration reform. This civil rights case

14

dealt with discrimination on the basis of national origin and the intersection of state law enforcement and ICE cooperation.

The issue presented in the case was difficult and novel.  This court has noted that civil rights litigation is "complex" and comparable with anti-trust law. *King v. Turner*, No. CIV 05-388 (JRT/FLN), 2007 WL 1219308, at *1 (D. Minn. Apr. 24, 2007)(Cefalu Decl. Ex. 2.) The Court has already issued two decisions in this case that have been cited by several other courts from as far away as Washington, Illinois, and Georgia. *See Glob. Neighborhood v. Respect Washington*, 7 Wash. App. 2d 354, 402, 434 P.3d 1024, 1049, review denied, 193 Wash. 2d 1019, 448 P.3d 69 (2019), and cert. denied, 140 S. Ct. 638, 205 L. Ed. 2d 389 (2019)(case discussing whether City of Spokane asking questions about immigration status was unlawful racial profiling); *See also Alcocer v. Bulloch Cty. Sheriff's Office*, No. CV 615-094, 2019 WL 2207659, at *5 (S.D. Ga. May 21, 2019), aff'd sub nom. *Alcocer v. Mills*, 800 F. App'x 860 (11th Cir. 2020)(discussing the role of state and local law enforcement in enforcing federal immigration law and noting that detentions at local jails must be supported by probable cause)(Decl. Cefalu, Ex. 3.)

The goal of the litigation was not only personal, but aimed at protecting Parada and those similarly situated, foreign-born persons, from future deprivations of their constitutional rights by Anoka County. *See* (ECF No. 99; ¶¶ 191-196 (Counts X-XI).) At the outset of this case, the District Court astutely referenced the public purpose of this litigation as well as the detrimental impact that racial and national origin discrimination has on the community in an Order dated July 30, 2018, noting that "[a] substantial number of Latinos – both U.S. citizens and foreign-born residents – are less likely to contact the

police or report crimes, even when they are victims, because they fear that police will inquire into their immigration status." (ECF No. 37, pp. 1-2.)  Parada obtained a result which serves the public interest because it clarifies that local law enforcement may not engage in unwritten off-the-books policies which subjects persons to different detention procedures, which can potentially result in longer detention times, based upon nothing more than the fact that the person was not born in the United States. Parada is the prevailing party, and the fees she expended to obtain the results in this case arising out of her Fourteenth Amendment claim, while substantial, were reasonable in light of the goals achieved and because the outcome she has obtained is a matter of substantial public importance.

> **B.    The amount of the attorney's fees and costs requested by Parada is reasonable.**

Attorney's fees are determined by multiplying the reasonable hours expended by a reasonable hourly rate. *Hensley*, 461 U.S. at 433; *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891(1984). This method is referred to as the "lodestar" method and is considered the presumptively appropriate fee award. *Blanchard v. Bergeron*, 489 U.S. 87, 95, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)(the "strong presumption that the lodestar figure . . . represents a reasonable fee is wholly consistent with the rationale behind (section 1988)."; *Perdue v. Kenny A.*, 559 U.S. 542, 546, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010). When litigation of a §1983 case leads to "excellent results," the plaintiff's attorney "should recover a fully-compensatory fee." *Hensley*, 461 U.S. at 435. "Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of

exceptional success an enhanced award may be justified." *Id*. The district court is expressly allowed to exercise its discretion in determining the reasonableness of an award." *King v. Turner*, 2007 WL 1219308, *1, Civil No. 05–388 (JRT/FLN) (D. Minn. 2007)(Cefalu Decl. Ex. 3.)

Parada's attorneys have presented appropriate evidence to support the requested $332,192.50 fee award for approximately 834 hours worked. *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005)(reasonable fee calculated by multiplying hours reasonably expended on the litigation multiplied by a reasonable hourly rate). The hours expended on the issues Parada proceeded to trial upon are reasonable, the request for fees has been adjusted to remove hours that were spent solely on claims involving other parties, and the hourly rates charged by each lawyer is reasonable.[2] *See* (ECF No. 293.) The three attorneys whose hours are included in this motion are Alain Baudry, Amanda Cefalu and Ian Bratlie. Each has over fifteen years of experience, if not more, and their requested hourly rate is in line with local rates.[3] *See* (Declaration of Alain Baudry; Declaration of Ian Bratlie; Declaration of Amanda Cefalu); *See also* (Declaration of Bob Bennett; ECF No. 293.) Parada is not claiming any hours for deposing Coon Rapids witnesses, even though, had Plaintiff not sued Coon Rapids, these witnesses would have still been deposed for purposes of Parada's case against Anoka County. Myriam Parada was only able to bring this lawsuit forward

---

[2] Plaintiff notes that they could have added more hours to their claims for work Julio Zelaya, an organizer for the ACLU-MN, did in the early of the stages of the case but have decided not to. Nor are they claiming any hours from Teresa Nelson, ACLU-MN legal director.

[3] The Eighth Circuit has held that non-profit attorneys may bill at appropriate level as a private attorney. *Oldham v. Ehrlich*, 617 F.2d 163, 168-169 (8th Cir. 1980).

because of the ACLU-MN wanted to continue to litigate against law enforcement violating constitutional rights of immigrants, and due to the commitment of Mr. Baudry and Ms. Cefalu to add their experience to this lawsuit. Unfortunately, there is still not a strong market to take these kind of cases in the general bar.

Most importantly, Plaintiff was substantially successful on the aims of her lawsuit. The policy that injured her was declared unconstitutional and a jury gave her $30,001 for the injuries she suffered. That award, roughly $2,000 for each hour of false imprisonment, is significantly better than comparable cases. See *Pitt v. District of Columbia*, 558 F.Supp.2d 11 (D.D.C. 2008) (individual awarded $10,000/day for false imprisonment); *Orellana v. Nobles County*, 15-3852 (D. Minn., 2017) (non-citizen held for 10 days by Sheriff waiting to pick him up settled for $17,500); *Alfaro-Garcia v. Henrico County*, 3:15-cv-349 (E.D. VA 2017) (non-citizen held for two days in jail granted $12,000); *Sergio Carrillo v. US*, 17-01430 (C.D. Cal 2017) (USC held unlawfully by ICE for three days settled for $20,000); *Del Agua v. Jones*, 15-0185 (E.D. Cal, 2015) (individual held at local jail for three days for ICE settled for $25,000).

### C.    Parada is entitled to any and all costs not taxed by the Clerk of Court.

Parada has also submitted a Bill of Costs, pursuant to Rule 54, seeking $9,738.25 in taxable costs. *See* (ECF No. 290-291.) To the extent any of these costs are determined to be non-taxable costs, Parada is entitled to such costs as they are charges which were reasonably charged for prosecution of her claims in this action. *Warnock v. Archer*, 397 F.3d 1024, 2017 (8th Cir. 2005)(Rule 54 costs include such charges or fees "reasonably charged by attorneys to their clients.") The primary costs in this action were deposition

transcripts for individuals who had critical knowledge of Parada's detention at the Anoka County Jail. Deposition testimony was used extensively when all parties moved for summary judgment, and at trial. Parada's reasonable costs are discussed in the Declaration submitted with her Bill of Costs and reflect the reasonable expenses incurred in this action which are generally awarded to prevailing parties.

## CONCLUSION

For the reasons stated above, Parada respectfully requests that the District Court award her $332,192.50 in reasonable attorney's fees and costs, and up to $9,738.50 in costs if they are not taxed by the clerk. In total, Parada is entitled to $341,931.00 as an award of attorney's fees and costs for services rendered by her attorneys in this action pursuant to 42 U.S.C. §1988.

**KUTAK ROCK LLP**

Date:  March 4, 2021.             By:  ___*s/ Amanda R. Cefalu*_____
                                  Amanda Cefalu (#0309436)
                                  Nathan T. Boone (#0398989)
                                  Kutak Rock LLP
                                  60 South Sixth Street, Suite 3400
                                  Minneapolis, MN 55402-4513
                                  Telephone: 612-334-5000
                                  Email: Amanda.Cefalu@kutakrock.com
                                       Nathan.Boone@kutakrock.com

                                  **\*AND\***

                                  **SAUL, EWING ARSTEIN & LEHR LLP**

                                  Alain M. Baudry (#0186685)
                                  33 South Sixth Street, Suite 4750
                                  Minneapolis, MN 54402
                                  Telephone (612) 225-2800

Email: Alain.baudry@saul.com


   **\*AND\***

**AMERICAN CIVIL LIBERTIES UNION
OF MINNESOTA**

Ian Bratlie (#0319454)
ACLU of Minnesota
709 S. Front Street, Suite 709
Mankato, MN 56001
Telephone: 507-995-6575
Email: ibratlie@aclu-mn.org

Teresa Nelson (#269736)
ACLU of Minnesota
PO Box 14720
Minneapolis, MN 55414
Telephone: 651-645-4097
Email: tnelson@aclu-mn.org