## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

---

MYRIAM PARADA,

                             Civil No. 18-795 (JRT/TNL)

                  Plaintiff,

v.

                          **MEMORANDUM OPINION AND ORDER**

ANOKA COUNTY and JAMES STEWART,      **ON POST-TRIAL MOTIONS**
*Anoka County Sheriff in his individual and*
*official capacity*,

                  Defendants.

---

Amanda R. Cefalu and Nathan T. Boone, **KUTAK ROCK**, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402; Alain M. Baudry and Matthew R. Veenstra, **SAUL EWING ARNSTEIN & LEHR LLP**, 33 South Sixth Street, Suite 4750, Minneapolis, MN 55402; and Ian Bratlie and Teresa J. Nelson, **ACLU of MINNESOTA**, 709 South Front Street, Suite 1B, Mankato, MN 56001, for plaintiff.

Jason J. Stover, Andrew T. Jackola, and Robert I. Yount, **ANOKA COUNTY ATTORNEY'S OFFICE**, 2100 Third Avenue, Suite 720, Government Center, Anoka, MN 55303, for defendants.

Following a jury verdict awarding nominal damages for Anoka County's violation of Plaintiff Myriam Parada's Fourteenth Amendment rights, finding Anoka County liable for falsely imprisoning Parada, and awarding her $30,000 in compensatory damages for false imprisonment, Defendants have filed a Motion for Judgment as a Matter of Law, renewing their motion filed at the close of Plaintiff's case-in-chief at trial, asserting that

Parada's false imprisonment claim is not cognizable under Minnesota law. Parada has also filed post-trial motions: a Motion to Amend the Judgment, seeking a permanent injunction; and a Motion for Attorney Fees and Costs.

Because the Court finds that a municipality can be directly liable for false imprisonment under Minnesota law, it will deny Defendants' Motion. The Court will also deny Parada's Motion to Amend the Judgment because a permanent injunction is not necessary to prevent future irreparable harm. Lastly, because Parada is the prevailing party, the Court will grant Parada's Motion for Attorney Fees, but will reduce the amount of fees requested to reflect Parada's partial success at trial.

## BACKGROUND

On July 25, 2017, Plaintiff Myriam Parada was arrested for driving without a license, detained at the Anoka County Jail, and then taken into ICE custody and placed in removal proceedings. *See Parada v. Anoka Cnty.*, 481 F. Supp. 3d 888, 893–96 (D. Minn. 2020). Parada initiated a civil rights action against Defendants Anoka County and Anoka County Sheriff James Stuart in his official capacity (collectively, "Anoka County" or "Defendants") seeking, among other things, relief for alleged violations of the Fourteenth Amendment Equal Protection Clause, pursuant to 42 U.S.C. § 1983, and for false imprisonment in violation of Minnesota law. *Id.* at 896. Through discovery, it was revealed that, at the time of Parada's arrest, the Anoka County Jail had an unwritten policy requiring its employees to contact ICE whenever a foreign-born individual was

detained at the jail, without regard to whether the individual was a U.S. citizen.  *Id.* at 895.

The parties filed motions for summary judgment, and the Court found that Anoka County's unwritten policy of contacting ICE was facially unconstitutional because it discriminated against individuals based solely on national origin and was not narrowly tailored to further a compelling government interest, in violation of the Fourteenth Amendment Equal Protection Clause.  *See id.* at 903–04.  Whether Parada was entitled to compensatory damages for actual injury caused by Anoka County's constitutional violation was left to be decided at trial.  *Id.* at 904; *see also* Order on Causation at 3–4, Jan. 22, 2021, Docket No. 253.  The Court denied both parties' motions for summary judgment on Parada's false imprisonment claim, however, finding that there remained disputed facts about whether Parada was detained longer than legally justified.  *Parada*, 481 F. Supp. 3d at 906.

Following the Court's summary judgment order, Anoka County represented to the Court that, "[t]he ICE notification practice was found to be unconstitutional, and the Anoka Defendants respect the Court's decision.  They immediately ceased the practice and it will not resume unless and until a court of appeal determines that this Court's decision was in error."  (Anoka Cnty. Stmt. of Case at 6, Jan. 11, 2021, Docket No. 223.)

During a pretrial conference, Anoka County inquired as to Parada's claims for declaratory and injunctive relief, which had not yet been addressed in relation to the trial.

-3-

(Tr. Status Conf. at 16–17, Mar. 10, 2021, Docket No. 299.)  Parada's counsel stated that because Anoka County suspended the policy after the Court's summary judgment order, he thought the injunctive claims might be moot but needed to give it more thought.  (*Id.* at 17.)  The Court told Parada's counsel to further consider the matter and provide input, and then the Court would make a determination about how to handle the claims.  *(Id.)*  Parada's counsel did not provide additional insight, and no such determination was made before trial.

At trial, the jury heard testimony from Commander David Pacholl of the Anoka County Jail, who oversees jail employees and policies.  (Tr. Vol. II at 313:1–20, Feb. 26, 2021, Docket No. 279.)  Among other policies, Pacholl testified about the jail's unwritten ICE notification policy and his consultation with the Anoka County Attorney's Office about the jail's practice of notifying ICE when someone is in custody who was born outside the United States.  (*See id.* at 317:9–319:19.)

Pacholl and Anoka County Jail detention deputies testified about operation of the ICE notification policy.  Deputies notified ICE through a portal and then waited to see if they got a response, which could take between 20 minutes and 6 hours; if they did not receive a response, deputies made a follow-up phone call to ICE, although phone calls were not tracked.  (*Id.* at 340:16–341:12; Tr. Vol. III at 511:11–14, Feb. 26, 2021, Docket No. 280.)  Indeed, a former detention deputy testified that he was trained to wait for ICE to call back after alerting the agency about an individual in custody.  (Tr. Vol. III at 478:10–

12.)  Pacholl explained that an ICE detainer is not legally sufficient for detaining someone past their release time, but Parada introduced an exhibit showing that a jail employee had written "Hold for ICE" on a facility release form for another individual, shortly before Parada's arrest.  (Tr. Vol. II at 353:13–17, 354:18–23.)

Pacholl testified that the jail is no longer notifying ICE about individuals in custody who were born outside the United States, based on the advice of their attorneys, (*id.* at 328:3–5), and he has informed his lieutenants, sergeants, and detention deputies to cease the practice, (*id.* at 328:6–14.)  Detention Deputy Bryan Hermanson was asked if he received an email from Commander Pacholl that the policy would no longer be followed, and stated that he "probably" did.  (Tr. Vol. III at 563:17–24.)

At the close of Parada's case-in-chief, Anoka County moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) on Parada's claim for false imprisonment.  (Tr. Vol. III at 598:11–14.)  Anoka County asserted that Parada's false imprisonment claim fails as a matter of law because Parada brought the claim against Anoka County under a theory of vicarious liability, yet no individual defendant remained in the case at the time of trial.  (*Id.* at 598:15–599.)  Parada opposed the motion, stating that she pleaded the false imprisonment claim directly against Anoka County.  (Tr. Vol. IV at 618:6–619:3, Feb. 26, 2021, Docket No. 281.)

The Court denied the motion but suggested that the issues raised by Anoka County could be examined through a post-trial motion, if appropriate.  (*Id.* at 625:10–15, 627:9–

13.)  The Court indicated that the operative Complaint appeared to include a direct claim against Anoka County for false imprisonment, but noted that the issue of whether a municipality could be directly liable for false imprisonment is a complex question of law. (*Id.* at 625:9–626:14.)  After denying Anoka County's motion, the Court asked the parties whether there was anything to be changed in the false imprisonment jury instructions, and they responded that they had no changes.  (*Id.* at 626:15–627:7.)

The case was submitted to the jury with instructions on actual damages for the Fourteenth Amendment Equal Protection Clause claim and on the requirements for false imprisonment under Minnesota law.  (*See* Tr. Vol. IV at 670:19–677:22.)  As to proving false imprisonment, the Court instructed the jury that:

> Ms. Parada claims she was falsely imprisoned, both at the Anoka County Jail and later by ICE at the Sherburne County Jail because of application of Anoka County's unconstitutional policy.  False imprisonment occurred if, one, Anoka County intentionally restricted the physical liberty of Ms. Parada by words or acts; and two, Ms. Parada was aware of the words or acts and was harmed by them.
>
> This restriction may be caused by words or by acts, including: 1. The use of physical barriers, or 2. The use of physical force, or 3. The threat of the immediate use of physical force. It must be proved that Ms. Parada believed Anoka County had the ability to carry out the threat.
>
> This restriction must be complete. A restriction is complete if there is no reasonable means of escape known to the person. The Court's determination that Anoka County's policy of contacting ICE was unconstitutional can color your determination of false imprisonment.

-6-

> If you find that Ms. Parada was detained for even one second longer than she would have been but for the Anoka County Jail ICE notification policy, you must find that she was falsely imprisoned.

(Tr. Vol. IV at 675:11–676:8.)

The jury returned a special verdict, finding that Anoka County caused Parada to be falsely imprisoned and that she suffered actual injury from the false imprisonment, and awarding $30,000 in compensatory damages for false imprisonment. (*See* Jury Verdict at 3, Jan. 29, 2021, Docket No. 265.) The jury awarded Parada nominal damages of $1.00 for her Fourteenth Amendment claim, finding that the constitutional violation did not proximately cause actual injury. (*Id.* at 1–2.) The jury was not asked any questions in the special verdict regarding vicarious versus direct liability for false imprisonment or any questions related to equitable or injunctive relief. (*See generally id.*) Judgment was entered on February 2, 2021. (Judgment, Feb. 2, 2021, Docket No. 269.)

After entry of judgment, Parada filed a Motion for Attorney Fees and Costs pursuant to 42 U.S.C. § 1988, (Mot. Att'y Fees, Feb. 16, 2021, Docket No. 270), and a Motion to Amend the Judgment pursuant to Rule 59, asking the Court to permanently enjoin Anoka County from employing the unconstitutional, unwritten ICE notification policy, (Rule 59 Mot., Mar. 2, 2021, Docket No. 282). Anoka County filed a renewed

Motion for Judgment as a Matter of Law seeking invalidation of Parada's claim for false imprisonment.[1]  (Mot. J. Matter of Law, Mar. 4, 2021, Docket No. 287.)

## DISCUSSION

**I.    DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

**A.    Standard of Review**

Under Rule 50, the Court may resolve an issue as a matter of law if "a party has been fully heard on an issue during a jury trial" and "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  "A motion for judgment as a matter of law should be granted when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party."  *Hunt ex rel. Hunt v. Lincoln Cnty. Mem'l Hosp*., 317 F.3d 891, 893 (8th Cir. 2003) (quotation omitted).

If the Court does not grant a motion for judgment as a matter of law made during trial pursuant to Rule 50(a), the moving party may file a renewed motion regarding legal questions following the verdict and entry of judgment pursuant to Rule 50(b).  Fed. R. Civ. P. 50(b).  In deciding a renewed motion, the Court considers the evidence in the light most favorable to the prevailing party and assumes the jury resolved conflicts in the evidence

---

[1] Defendants initially filed a renewed motion for judgment as a matter of law on February 16, 2021, which has not been formally withdrawn.  (*See* Mot. J. Matter of Law, Feb. 16, 2021, Docket No. 271.)  Because the Court considers the merits of the later-filed Motion, the Court will deny Defendants' first motion for judgment as a matter of law as moot.

in their favor. *Minneapolis Cmty. Dev. Agency v. Lake Calhoun Assocs.*, 928 F.2d 299, 301 (8th Cir. 1991). Because a Rule 50(b) motion constitutes a renewal of a Rule 50(a) motion made at the close of the evidence, a Rule 50(b) motion is limited to the issues raised in the Rule 50(a) motion. *Hinz v. Neuroscience, Inc*., 538 F.3d 979, 983–84 (8th Cir. 2008).

### B.    Analysis

#### 1.    Vicarious Versus Direct Liability

As an initial matter, the Court settles the question of whether Parada alleged false imprisonment vicariously or directly against Anoka County. Under Minnesota law, "every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function." Minn. Stat. § 466.02. Thus, because a county is a municipality, Minn. Stat. § 466.01 subd. 1, Anoka County may be directly liable for its own torts, as well as vicariously liable for the torts of individual employees. For vicarious liability to attach, there must first be an individual responsible for the tort at issue. *See Leaon v. Washington Cnty.*, 397 N.W.2d 867, 874 (Minn. 1986). Anoka County maintains that the false imprisonment claim is premised on vicarious liability and the claim consequently fails because there is no individual defendant for whose actions the County could be vicariously liable.

In her operative Complaint, Parada defined "Anoka County Defendants" as "Defendants Anoka County, Anoka County Sheriff James Stuart, and agents of the Anoka

County Jail whose names are not presently known[.]" (3ʳᵈ Am. Compl. ¶ 18, Nov. 18, 2019, Docket No. 99.)  With respect to Anoka County, Parada stated that she based "all applicable and appropriate claims on the doctrine of respondeat superior or vicarious liability and municipal liability pursuant to *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978)." (*Id.* ¶ 16.)

Parada brought her false imprisonment claim, Count VIII, against all Defendants, alleging that her "continued detention by Anoka Defendants for ICE officials is an unconstitutional policy, practice, or custom, caused by a lack of supervision, failure to train, or other act or omission, and was the moving force behind this state law violation and the cause of such violation[,]" and that "Defendants intentionally confined and restrained Plaintiff without her consent by not releasing her from custody when they should have[,]" therefore confining her "beyond the time permitted by law[,]" which "Defendants knew it had no lawful authority" to do. (*Id.* ¶¶ 182–87.)

The plain language of the false imprisonment claim does not foreclose a claim for direct liability against Anoka County.  Although the false imprisonment claim notes that all "individual Defendants" were employees of municipalities and were acting within the scope of their employment or duties, (*see id.* ¶ 181–82), the claim plainly encompasses all Defendants and specifically notes the Anoka Defendants as unlawfully confining Parada, without exclusion of Anoka County and without other references that constrain the claim to one of vicarious liability only.  As such, the Court reads the broad allegations

in the Complaint as alleging a claim of direct, as opposed to merely vicarious, liability for false imprisonment against Anoka County, and the claim does not fail for lack of an individual defendant.[2]

### 2.   Municipal Direct Liability for False Imprisonment

Finding that Parada asserted her false imprisonment claim directly against Anoka County, the Court next examines whether Minnesota law recognizes a direct cause of action against a municipality for the tort of false imprisonment.  False imprisonment is "any imprisonment which is not legally justifiable," *Kleidon v. Glascock*, 10 N.W.2d 394, 397 (Minn. 1943), or "unlawful restraint," *Durgin v. Cohen*, 209 N.W. 532, 533 (Minn. 1926).  To establish false imprisonment, a plaintiff must show (1) words or acts by defendant intended to confine plaintiff, (2) actual confinement of plaintiff, and (3) awareness by plaintiff that she is being confined.  *Blaz v. Molin Concrete Products Co.*,

---

[2] Reading Parada's Complaint as asserting a direct claim against Anoka County also comports with Rule 15(b)(2), which provides that "when an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Anoka County did not raise the now-asserted pleading deficiency regarding the false imprisonment claim at any time before the close of Parada's case-in-chief.  Construing Parada's complaint as not claiming direct municipal liability for false imprisonment could evade resolution of the case on the factual and legal merits.  *See Kaplan v. Mayo Clinic*, No. 07-3630, 2015 WL 1608095, at *2 (D. Minn. Apr. 10, 2015) ("The goal of Rule 15(b) is to promote the objective of deciding cases on the merits rather than on the relative pleading skills of counsel.  Where the parties have implicitly or explicitly consented to try an issue, amendments under the rule are to be liberally granted where necessary to bring about the furtherance of justice and where the adverse party will not be prejudiced. . . . Implied consent exists where a party has actual notice of an unpleaded issue and ha[s] been given an adequate opportunity to cure any surprise resulting from the change in the pleadings." (quotations and citations omitted)).

244 N.W.2d 277, 279 (Minn. 1976).  Liability for false imprisonment attaches based on direct or indirect action, participation in or proximate cause of unlawful detention. *Kleidon*, 10 N.W.2d at 397.

The Minnesota Supreme Court has not squarely addressed whether a municipality may be directly liable for false imprisonment; therefore, the Court must predict how the state supreme court would apply Minnesota law to the case at hand.  *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010).   Anoka County relies on several nonprecedential cases in which Minnesota courts have denied false imprisonment claims against municipal defendants to show that Minnesota courts would not recognize municipal direct liability.  *See, e.g.*, *Cox v. Dakota Cnty.*, No. A15-0009, 2015 WL 5198164, at *3 (Minn. Ct. App. Sept. 8, 2015) (finding no evidence in the record of intent on the part of any unnamed employees to support jury's verdict of vicarious liability for false imprisonment against the county); *Lopez v. Minnesota Vikings Football Stadium*, No. 17-1179, 2018 WL 2976000, at *4–5 (D. Minn. June 12, 2018) (rejecting vicarious false imprisonment claims against county because the complaint did not identify employee conduct that could allegedly give rise to vicarious liability).  In relation to Parada's case, however, these decisions are inapposite because the false imprisonment claims against the county defendants were for vicarious liability only, not direct liability.

By contrast, in *Esparza v. Nobles County*, plaintiffs brought a claim of false imprisonment directly against Nobles County and the Nobles County Sheriff—equivalent

defendants to those in Parada's case at the time of trial. *See Esparza v. Nobles Cnty.*, No. 53-cv-18-751 (Minn. D. Ct. Jan. 30, 2020).[3]  Plaintiffs challenged the Nobles County Jail policy of contacting ICE and relying on ICE warrants to detain individuals. *Id.* at 2 (adopting facts from *Esparza v. Nobles Cnty.*, No. 53-cv-18-751, 2018 WL 6263254, at *1– 4 (Minn. D. Ct., Oct. 19, 2018)).  The court found that the detention policy was unlawful and the false imprisonment elements were satisfied by the existence of the unlawful policy; thus only the issue of immunity remained. *Id.* at 7–8.  Although the parties did not dispute the validity of direct municipal liability for false imprisonment, *Esparza* tacitly supports the conclusion that direct liability for false imprisonment is a cognizable claim against a municipality under Minnesota law, as the court found that plaintiffs established the elements of false imprisonment against solely municipal defendants.  Yet, whether a municipality can be directly liable for false imprisonment remains unexamined in depth by Minnesota courts.

False imprisonment has long been recognized as any imprisonment that is not legally justifiable. *See, e.g.*, *Kleidon*, 10 N.W.2d at 425; *see also Waters v. Madson*, 921 F.3d 725, 743 (8th Cir. 2019).  Evidence presented at trial, construed in the light most favorable to Parada, supports a finding that Anoka County officials knew they could not lawfully detain someone on ICE's behalf and that jail policy required equal treatment of

---

[3] Parada filed a copy of the summary judgment order in *Esparza* with the Court.  (*See* Ltr. to Dist. Judge, Mar. 10, 2020, Docket No. 165.)

individuals; yet the County perpetuated the ICE notification policy on the basis of national origin and trained deputies to wait for a response from ICE about foreign-born detainees. Knowing enforcement of an unlawful policy supports an inference that Anoka County intended to detain individuals on an unlawful basis. *See Blaz*, 244 N.W.2d at 279 (requiring a showing of words or acts intended to confine plaintiff to establish false imprisonment). Moreover, the jury found that Parada was held at the jail longer than she would have been absent application of the unconstitutional policy, meaning her liberty was illegally restrained—the fundamental condition of false imprisonment. *See Waters*, 921 F.3d at 743.

Thus, based on longstanding principles of Minnesota tort law, the Court finds that Minnesota courts would recognize a claim of direct municipal liability for false imprisonment where a municipality knowingly acts in a way that leads to unlawful confinement. The Court finds no reason that Anoka County cannot be directly liable for false imprisonment, unless the County can establish that it is immune from tort liability.

### 3.     Immunity Defenses

Minnesota law carves out two immunity defenses for municipalities faced with tort claims. Statutory immunity shields municipalities from liability for discretionary acts when claims are "based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn. Stat. § 466.03, subd. 6. Municipalities may also be immune through the common law doctrine

of vicarious official immunity, which applies when a public official is charged with duties requiring exercise of judgment or discretion, unless the official is guilty of a willful or malicious wrong or vicarious immunity does not attach for policy reasons. *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 655, 663–64 (Minn. 2004).

Parada maintains that Anoka County has waived both immunity defenses because Anoka County did not raise either in its Rule 50(a) motion during trial. The grounds for judgment as a matter of law under Rule 50(b) "are limited to those asserted in support of the pre-verdict motion for judgment as a matter of law under Rule 50(a)." *Hyundai Motor Fin. Co. v. McKay Motors I, LLC*, 574 F.3d 637, 640–41 (8th Cir. 2009). "This timing requirement is necessary to allow an opposing party the opportunity to cure any defects in proof that would otherwise prevent the case from going to a jury." *Milhauser v. Minco Prods. Inc.*, 701 F.3d 268, 273 (8th Cir. 2012) (citation omitted). However, because "a pre-verdict Rule 50(a) motion does not require technical precision," grounds for judgment that are "intertwined to those in the Rule 50(a) motion may be raised in a post-trial Rule 50(b) motion." *Hagen v. Siouxland Obstetrics & Gynecology*, PC, 799 F.3d 922, 928 (8th Cir. 2015) (quotation omitted). Put differently, a Rule 50(b) movant must have "sought relief on similar grounds under Rule 50(a)." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008).

### a.    Statutory Immunity

In neither the verbal Rule 50(a) motion nor in the written Rule 50(a) motion and memorandum, did Anoka County raise a statutory immunity defense.  However, statutory immunity is established by the same statutory scheme as the Minnesota municipal tort liability statute, which Parada relies on to assert her claim against Anoka County, and Parada refuted the applicability of statutory immunity in response to Anoka County's Rule 50(a) motion, demonstrating that statutory immunity is inextricably intertwined with the municipal tort claim at issue here.  The Court will therefore assess whether statutory immunity precludes liability.

Determining whether statutory immunity applies is a two-step process.  First, the Court identifies the conduct at issue.  *Conlin v. City of Saint Paul*, 605 N.W.2d 396, 400 (Minn. 2000).  To support her false imprisonment claim, Parada argued that the Anoka County Jail deputies slow-walked or otherwise facilitated her booking process to permit ICE to take her into custody before she was discharged from the county jail.  As such, the conduct at issue is the manner in which the deputies booked and processed Parada the night of her arrest.

Second, the Court decides whether the conduct is planning level, which is protected, or operational level, which is not protected.  *Id.*  "Planning level decisions are those involving questions of public policy, that is, the evaluation of factors such as the financial, political, economic, and social effects of a given plan or policy.  Operational level

decisions, on the other hand, involve decisions relating to the ordinary day-to-day operations of the government." *Holmquist v. State*, 425 N.W.2d 230, 232 (Minn. 1988). Even though the false imprisonment claim is premised on application of the ICE notification policy, the conduct at issue was the day-to-day operations of the Anoka County Jail: the booking and processing of detainees. *Accord Orellana v. Nobles Cnty*, 230 F. Supp. 3d 934, 947–48 (D. Minn. 2017); *Gleason v. Metro. Council Transit Ops.*, 563 N.W.2d 309, 320 (Minn. Ct. App. 1997). Thus, the conduct is unprotected, and statutory immunity cannot insulate Anoka County from liability.

### b. Vicarious Official Immunity

Unlike statutory immunity, vicarious official immunity played no part in the Rule 50(a) motion on either side, and the Court finds that Anoka County has waived the defense. First, although Anoka County mentioned the defense in its Answer, the County has not since raised the defense, not even in its pretrial Rule 56 summary judgment motion in which it sought judgment as a matter of law on the false imprisonment claim, *see Parada*, 481 F. Supp. 3d at 905–06, and raising a potential defense in an Answer is insufficient to preserve a defense for a post-trial motion for judgment as a matter of law, *cf. Tipton v. Union Tank Car Co.*, No. 15-311, 2018 WL 6729641, at *4 (E.D. Tenn. Dec. 21, 2018) (finding that even an issue previously analyzed by the court at summary judgment was waived for post-verdict Rule 50(b) motion when not raised in the pre-verdict motion).

Further, official immunity is not an essential element of municipal tort liability—there is no burden on the plaintiff to disprove immunity—so the Court will not permit expansion of the argument. *See Rockport Pharm. Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 198 (8th Cir. 1995) (stating that a party may expand argument in a Rule 50(b) motion if it relates to an essential element of an argument put forth in a pre-verdict motion). Anoka County did not include any controlling law on official immunity in its Rule 50(a) motion, and the Court finds no way to construe the official immunity defense as merely a more specific argument on a general issue raised pre-verdict. *See, e.g.*, *Jack Henry & Assocs. Inc. v. BSC, Inc.*, 487 Fed. Appx. 246, 251–252, 251 n.1 (6th Cir. 2012) (permitting elaboration post-trial where pertinent case law was relied on in the pretrial motion).

Finally, by failing to raise the official immunity defense during trial, Anoka County may have prevented Parada from requesting fact-finding from the jury on relevant questions. Permitting introduction of official immunity at this late stage could be prejudicial. *See Milhauser*, 701 F.3d at 273 (excluding novel arguments from post-verdict motions where introduction could prejudice nonmoving party by foreclosing an opportunity to cure defects in evidence). All told, Anoka County is not entitled to expand its arguments in its renewed motion and has waived the defense of official immunity.

Even if Anoka County did not waive the official immunity defense, the doctrine is inapplicable. Official immunity generally applies to the conduct of public officials unless a ministerial duty was not performed, was performed negligently, or discretionary

conduct is willfully wrong. *Whalen v. Langfellow*, 731 F. Supp. 2d 868, 885–86 (D. Minn. 2010). "[A] ministerial duty is one in which nothing is left to discretion; it is absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn. 1998) (quotation omitted). Discretionary duties require the exercise of individual professional judgment reflecting the goals and factors of a situation. *Id.*

In this case, however, it is irrelevant whether the Anoka County Jail employees' conduct was discretionary or ministerial because vicarious official immunity cannot extend to the County. Vicarious official immunity sometimes, but not always, protects a municipality from liability based on the conduct of an employee who is protected by official immunity, irrespective of whether the employee was named as an individual defendant. *Wiederholt*, 581 N.W.2d at 316. Where the application of official immunity would reward a governmental entity for inaction or failure to comply with the law, it should not be applied. *See S.W. v. Spring Lake Park Sch. Dist. No. 16*, 592 N.W.2d 870, 877 (Minn. Ct. App. 1999); *see also Pletan v. Gaines*, 494 N.W.2d 38, 42 (Minn. 1992) (finding that whether vicarious official immunity applies is a policy question except in high-speed police chases, when it per se applies).

The actions of the Anoka County Jail employees were based on the Anoka County Jail's unconstitutional ICE notification policy. If not for the unconstitutional policy, the deputies would have had no reason to make decisions about booking and processing

based on Parada's demographic characteristics, leading to her unlawful confinement.  To award vicarious official immunity based on discretionary conduct driven by an unconstitutional policy would reward Anoka County for its unlawful policy.  As such, the Court finds that it would be inappropriate to extend immunity to Anoka County irrespective of whether the conduct at issue was discretionary or ministerial.

### C.    Conclusion

In sum, Parada's operative Complaint levied the false imprisonment claim directly on Anoka County, and because Minnesota law supports a claim of direct municipal liability for false imprisonment, no individual defendant is required.  Anoka County waived the official immunity defense, and statutory immunity does not protect it from liability for false imprisonment because the jury was asked to assess whether day-to-day operations at the Anoka County Jail led to Parada's unlawful confinement.  Anoka County has therefore failed to show that it is entitled to judgment as a matter of law on Parada's false imprisonment claim, and the Court will deny its Rule 50(b) Motion.

## II.    PLAINTIFF'S MOTION TO AMEND THE JUDGMENT

Parada has filed a Motion to Amend the Judgment pursuant to Rule 59, asking the Court to amend the post-verdict judgment by making two additions: (1) issuing a permanent injunction prohibiting Anoka County from implementing the ICE notification policy in the future; and (2) ordering that Anoka County retrain Anoka County Jail staff as

to existing policies which require non-discrimination and equal treatment of all similarly-situated detainees.

"Rule 59(e) motions 'serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence.'" *In re Levaquin Prods. Liab. Litig*., No. 08–5742, 2012 WL 4481223, at *3 (D. Minn. Sept. 28, 2012) (quoting *Wells Fargo Bank, N.A. v. WMR e-Pin, LLC*, 653 F.3d 702, 714 (8th Cir. 2011)). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.* (quoting *United States v. Metro. St. Louis Sewer Dist*., 440 F.3d 930, 933 (8th Cir. 2006)).

### A.   Timeliness

Before reaching the merits, the Court must decide whether Parada's request for injunctive relief is a timely and permissible use of a Rule 59 Motion. First, Anoka County argues that Parada has waived injunctive relief. At the pretrial conference, Anoka County raised the question of whether the Court or the jury would serve as fact finder on the equitable relief claims. When the Court asked Parada's counsel for his viewpoint, he stated that his "understanding is that Anoka County has suspended implementation of the policy following the Court's [summary judgment] ruling, and so I'm preliminarily thinking that the declaratory and equitable claims are moot, but I need to give that further thought." (Tr. Status Conf. at 17:10–15.) The Court then instructed Parada's counsel that

he could "let [the Court] know about that." (*Id.* at 17:16.)  Counsel for Parada did not follow up on equitable relief.

Because the issue of injunctive relief was not resolved before trial, the Court finds that Parada did not waive her claim.  Indeed, it is not unusual for a court to take up equitable relief post-trial when a case involves both legal and equitable claims.  *See Smith Flooring, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.*, 713 F.3d 933, 937 (8th Cir. 2013) (stating the "normal practice" is that "issues peculiar to the equitable claim will be left to be decided by the judge" after trial).

Next, Anoka County argues that the present Motion is an inappropriate avenue for obtaining a permanent injunction.  Although Rule 59 is typically used for amending a judgment based on errors, Rule 52(b) permits a court to amend its findings, or make additional findings and amend the judgment accordingly upon a party's motion within 28 days after the entry of judgment, and such a motion may accompany Rule 59 motion.  *See* Fed. R. Civ. P. 52(b).  Neither Rule 52 nor Rule 59, however, permit a litigant to "introduce new evidence, tender new legal theories, or raise argument which could have been ordered or raised prior to entry of judgment."  *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006).

Parada contends that her post-trial motion is based on evidence at trial newly justifying a permanent injunction.  Specifically, Parada points to testimony that Commander Pacholl informed staff they should cease contacting ICE at this time merely

-22-

by passing down instructions through the ranks; that there is no updated jail policy; and that deputies testified they knew ICE detainers should not be given legal effect yet, pursuant to the unwritten policy, waited to hear back from ICE. Based on the specific ties to trial evidence identified by Parada and given the Court's broad discretion in deciding Rule 59(e) motions, *see* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2810.1 (3d ed.), the Court concludes that Parada's Motion is within procedural bounds because she is seeking amended findings, in the form of injunctive relief, based on the trial record.

### B.     Merits

Finding that Parada neither waived her claim for equitable relief nor that the motion is an impermissible use of post-trial procedure, the Court considers whether Parada has shown that a permanent injunction is merited. Whether to issue a permanent injunction is a decision committed to the discretion of the district court. *Wigg v. Sioux Falls Sch. Dist. 49-5*, 382 F.3d 807, 812 (8th Cir. 2004). A plaintiff seeking a permanent injunction must show actual success on the merits, *Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008), and satisfy four equitable factors: that the movant has suffered irreparable injury; that monetary damages are inadequate to compensate for the plaintiff's injury; a remedy is warranted based on the balance of hardships between the plaintiff and defendant; and the public interest would not be disserved by a permanent injunction, *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The

Court must also determine whether an "injunction is necessary to prevent future violations." *United States v. Articles of Drug*, 825 F.2d 1238, 1248 (8th Cir. 1987).

Parada has shown actual success on the merits: the Court determined that the Anoka County Jail's ICE notification policy was unconstitutional as a matter of law, and the jury found that the policy led to Parada's false imprisonment.  Parada has suffered irreparable harm as a result of Anoka County's violation of her constitutional rights.  *See e.g., InterVarsity Christian Fellowship/USA v. Univ. of Iowa*, 408 F. Supp. 3d 960, 988 (S.D. Iowa 2019) (finding a constitutional violation and award of nominal damages constitute success on the merits).

The Court next considers the likelihood of future violations.  Where there is no threat of future harm, injunctive relief is not warranted.  *See LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1497 (D. Minn. 1996).  Consequently, "a defendant's voluntary cessation 'is an important factor bearing on the question of whether a court should exercise its power to enjoin defendant[.]'"  *Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc.*, 83 F. Supp. 2d 1016, 1020 (D. Minn. 2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 283 (1982)).

Anoka County has represented to the Court in multiple filings that it stopped notifying ICE on the basis of a detainee's nationality due to the Court's order finding such a practice unconstitutional, and that the Anoka County Jail will not resume the practice unless the Court's conclusion that the policy is unconstitutional is overturned on appeal—

representations which the Court presumes are in good faith. *See Thrivent Fin. for Lutherans v. Acosta*, No. 16-3289, 2017 WL 5135552, at *5 (D. Minn. Nov. 3, 2017) ("Particularly where the defendant is the government, courts presume that the change in behavior is not merely one of litigation strategy, but is made in good faith." (citing *Am. Cargo Transp., Inc. v. United States*, 625 F. 3d 1176, 1180 (9th Cir. 2010))). Further, Commander Pacholl testified at trial that the Anoka County Jail has suspended use of the policy and that he has instructed jail staff at all levels that they should stop contacting ICE pursuant to the policy. Parada believes that the manner in which Commander Pacholl informed Anoka County Jail staff is insufficient, but such disagreement with the jail's method does not warrant a permanent injunction or court-ordered retraining.

Anoka County is bound by the Court's order on the unconstitutionality of the policy; the threat of immediate litigation if the jail were to resume use of the ICE notification policy, in combination with the County's attestations to the Court, are sufficient assurance against future irreparable harm. As such, the Court finds that a permanent injunction is not necessary to prevent future violations, and the Court will therefore deny Parada's Motion to Amend the Judgment.

## III.     PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS

### A.     Entitlement to Attorney Fees

In an action pursuant to 42 U.S.C. § 1983, the Court, in its discretion, may award the prevailing party reasonable attorney fees. 42 U.S.C. § 1988(b). "[T]o qualify as a

prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).  The judgment must change the legal relationship between the parties "by modifying the defendant's behavior in a way that directly benefits the plaintiff."  *Id.*  The purpose of § 1988 is to promote private enforcement of civil rights law by alleviating the burden on successful plaintiffs to bear their own costs. *Casey v. City of Cabool*, 12 F.3d 799, 805 (8ᵗʰ Cir. 1993).

The Court found that Anoka County violated Parada's Fourteenth Amendment rights, and the jury awarded her nominal damages pursuant to § 1983; Parada is thus a prevailing party.  *Farrar*, 506 U.S. at 112 ("[A] plaintiff who wins nominal damages is a prevailing party under § 1988[.]").  However, the Supreme Court has stated that "when a plaintiff recovers only nominal damages because of [their] failure to prove an essential element of [their] claim for monetary relief . . . the only reasonable fee is usually no fee at all."  *Id.* at 115.  The Eighth Circuit has adopted a three-part inquiry to determine whether an award of attorney fees is reasonable when the prevailing party recovered nominal damages: (1) the difference between the amount recovered and the damages sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) any goal or purpose the litigation might have served. *Jones v. Lockhart*, 29 F.3d 422, 423–24 (8ᵗʰ Cir. 1994) (citing *Farrar*, 506 U.S. at 578–79 (O'Connor, J., concurring)).  If a court determines that a civil rights plaintiff's victory was more than technical or de minimis,

nominal damages alone justify an award of reasonable fees.  *See Piper v. Oliver*, 69 F.3d 875, 877 (8th Cir. 1995).

Applying the three factors, the Court finds that Parada achieved more than a de minimis victory.  First, there is, of course, a difference between the amount Parada recovered on her § 1983 claim and the damages she sought, as for any case in which only nominal damages are awarded.  However, the magnitude of difference in this case— Parada asked the jury to award $310,000 on her § 1983 claim—does not preclude an award of fees.  *Cf. Piper*, 69 F.3d at 877 (finding that the discrepancy was "in no way comparable to that in *Farrar*"); *see also Farrar*, 506 U.S. at 114 (explaining that the plaintiff sought $17 million in compensatory damages and recovered only nominal damages).  Second, the right to be free from discrimination on the basis of national origin is a significant legal interest, and Parada prevailed in establishing that Anoka County violated that right.

Lastly, Parada's case shed light on an unconstitutional municipal practice and resulted in the suspension of the Anoka County Jail ICE notification policy after the Court found it to be illegal.  Parada's requests for declaratory and injunctive relief show that Parada's interests in this matter were not purely financial, but rather that she also sought an end to Anoka County's ICE notification policy.  Although the Court has denied Parada's motion for a permanent injunction, it has done so precisely because the Court determined that resorting to a court-enforced injunction is unnecessary to prevent reinstatement of

the ICE notification policy.  Thus, because the Court finds that Parada's victory surpasses the de minimis threshold, an award of fees is merited.

### B.      Determining Reasonable Fees

The Court has "broad discretion" in awarding attorney fees.  *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).  "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates."  *Id.* (quoting *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002)).  In determining the number of hours reasonably expended, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."  *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983).  To set a reasonable fee award, a court may consider numerous factors, including the degree of a plaintiff's success, time and labor required for the case, the novelty or difficulty of the issues, the requisite skill, the attorney's inability to perform other work because of the case, and the experience and reputation of the attorneys.  *See id.* at 430 n.3.  The degree of a plaintiff's overall success is the most important factor, *Farrar*, 506 U.S. at 114, but success on every claim is not necessary for a full fee award, *Fox v. Vice*, 563 U.S. 826, 834 (2011).

### 1.      Degree of Success

The parties dispute Parada's degree of success, given that the jury only awarded her nominal damages on her § 1983 Fourteenth Amendment claim.  As explained above,

Parada's success was not merely technical.  Parada's false imprisonment claim is factually linked to her Fourteenth Amendment claim, as both relate to her arrest, detention at the Anoka County Jail, and the procedures imposed on her while at the jail; the Court thus considers Parada's state claim as part of her success.  *See Rogers Grp. Inc. v. City of Fayetteville*, 683 F.3d 903, 913 (8th Cir. 2012) (explaining that success on a state claim arising from a common nucleus of operative fact with a § 1983 claim can be considered when examining the reasonableness of attorney fees).  Further, the Court instructed the jury that it could consider the unconstitutionality of the jail's ICE notification policy when determining the merits of Parada's false imprisonment claim.

On the other hand, Parada's success was not complete, as the jury found that Anoka County's Fourteenth Amendment violation was not the proximate cause of any actual injury to Parada, and the jury did not award the full amount requested in compensatory damages for false imprisonment.  The Court will therefore take the partial, yet significant, nature of Parada's success into account when deciding the reasonable amount of fees to award.

### 2.    Reasonableness of Rates & Hours Requested

The fee applicant bears the burden to "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  The

attorneys who represented Parada at trial and throughout this matter have requested hourly rates ranging from $325 to $625.

Parada has produced a declaration from local civil rights litigator, Robert Bennett, attesting to the reasonableness of the hourly rate of $420 requested by attorney Ian Bratlie. (*See generally* Decl. Robert Bennett, Mar. 4, 2021, Docket No. 293.)  Based on this evidence, the Court finds that Ian Bratlie's requested rate is reasonable, and extrapolates that the other requested rates are likewise reasonable.  Amanda Cefalu has comparable years of litigation experience as Mr. Bratlie, albeit primarily in areas other than civil rights, yet has requested a lower hourly rate of $325.  Alain Baudry has extensive litigation and trial experience and has requested rates ranging from $575 to $625 over the years of this case.  In comparison to the example hourly rates listed in the Bennett Declaration, the Court finds that Mr. Baudry's requested rate is reasonable.  The Court will therefore calculate the fee award based on the rates requested.

Parada's attorneys have attested that they have requested attorney fees only for those hours expended related to claims against Anoka County.  (*See, e.g.*, Decl. Alain Baudry ¶¶ 8–11, Mar. 4, 2021, Docket No. 294.)  Counsel have explained that the number of hours submitted is far less than the total number of hours dedicated to this case.  For example, Mr. Bratlie states that he billed 359 hours on the case but seeks reimbursement for 278 hours.  (Decl. Ian Bratlie ¶ 9, Mar. 4, 2021, Docket No. 292.)  Ms. Cefalu states that she seeks reimbursement for 398.8 hours of work on the case against Anoka County, out

of a total of 920 hours logged on the matter.  (Decl. Amanda Cefalu ¶¶ 15–16, Mar. 4,

2021, Docket No. 295.)

Anoka County contends that Parada's case was overstaffed and the attorneys have

not adequately excluded hours expended in preparation of unsuccessful claims.  But the

number of attorneys on a matter is not dispositive, and the focus remains on whether

counsel was reasonably utilized.  *See A.J. by L.B. v. Kierst*, 56 F.3d 849, 863–64 (8th Cir.

1995) ("\"[W]here more than one attorney represents the prevailing party, the

contribution of all attorneys must be taken into consideration and the fees awarded

should reflect the efforts of all[.]" (quotation omitted).).  It is not unreasonable for

multiple attorneys to represent a civil rights plaintiff in a complex case stretching over

years and multiple rounds of motions practice.

As to whether the hours are related to unsuccessful claims, counsel have declared

that the hours submitted are only related to the case against Anoka County; the

defendant against which Parada prevailed at summary judgment and trial.  But Parada

need not have prevailed on every claim against Anoka County to justify reimbursement

of fees.  *See Fox*, 563 U.S. at 834.  The Court finds that Parada's counsel have satisfactorily

itemized and separated hours such that they are only requesting reimbursement for the

parts of Parada's case against Anoka County and have excluded time spent exclusively

preparing the case against defendants who have been dismissed.  As such, the Court will

not calculate additional itemized reductions in the fees requested.

### 3.    Conclusion

Nonetheless, the Court will impose a reduction on the fees requested to represent Parada's inability to recover compensatory damages for her Fourteenth Amendment claim at trial.  Failure on compensatory damages for the Fourteenth Amendment violation is a significant shortcoming, since the Court found the policy unconstitutional as a matter of law, and trial on that claim was solely to prove actual injury caused by the violation.  In light of Parada's partial success, the Court reduces the fee award by 25 percent.  Applying the reduction, the Court calculates the fees as follows:

| | |
|---|---|
| Initial fees requested: | $332,192.50 |
| Fees inadvertently submitted for Mr. Baudry:[4] | $1,235.00 |
| Final fees requested: | $330,957.50 |
| **Reduced fees awarded:** | **$248,218.13** |

In sum, the Court finds that an award of attorney fees in the amount of $248,218.13 reasonably reimburses Parada's counsel and serves the purpose of § 1988 to ensure that prevailing civil rights plaintiffs have access to the judicial process and to impose the cost of civil rights litigation on liable defendants.

---

[4] After filing her Motion for Attorney Fees and supporting documents, Parada revised the amount of fees requested because $1,235 of Mr. Baudry's time was inadvertently included and should not be charged to Defendants.  (Reply Mem. Supp. Mot. Attorney Fees at 20, Apr. 1, 2021, Docket No. 310.)

IV.    **REQUEST FOR COSTS**

Under Federal Rule of Civil Procedure 54(d)(1), the Court should tax costs in favor of a prevailing party.  The expenses that may be taxed include "fees of the clerk and marshal, fees for printed or electronically recorded transcripts necessarily obtained for use in the case, fees and disbursements for printing and witnesses, fees for copies of necessary papers, docket fees, and compensation of court appointed experts and interpreters."  *Stanley v. Cottrell, Inc.*, 784 F.3d 454, 464 (8th Cir. 2015) (citing 28 U.SC. § 1920).  The Court "has substantial discretion in awarding costs to a prevailing party under" Rule 54(d) and § 1920.  *Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 363 (8th Cir. 1997) (quotation omitted).  As in the context of awarding attorney fees, a party that prevails only as to nominal damages is a prevailing party for purposes of taxing costs. *Coleman v. Turner*, 838 F.2d 1004, 1005 (8th Cir. 1988).

Parada has submitted a bill of costs requesting a total of $9,738.25, primarily comprised of costs for deposition and trial transcripts.  Anoka County has objected to taxation of costs for transcripts of the deposition of Nicolas Oman and a portion of the deposition of Plaintiff Parada, and for the trial transcript.  Anoka County argues that these transcript costs were not necessary to Parada's case or were not used at trial.

The Court disagrees and will tax the full amount of requested costs.  First, with regard to the contested deposition transcripts, "even if a deposition is not introduced at trial, a district court has discretion to award costs if the deposition was necessarily

obtained for use in [the] case and was not purely investigative." *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006) (quotation omitted).  The Court finds that neither the Oman deposition nor the Parada deposition were purely investigative, but were for use in the case, as Oman was a named defendant and Parada the plaintiff.  The Court declines to reduce costs based on the portion of the depositions that were ultimately relevant to a successful claim. *See Smith-Bunge v. Wisconsin Central, Ltd.*, No. 15-4383, 2018 WL 2926497, at *1 (D. Minn. June 7, 2018).

Second, although the trial transcripts were not used during the trial itself, the transcripts were obtained for use in the case, namely for post-trial motion practice. Anoka County moved for judgment as a matter of law at the close of Parada's case-in-chief and renewed the motion after the verdict; Parada obtained the trial transcript for use in defending against the renewed motion.  Parada also moved for an amended judgment, seeking a permanent injunction based on evidence and testimony presented at trial. Although Parada's motion for an amended judgment was ultimately unsuccessful, the merits do not change the fact that Parada used the trial transcript in support of that motion.  The Court will therefore also tax trial transcript costs against Anoka County.

In sum, the Court will tax the full amount of requested costs, $9,738.25, against Anoka County.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Defendants' Motion for Judgment as a Matter of Law [Docket No. 271] is

   **DENIED as moot**;

2. Plaintiff's Motion for Permanent Injunction [Docket No. 282] is **DENIED**;

3. Defendants' Motion for Judgment as a Matter of Law [Docket No. 287] is

   **DENIED**; and

4. Plaintiff's Motion for Attorney Fees and Nontaxable Costs [Docket No. 270] is

   **GRANTED in part and DENIED in part**, as follows:

   a. Anoka County is ordered to pay attorney fees in the amount of

      $248,218.13; and

   b. Anoka County is ordered to pay costs in the amount of $9,738.25.


DATED:  August 17, 2021                    _____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                       Chief Judge
                                             United States District Court